**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| FA ND CHEV, LLC; and FA ND SUB, LLC, | ) ) ) ) | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'** |
| Plaintiffs, | ) ) | **MOTION TO COMPEL AND FOR SANCTIONS** |
| vs. | ) ) | |
| Robert Kupper; Bismarck Motor Company; and BMC Marine LLC d/b/a Moritz Sports & Marine, | ) ) ) | Case No.  1:20-cv-138 |
| Defendants. | ) ) | |

Before the Court is Defendant Robert Kupper's ("Kupper") motion to compel and for sanctions. (Doc. No. 68). For the reasons set forth below, the motion is granted in part and denied in part.

**I.    BACKGROUND**

This action arises following a business transaction involving the sale and purchase of motor vehicle and service businesses ("dealerships") in June 2019. The transaction consisted of Kupper selling five Chevrolet and Subaru dealerships located in and around Mandan, North Dakota. This transaction also included non-competition and non-solicitation agreements between Kupper and FA ND CHEV, LLC and FA ND SUB, LLC (collectively "Plaintiffs"). The members of FA ND CHEV, LLC are Chuck Kramer, Jr. and Foundation Auto Holdings, LLC. Foundation Auto Holdings, LLC is owned by Foundation Automotive U.S. Corp. ("FA").

Plaintiffs allege that Kupper violated the agreements "almost immediately" by conspiring "to take back" the business Kupper had sold to Plaintiffs. (Doc. No. 77). Plaintiffs assert Defendants engaged in recruiting multiple employees away from Plaintiffs, and that Kupper

publically defamed Plaintiffs' business reputation. (Id.). "Plaintiffs are alleging damages in the nature of lost profits, loss of goodwill, loss of valuable employees, loss of clients and customers, the impairment of Plaintiffs' future earning capacity, and damage to business reputation." (Doc. No. 69) (quotations omitted). Defendants deny these allegations and Kupper asserts that any employees who have left Plaintiffs' businesses did so because of Plaintiffs' mismanagement. (Id.).

The parties met and conferred multiple times, in addition to attending multiple status conferences with the Court. Ultimately, Kupper filed the underlying motion on March 15, 2022. On March 25, 2022, Bismarck Motor Company and BMC Marine LLC d/b/a Moritz Sports & Marine joined Kupper's motion. (Doc. No. 72). Kupper asserts Plaintiffs have failed to meet their obligation of producing text messages and other electronically stored information ("ESI"). (Doc. No. 69). On top of that, Kupper claims Plaintiffs, in bad faith or intentionally, failed to preserve the text messages and ESI. (Id.).

On April 12, 2022, Plaintiffs filed a response in opposition to Kupper's motion to compel, alleging Kupper made unreasonable production requests. (Doc. No. 77). They claim Kupper is attempting to convince the Court to order Plaintiffs to "dump-produce over 100,000 documents, regardless of their relevancy," based on an overly broad list of search terms. (Id.). Plaintiffs assert they never agreed to produce the amount of documents or ESI that Kupper demands. (Id.). Plaintiffs also oppose Kupper's request that they search for and produce text messages contained on personal cell phones of former employees. (Id.). Plaintiffs note many of these former employees left Plaintiffs' employ prior to the start of this litigation. Plaintiffs assert Kupper's reasoning is misguided based on "mischaracterizations of this Court's rulings in two other unrelated cases." (Id.).

On April 19, 2022, Kupper filed a reply in support of his motions. (Doc. No. 78). Thus, the

motion has been fully briefed and is ripe for the Court's consideration.

## II.    LEGAL STANDARD

### A.    Scope of Discovery

Rule 26(b)(1), Fed. R. Civ. P, defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to
> any party's claim or defense and proportional to the needs of the case, considering
> the importance of the issues at stake in the action, the amount in controversy, the
> parties' relative access to relevant information, the parties' resources, the
> importance of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit. Information within
> this scope of discovery need not be admissible in evidence to be discoverable.

However, the Court, in its discretion, may limit discovery otherwise allowed by the rules if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be
> obtained from some other source that is more convenient, less burdensome, or less
> expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information
> by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C). The moving party must establish some level of relevancy for the

discovery they are requesting before the Court "open[s] wide the doors of discovery" to

information that is irrelevant to the issues of the case. Hofer v. Mack Trucks Inc., 981 F.2d 377,

380 (8th Cir. 1992).

