IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| FA ND Chev, LLC, and<br>FA ND Sub, LLC,<br><br>                                              Plaintiffs,<br><br>vs.<br><br>Robert Kupper et al.,<br><br>                                              Defendants.<br><br>―――――――――――――――――――<br><br>BAPTKO, Inc.,<br><br>                       Plaintiff and<br>              Counterclaim Defendant,<br><br>vs.<br><br>Foundation Automotive Corp. et al.,<br><br>                       Defendants and<br>                       Counterclaimants. | Case No. 1:20-cv-00138 |

**ORDER DENYING RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW,
DENYING MOTION FOR NEW TRIAL, AND
FINDING AS MOOT MOTION TO STAY AND EXPEDITE**

[¶1]    THIS MATTER comes before the Court on Foundation Parties' Renewed Motion for Judgment as a Matter of Law and Motion New Trial filed on December 5, 2024. Doc. No. 511. Kupper Parties filed a Response on January 6, 2025. Doc. No. 524. Foundation Parties filed a Reply on January 23, 2025. Doc. No. 528. Foundation Parties filed a Motion to Stay Execution of Judgment and a Motion to Expedite the Motion to Stay on March 21, 2025. Doc. Nos. 534, 536.

Kupper Parties responded on March 28, 2025. Doc. No. 539. For the reasons set forth below, Foundation Parties' Motions for Judgment as a Matter of Law and New Trial are **DENIED**. In consequence, the Motion to Stay Execution and the Motion to Expedite the Motion to Stay are **found as MOOT.**

## BACKGROUND

[¶2]   The Court held a jury trial in this case from October 28, 2024, through November 5, 2024. During trial, testimony was given about the value of the goodwill of the company, or "blue sky" value. Vehicle inventory is used to determine this value. Part of the Asset Purchase Agreement dictated that no material change would occur with regards to maintaining inventory. Foundation Parties argued at trial that Kupper Parties improperly turned down vehicles offered to the dealership in violation of the Asset Purchase Agreement. Kupper Parties presented evidence they followed standard business practices. Foundation Parties argued the financial statements included improper errors. Kupper Parties presented evidence the errors were common to these types of documents and Foundation Parties own documents after closing included similar errors. At the close of their case, Foundation Parties moved for judgment as a matter of, which the Court denied.

[¶3]   The Court instructed the jury, in part:

> A party to a contract is not excused from performing its obligations under the contract when the other party has substantially performed its obligations under the contract. A party has substantially performed its obligations under a contract when the essential purpose of the contractual performance is accomplished.
>
> A party to a contract is also not excused from performing its obligations under the contract when, after the other party has breached the contract, the non-breaching party subsequently performs an act indicating an intent to continue with the contract rather than ceasing or repudiating the contract. A party may waive a breach by another party and be liable for its own subsequent breach.

Doc. No. 487, ¶¶ 27–28.

[¶4]     After deliberations, the jury found in favor of Kupper Parties, specifically that they did not breach the Asset Purchase Agreement ("Agreement") and were owed payout amounts under that Agreement.

## **DISCUSSION**

### I.     Motion for Renewed Judgment as a Matter of Law

[¶5]     Foundation Parties argue first they are entitled to judgment as a matter of law because Kupper Parties breached the contract by not maintaining inventory levels and Foundation was excused from performance of the contract by these breaches. Doc. No. 512, p. 21. Kupper Parties argue the jury's verdict was supported by evidence and facts established at trial. Doc. No. 524.

[¶6]     A party may renew a motion for judgment as a matter of law after the court previously denied the original motion and a jury has returned a verdict. Fed. R. Civ. P. 50(b). In deciding a Rule 50(b) motion, courts ask whether "'a reasonable Jury would not have a legally sufficient evidentiary basis' to support the verdict." Guttemeyer v. Transit Auth., 31 F.4th 638, 646 (8th Cir. 2022) (quoting Masters v. City of Independence, 998 F.3d 827, 835 (8th Cir. 2021)). It is well established when reviewing a motion for judgment as a matter of law courts must:

> (1) resolve direct factual conflicts in favor of the nonmovant; (2) assume as true all facts supporting the nonmovant which the evidence tended to prove; (3) give the nonmovant the benefit of all reasonable inferences; and (4) affirm the denial of the motion if the evidence so viewed would allow reasonable jurors to differ as to the conclusions that could be drawn.