> The scope of discovery under Rule 26(b) is extremely broad. Gowan v. Mid
> Century Ins. Co., 309 F.R.D. 503, 508 (D.S.D. 2015) (citation omitted). "The
> reason for the broad scope of discovery is that [m]utual knowledge of all the
> relevant facts gathered by both parties is essential to proper litigation. To that end,
> either party may compel the other to disgorge whatever facts he has in his
> possession." 8 Wright & Miller, Fed. Prac. & Proc. §§ 2007, 3637 (1970) (quoting
> Hickman v. Taylor, 329 U.S. 495, 507–08 (1947)).

3

<u>Fischer v. United States Life Ins. Co.</u>, No. 1:19-cv-152, 2021 WL 6278458, at *2 (D.N.D. Nov. 16, 2021), <u>on reconsideration</u>, <u>sub nom.</u> <u>Fischer v. United States Life Ins. Co. in the City of New York</u>, No. 1:19-cv-152, 2021 WL 6278461 (D.N.D. Dec. 8, 2021).

### B.    Requests for Production of Documents or Electronically Stored Information

Rule 34 Fed. R. Civ. P., governs requests for production of documents or ESI:

(a) A party may serve on any other party a request within the scope of Rule 26(b):

(1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control:

(A) any designated documents or electronically stored information—including wirings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly, or if necessary, after translation by the responding party into a reasonably usable form

Fed. R. Civ. P. (34)(a)(1)(A).

Moreover, Fed. R. Civ. P. 34(b)(2)(E), details the procedures for production of documents or ESI:

(E) Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

(i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;

(ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and

(iii) A party need not produce the same electronically stored information in more than one form.

Fed. R. Civ. P. (34)(b)(2)(E). In other words, "Rule 34 sets forth procedural and substantive requirements; and, it offers some presumptively reasonable options to litigants, with the hope they

may find common ground in both their requests and their production of information, whether electronically stored and produced, or not." See, e.g., Woodmont Co. v. LaSalle Shopping Ctr., LLC, No. 1:17-cv-73, 2020 WL 685705, at *2 (D.N.D. Nov. 12, 2020).

### C.    Spoliation of Evidence

Rule 37(e) Fed. R. Civ. P., explains the protocol for when there is an alleged failure to preserve ESI:

(e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). Simply put, Rule 37(e) is a multistep procedure allowing courts to impose sanctions regarding lost ESI and any prejudice resulting from that loss. First, the court is required "to make certain initial findings before imposing any sanctions . . . ." USI Ins. Servs. LLC v. Bentz, No. 1:18-cv-255, 2020 WL 7753690, at *2-3 (D.N.D. Dec. 29, 2020). For example, evidence must be presented to the court that shows a party lost ESI because of its failure to properly store the ESI, and there is no other way to retrieve the information with additional discovery. Id.; see Kramer v. Ford Motor Co., No. 12-1149, 2016 WL 7163084, at *2 (D. Minn. Feb. 3, 2016). Next, further

findings are required by the court before imposing additional severe sanctions. See USI Ins. Servs. LLC, 2020 WL 7753690, at *3 (citing Fed. R. Civ. P. 37(e)).

Likewise, before the court can order a party to cure any prejudice from losing ESI, the court must make a finding of prejudice. Id. Depending on the nature of the evidence lost, prejudice may be shown merely by how impactful the evidence is determined to be. Id. Prejudice likely exists from lost or destroyed ESI "if the lost or missing evidence 'would be different or more helpful to the party claiming spoliation' than the evidence already in existence." Id. Alternatively, prejudice does not exist when there is no "support for the speculation that the [lost] evidence would have affected the litigation." Id.

Before ordering any of the Rule 37(e)(2) severe sanctions, "such as dismissal of the case or an adverse jury instruction," the court is required to find "that the party acted with the intent to deprive another party of the information's use in the litigation." Merfeld v. Domestic Corp., 306 F.Supp.3d 1070, 1085 (N.D. Iowa 2018), aff'd, 940 F.3d 1017 (8th Cir. 2018) (citation omitted). There is a "high bar" for the court to conclude severe sanctions are appropriate. USI Ins. Servs. LLC, WL 7753690, at *3.