Sherlock v. Quality Control Equip. Co., Inc., 79 F.3d 731, 735 (8th Cir. 1996) (quoting Grand Labs, Inc. v. Midcon Labs., 32 F.3d 1277, 1280 (8th Cir. 1994)). Courts are "highly deferential" to the jury's verdict and draw all reasonable inferences in favor of the verdict. Id. Mere speculation is insufficient to support a verdict. Id. The court "will not set aside a Jury's verdict lightly, and

[the court] will not weigh, evaluate, or consider the credibility of the evidence." Kaplon v. Howmedica, Inc., 83 F.3d 263, 266 (8th Cir. 1996).

[¶7]   The Court finds sufficient evidence was presented at trial to support the jury's verdict in favor of Kupper Parties. Foundation Parties completed due diligence regarding the purchase of the dealerships, they agreed to the number of vehicles on the lot at closing despite any errors in other statements, Kupper Parties gave reasonable explanations for the discrepancies in paperwork and why some vehicles were not accepted from General Motors, and an expert with knowledge and skill presented confirming testimony to the jury about valuation and inventory. The Court's job at this stage is not to reweigh the evidence, Kaplon, 83 F.3d at 266, but to be deferential to the factfinders at trial. Masters, 998 F.3d at 835. Accordingly, there was sufficient evidence to support the verdict.[1]

[¶8]   Foundation Parties also argue Kupper Parties failed to prove which entity within Foundation Parties is obligated to pay under the Earnout Provision. Doc. No. 512, p. 23. Kupper Parties argues that issue was not raised at trial and additionally Foundation Parties are jointly and severally liable. Doc. No. 524, p. 11.

[¶9]   "A party's first motion for judgment as a matter of law must contain all the arguments it intends to raise in its 'renewed motion.'" Parada v. Anoka Cnty., 54 F.4th 1016, 1022 (8th Cir. 2022) (quoting Fed. R. Civ. P. 50(b)). Therefore, "a party cannot raise 'new arguments in [a] Rule 50(b) motion.'" Id. (quoting Miller v. Huron Reg'l Med. Ctr., 936 F.3d 841, 847–48 (8th Cir. 2019)).

---

[1] Because the verdict was supported by evidence, the Court does not need to address Foundation Parties' argument concerning excusal of contractual duties. However, the Court has already done so on several occasions. See Doc. No. 373, pp. 23–24.

[¶10]   Foundation Parties moved for judgment as a matter of law at the close of their case. Doc. No. 503, p. 53. They listed two grounds: (1) evidence showed Kupper Parties breached the contract regarding failure to maintain inventory levels and (2) evidence showed a claim for fraud against Kupper Parties. Id. at 53–66. The Court ruled on those two motions. Id. at 66. Determining the obligation to pay was not raised in the original motion and, therefore, cannot be renewed or made anew in this motion. Parada, 54 F.4th at 1022.

[¶11]   Accordingly, Foundation Parties' Motion for Judgment as a Matter of Law is **DENIED**.

## II.   Motion for New Trial

[¶12]   Foundation Parties argues for a new trial on several grounds: the verdict was against the weight of the evidence, the jury was improperly instructed, the Court's conduct prejudiced the jury, and their case was undermined by time limitations and denial of a request to play deposition testimony. Doc. No. 512, p. 24–25.

[¶13]   A court may grant a new trial "after a Jury trial, for any reasons for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In reviewing a motion for new trial, the Court considers "whether a new trial is necessary to prevent a miscarriage of justice." Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013). The Eighth Circuit has cautioned, "A new trial should be granted only if the evidence weighs heavily against the verdict," or "if the error misled the Jury or had a probable effect on its verdict." Id. (cleaned up).

### a.   Against the Weight of Evidence

[¶14]   Foundation Parties argues the verdict was against the weight of the evidence for all the same grounds as their renewed motion for judgment as a matter of law. Doc. No. 512, p. 25. The Court has found the evidence was sufficient to support the verdict. Supra ¶ 7.