"Lastly, as with all the Federal Rules of Civil Procedure, the rules governing discovery, 'should be construed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding.'" Fed. R. Civ. P. 1; see e.g., Woodmont Co., 2020 WL 6685705, at *3-4.

## III.    DISCUSSION

Kupper raises three primary issues. First, Kupper asserts the existence of further, as-yet-undisclosed text messages based on Plaintiffs' stipulation to Kupper's preservation letter. Second, Kupper asserts Plainffs' productions of emails are insufficient due to Plaintiffs' unilateral narrowing process of the search terms. Third, Kupper insists sanctions are appropriate, including

for his attorney's fees, to cure prejudice caused by Plaintiffs' lack of production. The three issues are discussed sequentially below.

### A.      Requested Text Messages

The Court will first address what Kupper characterizes as missing or unproduced text messages from Plaintiffs. Kupper asserts the messages must be produced based on the parties' stipulation to Kupper's preservation letter. (Doc. No. 78). In response, Plaintiffs argue they only agreed to produce text messages from three members of FA's executive management team, but not from any other individuals' personal cell phones. (Doc. No. 77).

Kupper sent Plaintiffs a preservation letter on August 31, 2020, because of concerns about documents and ESI being corrupted or lost. (Doc. No. 69). The letter asked Plaintiffs "to preserve potentially relevant ESI on an ongoing basis, and requested that Plaintiffs also notify other individuals under their direction or control to preserve any ESI in their possession or in the custody of others that are subject to Plaintiffs' direction or control." (Id.). Kupper asserts the preservation letter put Plaintiffs on notice that "Kupper would be making discovery requests for the ESI and that steps should be taken to preserve the ESI, including text messages." (Id.).

Plaintiffs acknowledge receiving this letter, and forwarding it to the President and CEO, Kevin Kutschinski ("Kutschinski"). (Doc. No. 77). From there, Kutschinski forwarded the letter to Chuck Kramer and Derek Slemko, two members of FA's executive management team. (Id.). Plaintiffs assert they "produced the relevant text messages in the possession of the three executives and Mr. Weszner . . . ." (Id.). Plaintiffs also claim they are not required to comply with Kupper's preservation letter. (Id.). However, Kupper not only asserts that Plaintiffs are required to comply, but also notes how Plaintiffs stipulated they would comply, via the scheduling order. (Doc. No. 78).

The scheduling order states the following:

> The parties agree that any ESI that exists should be preserved indefinitely by them in relation to communications between plaintiff representatives and defendants' representatives, and that the parties should confirm that ESI searches have been conducted for any documents and/or information requested in any litigation hold request, and/or any interrogatories and/or requests for production of documents.

(Doc. No. 21).

The Court will look back to the scheduling order to resolve discovery disputes. Plaintiffs assert they only agreed "to produce relevant text messages from the personal cell phones of three members of [FA's] Executive Management Team, . . . [plus] Mr. Wenzer." (Doc. No. 77). Plaintiffs also argue they "have no legal control over privately acquired phones . . . in the possession of third party individuals and non-parties to this lawsuit." (Id.). Nevertheless, the Court does not see how Plaintiffs have met their obligations per the scheduling order. Specifically, the portion that states, "the parties should confirm that ESI searches have been conducted for any documents and/or information requested in any litigation hold request." (Doc. No. 21). It is clear that Plaintiffs understood and stipulated to the scheduling order. Therefore, they should have known the type of ESI that was expected of them to search for and preserve for discovery.

Kupper's request for Plaintiffs to search for current employees' text messages is reasonable to the Court when looking at the nature of this action. As noted above, one of Plaintiffs' alleged damages is the loss of valuable employees. Kupper argues Plaintiffs are obligated to produce text messages, because "[t]ext communications between current and former employees of Plaintiffs will or may establish the reasons employees have left employment with Plaintiff[s]." (Doc. No. 69). This is reasonable to the Court because text messages on employees' phones may contain relevant information. The messages may bear upon which, if any, of Plaintiffs' employees were contacted by Kupper, when or why the contact was initiated, and whether Kupper violated the

terms of the agreements. Therefore, the request falls within the scope of discovery under Rule 26(b)(1), because "[t]he scope of discovery under Rule 26(b) is extremely broad." <u>Gowan</u>, 309 F.R.D. at 508 (D.S.D. 2015) (citations omitted). The Court orders Plaintiffs to produce any relevant text messages found on the cell phones, including the personal cell phones, of its current employees. Whereas, Kupper has the ability to ask Defendants' current employees, some being former employees of Plaintiffs, for responsive text messages on the employees personal cell phones.