### b. Improper Instructions

[¶15]   Concerning jury instructions, Foundation Parties argues: (1) the Court should have made clear that if Kupper Parties breached the contract, Foundation Parties were excused from further performance; and (2) the prejudicial instructions implied Foundation Parties had already breached payment obligations under the Agreement. Doc. No. 512, pp. 25–26. Kupper Parties argues the instructions included explanation of excuse of performance; and further, because the jury found no breach, excuse of performance was never even considered by the jury. Doc. No. 524, p. 17.

[¶16]   At Summary Judgment, the Court ruled that Foundation Parties had breached the contract. Doc. No. 373. This was the law of the case presented to the jury. The instructions did not concern Foundation Parties specifically but taught the general law of substantial performance and ratification. In that way, the instructions "fairly and adequately represent[ed] the evidence and applicable law in light of the issues presented to the jury." Blackorby v. BNSF Ry. Co., 849 F.3d 716, 719–20 (8th Cir. 2017). The Court finds the instructions given were proper.

### c. Prejudice from the Court

[¶17]   Foundation Parties argue the Court prejudiced the jury on several grounds: (1) the Court ruled Foundation had breached the contract and the issue for the jury was a matter of damages, Doc. No. 386; (2) the jury deliberated for a short amount of time; (3) "the Court showed hostility" to them by "insert[ing] itself into the testimony–in a manner that was supportive of the Kupper Parties and damaging to the Foundation Parties"; (4) the Court limited expert testimony to Subaru vehicles; (5) "the tone and manner of questioning by the Court [of two witnesses] created an appearance of bias and hostility"; and (6) the cumulative effect of rulings on objections and management of the courtroom amounted to unfair prejudice.

[¶18]   The Court previously decided the issues of excuse of performance versus offset to damages and nothing in the trial changes that analysis. See Doc. No. 386. Foundation Parties includes the jury instruction about the Summary Judgment in their argument for prejudice. Doc. No. 528, pp. 7–8. The Court gave the following instruction:

> The Court has already determined the Foundation Parties breached the contract by failing to pay $3 million of Earnout Payments to BAPTKO, Inc. as required under the First Amendment to the Asset Purchase Agreement. The Court has also determined BAPTKO, Inc. is entitled to prejudgment interest in the amount of $362,716.19 as of November 4, 2024, with a daily rate of interest of $493.16.
> The jury is tasked with deciding whether the Foundation Parties have proven any of their claims against Bob Kupper or BAPTKO, Inc., and if so, what damages, if any, they are entitled to in relation to any proven claims. These damages will act as an offset against the amount already determined by law.

Doc. No. 487, ¶¶ 30–31. This instruction merely reiterates the Court's ruling and reasoning on Summary Judgment and throughout trial.

[¶19]   Foundation Parties argue the short time the jury deliberated is evidence the jury was prejudiced. Doc. No. 528, p. 7–8. The Eight Circuit has held "that brief jury deliberation alone is not a sufficient basis for a new trial." United States v. Aguilera, 625 F.3d 482, 487 (8th Cir. 2010). See also Transit Cas. Co. v. Transamerica Ins. Co., 387 F.2d 1011, 1014 (8th Cir. 1967) (holding extended jury deliberation is not a sign of lack of prejudice).

[¶20]   Foundation Parties argues the Court inserted itself into testimony that was supportive of Kupper Parties but does not cite to the transcript for specific instances for the Court to discuss. Instead, it focuses on comments made outside of the presence of the jury.

[¶21]   "A court may exercise 'proper control' over presentation of witness testimony." Russell v. Anderson, 966 F.3d 711, 721 (8th Cir. 2020). "The trial court has broad discretion in commenting on evidence and may do so in order to give appropriate assistance to the jury." Id. at 722 (quoting Reed v. Malone's Mech., Inc., 765 F.3d 900, 910 (8th Cir. 2014)). The court may even comment

on facts, so long as it comments "fairly and impartially, and [it] may express [its] opinion upon the facts so long as he makes it clear to the jury that all matters of fact are submitted to their determination. Id. at 911 (quoting Gant v. United States, 506 F.2d 518, 520 (8th Cir. 1974)). Comments must not be "intended or calculated to disparage [a party] in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." Rush v. Smith, 56 F.3d 918, 922 (8th Cir. 1995) (en banc) (quoting La Barge Water Well Supply Co. v. United States, 325 F.2d 798, 802 (8th Cir. 1963)).