Finally, Rule 26(b) explains that discoverable "information . . . need not be admissible into evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). The Court appreciates the natural tension that Plaintiffs express over invading the privacy of their employees. However, the information in the employees' possession may be relevant to the underlying issues in this litigation, and its disclosure does not necessarily mean it will be presented at a public trial. The Court instructs Plaintiffs to err on the side of inclusion when it comes to searching for and producing information for discovery. Again, the text messages "need not be admissible into evidence to be discoverable." (<u>Id.</u>). Therefore, Plaintiffs must search for the requested text messages that may be stored on their employees' personal devices, and produce any responsive findings.

**B.      Email Production**

In May of 2021, the parties met and conferred to discuss ongoing discovery issues. Kupper's take away from the meeting was that Plaintiffs had pledged to begin a weekly rolling production of documents. (Doc. No. 69).  Also at this time, Plaintiffs informed Kupper that the ongoing delays with production were because of Kupper's overbroad discovery requests. (<u>Id.</u>). Plaintiffs explained how the requests were generating an unreasonably large number of documents to review in order to send a consistent and adequate production. (<u>Id.</u>). Plaintiffs viewed Kupper's

requests as "overboard because they do not provide a specific list of individuals Kupper is requesting information from, nor do they provide certain topics of information to locate." (Doc. No. 69). Plaintiffs further assert that Kupper did not provide any limitations for his discovery requests even after both parties engaged in multiple conferrals. (Doc. No. 77).

Kupper eventually provided a list of search terms to Plaintiffs on May 24, 2021. (Doc. No. 69). "Kupper's search terms, all being names, consisted of sixty-nine individuals and twelve entities." (Doc. No. 77). Plaintiffs communicated with Kupper that the search terms were unreasonable, and that Plaintiffs would not use the search terms, nor produce the documents that were found using the search terms. (Id.) Plaintiffs assert the terms were unreasonable because searches using the terms were generating 300,000-400,000 pages of material. (Id.). In response, Kupper indicated that so long as the document productions "are in a searchable format, producing that number of documents is acceptable." (Doc. No. 69). Nevertheless, Plaintiffs informed Kupper they would not use the search terms. (Id.). On June 30, 2021, Plaintiffs sent an email to Kupper explaining that Plaintiffs were going to narrow down the search results. (Id.). Kupper denies agreeing to let Plaintiffs narrow the search terms.

Below is an example of Kupper's discovery request and Plaintiffs' response:

> REQUEST NO. 7: Please produce copies of any and all notes, reports, emails, texts, correspondence, documentation or any written communications or recordings between any and all representatives of Plaintiffs' and/or Foundation Auto and Defendant Robert Kupper or any representatives of any Defendant(s) from any date, including but not limited to regarding the issues and/or claims in the subject Complaint, Defendants' defenses, the negotiations and purchase of Kupper Chevrolet, and/or in connection with the issues addressed in this lawsuit.

> RESPONSE: OBJECTION, because this request seeks all documents and communications between the parties (in addition to non-parties, the Foundation Entities), without regard to the subject or timeframe, the request is overly broad, unduly burdensome, and seeks information that is neither relevant to any party's claims or defenses nor proportional to the needs of the case. Further, to the extent

the request for documents regarding the negotiations and purchase of Kupper
Chevrolet seeks information unrelated to the Non-Competition Agreement at issue
in this case, the request calls for irrelevant information. In addition, the request
seeks information that is equally available to Kupper or the other Defendants, and
calls for proprietary and confidential business information. Subject to these
objections, Plaintiffs will produce all documents and communications between
Plaintiffs and/or the Foundation Entities, on the one hand, and the Defendants, on
the other hand, relevant to the claims or defenses in this case and/or the Non-
Competition Agreement.