[¶22]   The Court does not find persuasive Foundation Parties' reliance on a district of Iowa case concerning comments made prior to trial. Doc. No. 512, p. 29; see also Schultz v. Amick, 955 F. Supp. 1087, 1102 (N.D. Iowa 1997). Since the standard here is prejudice of the jury, the Court finds there was not prejudice to the jury based on any comments made outside of the jury's presence.

[¶23]   Foundation argues it was not required to provide evidence of intentional misconduct on Mr. Kupper's part and therefore it was improper not to allow their expert, Ginger Knutsen ("Ms. Knutsen") to present her opinion regarding Subaru vehicles. Doc. No. 512.

[¶24]   Expert witnesses must have a factual basis for their testimony. Fed. R. Evid. 702. The claim at issue in the case is breach of contract. A breach requires that in some way, the inventory was reduced, and Mr. Kupper was involved. Foundation Parties had presented evidence that Mr. Kupper declined acceptance of Chevrolet inventory from General Motors; however, no comparable evidence was presented for Subaru inventory. See Doc. No. 502, p. 99:15–101:7. The mere contractual obligation of Mr. Kupper to monitor inventory does not equate to evidence supporting a legal finding of breach of contract. Id. at 138:18–139:3. Ms. Knutsen could not divide the results of her report between Chevrolet and Subaru. See id. at 142:2–8. Kupper Parties pointed

out this exact concern regarding the data to Foundation multiple times well in advance of trial. Id. at 144:15–21. Rather than bar Ms. Knutsen entirely, the Court allowed them to call the witness to testify to what had been proven in the record with the notice that instruction would be given as to the unproven numbers in the report. Id. at 146:17–147:3.

[¶25]   With the jury present and the witness on the stand, the Court gave the promised instruction:

> Members of the jury, I have made, at this point in the case -- and the Foundation Parties are not -- have not completed presentation of the evidence, but I have determined that thus far there is no factual witness that would support a claim that there was a reduction in Subaru numbers that were caused by Robert Kupper; and, therefore, that claim, at least insofar as what Ms. Knutsen is going to testify to, should not be considered by you with regard to Subaru.
>
> We do have some evidence in the record that Mr. Kupper made a determination not to take a certain allotment or allocation of vehicles from Chevrolet. So inasmuch as that might have impacted the value of the dealership that Foundation bought, Ms. Knutsen can testify as to that. And if she can't, to your satisfaction, separate out Subaru from Chevrolet, you should disregard her testimony.

Id. at 171:14–172:3. Even after evidence was presented that her information was based on inventory numbers, which had been determined to be more like estimates than actual numbers, the Court allowed her testimony to remain in the record. Id. at 207:22–208:24. To make sure the jury knew of the factual basis of her charts and information, the Court asked a several questions on redirect. Doc. No. 503, p. 25:2–23. The Court gave both parties an opportunity to ask further questions in light of the Court's inquiry. Id. at 25:24–26:4. The Court was exercising "proper control" over the testimony to make sure it abided by the Federal Rules of Evidence and did not mislead the jury. See Russell, 966 F.3d at 721–22.

[¶26]   Foundation Parties argue the Court was hostile to their witnesses, Derek Slemko ("Mr. Slemko") and Ms. Knutsen, by interrupting the witness and a using a raised "voice in a manner that suggested circumstances of wrongdoing and impropriety." Doc. No. 512, p. 32.

[¶27]   Arguments are considered waived if no objection is made during trial. Harris v. Steelweld Equip. Co., Inc., 869 F.2d 396, 402 (8th Cir. 1989). See also Fed. R. Evid. 614(c) (allowing objections "at the next opportunity when the jury is not present"); Lange v. Schultz, 627 F.2d 122, 127 (8th 1980) (holding the lack of objection warrants a different standard of review). The Court notes that, while no objection was made specifically to Mr. Slemko or Ms. Knutsen, Foundation Parties did move for mistrial after the Court's ruling on Ms. Knutsen's testimony. Doc. No. 502, p. 207:3–8. In that motion, Foundation Parties mentions its disagreement with the Court's "interactions with witnesses today, in particular Mr. Slemko." Id. at 207:12–17.