(Doc. No. 70). Kupper interpreted this response as an answer in the affirmative; all of the requested

ESI would be produced by Plaintiffs. (Doc. No. 69). Specifically, Kupper reasoned that

interpretation based on the last portion of Plaintiffs' response. (Id.). "Plaintiffs will produce all

documents and communications between Plaintiffs and/or the Foundation Entities, on the one

hand, and the Defendants, on the other hand, relevant to the claims or defenses in this case and/or

the Non-Competition Agreement." (Doc. No. 70).

On January 24, 2022, Plaintiffs assert they completed their discovery production

obligations. (Doc. No. 77). Plaintiffs contest this is when Kupper first alleged that Plaintiffs had

agreed to produce every document that resulted from Kupper's search terms. (Id.). In other words,

every document that resulted from the search terms prior to Plaintiffs' narrowing process. Plaintiffs

deny agreeing to produce every document that was a hit when using the terms. (Id.). Plaintiffs state

they would not have expended the resources towards the narrowing process if they had an

obligation to produce every document that resulted from Kupper's terms. (Id.).

Due to the nature of this action and the issues involved, discovery has been convoluted and

confusing. The Court agrees, in part, with Plaintiffs' assertions that Kupper's requests lead to

unreasonably cumulative discovery. Accordingly, under Rule 26(b)(2)(C), the Court must limit

the extent of discovery if it determines that, "the discovery sought is unreasonably cumulative . . .

." Fed. R. Civ. P. 26(b)(2)(C). For example, Kupper requested Plaintiffs to include in its search

11

"any derivative of the terms noted above" without providing a list of the derivatives. (Doc. No. 69). The Court finds the discovery sought with the derivative request as unreasonably cumulative.

The Court struggles with Plaintiffs failure to disclose what terms they used after they narrowed Kupper's search terms. Plaintiffs assert they used "certain" or some of Kupper's terms. (Doc. No. 77). The problem is neither the Court, nor Kupper, has any knowledge of what Plaintiffs' narrowed terms were. The Court is not persuaded with Plaintiffs' assertions that Kupper's search terms were on their face objectively overly-broad, given the nature of the claims asserted against Kupper. (Id.). Therefore, the Court finds that Plaintiffs must include all of Kupper's specified search terms when searching for emails, and produce any responsive findings, excluding Kupper's derivative request. To the extent Plaintiffs are able to exclude anything that is not in the substantive portion of the email, they may do so, e.g., email domains. The timeframe shall be what was agreed upon by the parties for ESI searches: July 28, 2018 until August 3, 2020.

**C.     Sanctions**

The Court is not persuaded by Kupper's assertions that deem sanctions necessary for the Court to order against Plaintiffs. First, as mentioned above, discovery in this matter has been fraught with confusion. If Kupper wanted Plaintiffs to produce ESI documents in a more efficient manner, Kupper could have made clearer and more concise discovery requests. Second, Kupper has not provided evidence that Plaintiffs failed to properly store the ESI. The issue appears to be a lack of communication amongst the parties regarding what they agreed to produce, rather than an issue of failing to preserve. Kupper also has not provided any evidence to suggest that Plaintiffs acted in bad faith, or with intent tried to deprive Kupper of ESI. Kupper admits "Plaintiffs have produced a large volume of emails." (Doc. No. 69). Third, Kupper could have been more explicit and timely in its objection to Plaintiffs unilateral narrowing process. It is clear Plaintiffs did not

12

agree to Kupper's search terms. However, Plaintiffs erred by not informing Kupper, or the Court, which terms on Kupper's proposed list they used during their search for and selection of responsive documents for production. As such, the Court does not find that Kupper has presented enough evidence of prejudice or intent to deprive him of certain information to impose sanctions upon Plaintiffs. Finally, the Court denies Kuppers request for attorney's fees.

## IV.    CONCLUSION

Kupper's motion to compel (Doc. No. 68) is **GRANTED IN PART**. Kupper's motion for sanctions (Doc. No. 68) is **DENIED**. Kupper's request for attorney's fees is **DENIED.**

**IT IS SO ORDERED.**

Dated this 31st day of August, 2022.

                                          /s/ Clare R. Hochhalter
                                          Clare R. Hochhalter, Magistrate Judge
                                          United States District Court