[¶28]   Mr. Slemko's testimony spans 150 transcript pages. Doc. Nos. 501–02. The Court dealt with an issue of hearsay early in Mr. Slemko's testimony. Doc. No. 501, p. 65:2–67:5. In questioning about accessing information, Mr. Slemko testified that he had not accessed critical financial information prior to closing. Doc. No. 502, p. 107:15–18. Whether or not Mr. Slemko knew he could access the information at the time was critical to the factfinders. Foundation Parties argued they could not access the information prior to closing the purchase; Kupper Parties showed the authorizations that allowed access before closing. The Court asked Mr. Slemko if he knew he could access the information, and Mr. Slemko replied, "Well, we didn't access the information." Id. at 108:17–21. The Court asked a second time about his knowledge of access and Mr. Slemko repeated the same answer. Id. at 109:2–7. The Court asked a third and fourth time about Mr. Slemko's knowledge, and he did not answer the Court's question. Id. at 109:8–24. Finally, on the fifth time the Court asked if Mr. Slemko knew he could access the information at the time, he answered that he did not know. Id. at 109:25–110:2. The Court directed the jury to disregard whether or not the information was accessible because Mr. Slemko did not know or try to access the information. Id. at 110:3–6.

[¶29]   This line of questioning by the Court was done to ensure the factfinders had an accurate understanding of the evidence and not "intended or calculated to disparage" Foundation Parties or Mr. Slemko. See Rush, 56 F.3d at 922. The Court has already discussed the testimony from Ms. Knutsen. Supra ¶ 25. The clarification to the jury was not "intended or calculated to disparage" Ms. Knutsen. See Rush, 56 F.3d at 922. The Court's only concern was presenting the jury with truthful and accurate information.

[¶30]   Lastly, Foundation Parties argue the management of the courtroom unfairly prejudiced their case, specifically the shortened trial schedule, the Court's ruling not to play deposition testimony of witnesses present in the courtroom, and setting time limits on cross-examination and redirect. Doc. No. 512, p. 34–35.

[¶31]   "A district court has broad discretion over evidentiary and trial management decisions." Gonzalez v. Shahin, 77 F.4th 1183, 1191 (8th Cir. 2023). A court can "impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." Id. (quoting Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover, 563 F.3d 329, 352 (8th Cir. 2009)). See also Johnson v. Ashby, 808 F.2d 676, 678 (8th Cir. 1987) (A judge "not only may but must exercise strict control over the length of trials."). "Time limits formulated before trial must be 'sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive.'" Harris v. Chand, 506 F.3d 1135, 1141 (8th Cir. 2007) (quoting Life Plus Intern. v. Brown, 317 F.3d 799, 807 (8th Cir. 2003)). To preserve the issue, parties must object and make offer of proof of the evidence excluded by the time limits. Id.

[¶32]   This consolidated case was originally set for twelve days of trial. See Doc. No. 359 (the last continuance at twelve days). Subsequently, the Court issued its Order on Summary Judgment,

which disposed of seven claims relating to various parties, which reduced the issues remaining for trial by over half. Doc. No. 373. As trial neared, considering the court calendar and the issues remaining for trial, the Court informed the parties the trial days would be reduced to six on September 16, 2024, six weeks before trial began on October 28, 2024. Doc. Nos. 390, 395. The division of time was addressed in Foundation Parties' Trial Brief, Doc. No. 456, p. 5, and discussed at the pretrial conference. Doc. No. 499, p. 14:11–17. No objection was made concerning the length of trial. Foundation Parties mentioned the time limit in a motion for mistrial concerning the Court's ruling not to play deposition testimony of a witness who was present in the courtroom. Doc. No. 502, p. 210:1–212:4. However, the basis for that motion was not the number of days of the case. The Court granted more time to Foundation Parties when requested. See Doc. No. 503, p. 172:19–173:20. In fact, Foundation Parties and Kupper Parties were each to have two days, but Foundation Parties took an extra half day, and therefore the Court granted Kupper Parties' request for an extra half day. Doc. No. 501, p. 13:16–14:15. The Court took pains to keep the jury's view of the parties neutral when the schedule for the trial was extended. Id. at 13:11–14 ("I did make a representation to the jury that we were on track because I like to reassure them and give them – credit to the lawyers for keeping things going. And so, if that's not the case, I'll own it."). Additionally, when Foundation Parties went over on the estimated time for closing by forty minutes, the Court not only allowed them to go over but also took the blame by telling the jury the closing instructions took longer than anticipated. Doc. No. 504, p. 170:25–7, 172:16–25 ("You went over 40 minutes . . . and I'm not going to cut [Kupper Parties] short . . . so I'll be the bad guy . . . . The jury, some of them at least, were not happy with that determination, but those are the things that I have to decide."). Therefore, the Court finds the time limits given were sufficiently flexible. See Harris, 506 F.3d at 1141.

[¶33] As to the limitation of playing deposition testimony, the Court did not allow either party to play the deposition testimony of witnesses available to testify in person. Doc. Nos. 460, 463. While the Federal Rules allow playing of deposition testimony, it has never been considered an alternative for witnesses present and able to testify in open court. Federal Rule of Civil Procedure 43 states, "At trial, the witnesses' testimony must be taken in open court unless" otherwise allowed by Congress or the Judiciary. The Notes on the 1996b Amendment state, "The importance of presenting live testimony in court cannot be forgotten. The very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Transmission of testimony from a remote location is only allowed with a showing of good cause. Fed. R. Civ. Pro. 43, cmt on 1996 Amendments. Deposition testimony is the remedy for witnesses unavailable for trial, not those sitting in the courtroom. See id.

[¶34] For example, the Court told the parties it preferred to only call a witness once. When Foundation Parties concluded their examination of Kevin Kutschinski ("Mr. Kutschinski") and Mr. Kupper, Kupper Parties indicated they would call these witnesses again in their case-in-chief. Doc. No. 500, p. 137:3–18. No objection was made at that time by Foundation Parties. Mr. Kupper was still present and was recalled to the stand. Foundation Parties informed the Court Mr. Kutschinski had left the area. Kupper Parties did not have advance notice that Mr. Kutschinski would not be staying for the duration of the trial. Because of this unanticipated situation, the Court allowed his deposition testimony to be used rather than require him to fly back to North Dakota. Doc. No. 504, p. 130:1–131:16.

[¶35] As to the argument that Foundation Parties were prejudiced by the cumulative effect of the Court's rulings, it is the Court's responsibility to make sure the trial is moving efficiently; it is the

parties' responsibility to get their evidence on the record to make their case. Foundation Parties rested without sufficient evidence on the record. Foundation Parties did not object to the days for trial. When Foundation Parties ask for half a day more time, the Court obliged. Throughout the trial, the Court ruled in favor and against both parties. When Foundation Parties objected to the exclusion of Ms. Knutsen's testimony, the Court allowed her to testify with context given to the jury. Nothing in the Court's rulings or words were calculated to disparage a party. The Court's only concern was a timely trial with accurate evidence for the factfinders. Accordingly, Foundation Parties' Motion for New Trial is **DENIED**.

### III.   Motion to Stay Execution of Judgment

[¶36]   On March 21, 2025, Foundation Parties moved to Stay Execution of Judgment pending resolution of post-trial motions before the Court. Doc. No. 534. Foundation Parties also moved to expedite this Motion. Doc. No. 536. This Order resolves all pending post-trial motions. Therefore, this Motions are **found as MOOT.**

### CONCLUSION

[¶37]   For the foregoing reasons, Foundation Parties' Renewed Motion for Judgment as a Matter of Law and Motion for New Trial (Doc. No. 511) are **DENIED**, the Motions to Stay Execution of Judgment and Expediting that Motion (Doc. Nos. 534, 536) are **found as MOOT**.

[¶38]   **IT IS SO ORDERED**.

DATED April 7, 2025.

Daniel M. Traynor, District Judge
United States District Court