STATE OF NORTH DAKOTA                                    IN DISTRICT COURT

COUNTY OF MORTON                        SOUTH CENTRAL JUDICIAL DISTRICT

CIVIL NO. 30-2025-CV-00652

| | | |
|---|---|---|
| BAPTKO, Inc. and Robert Kupper | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLAINTIFFS' BRIEF IN OPPOSITION** |
| vs. | ) | **TO DEFENDANTS FA ND CHEV, LLC,** |
| | ) | **FA ND SUB, LLC, EAGAL3 LLC, AND** |
| FA ND CHEV, LLC; FA ND SUB, LLC; | ) | **EAGAL4 LLC'S JOINT MOTION TO** |
| EAGAL3 LLC; EAGAL4 LLC; PMKC | ) | **DISMISS** |
| Mandan LLP; Starion Bank, and Bravera | ) | |
| Bank, | ) | |
| | ) | |
| Defendants. | ) | |

***                    ***                    ***

**INTRODUCTION**

[¶1]     Plaintiffs BAPTKO, Inc. and Robert Kupper (collectively "Plaintiffs") submit this brief in

opposition to the joint motion to dismiss (Index # 40) filed by Defendants FA ND CHEV, LLC,

FA ND SUB, LLC, EAGAL3 LLC, EAGAL4 LLC (collectively "Moving Defendants").

**BACKGROUND**

I.     **The Federal Lawsuit and Judgment**

[¶2]     On September 27, 2021, Plaintiff BAPTKO, Inc. ("BAPTKO") commenced a federal

lawsuit against Defendants FA ND CHEV, LLC and FA ND SUB, LLC (collectively "FA ND

Entities") and their parent company, Foundation Automotive Corp., in the United States District

Court for the District of North Dakota, Western Division (Case No. 1:21-cv-00183). Amended

Complaint (Index # 19) at ¶ 18. BAPTKO alleged breach of contract, and sought to recover unpaid

earn out amounts owed based on the FA ND Entities meeting net income target revenues each year

of over $2.5 million ($750,000 x 4 years), plus interest, costs, disbursements, expenses, and

attorneys' fees, in relation to BAPKTO's sale of a Chevrolet dealership and a Subaru dealership

- 1 -

**EXHIBIT 12**

in Mandan, North Dakota ("Mandan Dealerships") to the FA ND Entities. *See id.* at ¶¶ 11-19. That federal lawsuit was later consolidated with an earlier filed federal lawsuit filed by the FA ND Entities against Robert Kupper ("Kupper"), Bismarck Motor Company, and BMC Marine LLC d/b/a Moritz Sport & Marine in the United States District Court for the District of North Dakota, Western Division (Case No. 1:20-cv-00138). *Id.* at ¶ 18. In the consolidated federal case[1], the Court issued an oral order on October 28, 2024, awarding BAPTKO $3 million against the FA ND Entities and Foundation Automotive Corp. relating to the unpaid earn out amounts. On October 29, 2024, the Court issued a written order, further awarding BAPTKO prejudgment interest in the amount of $123.29 per day at a rate of 6% for a total of $364,195.67. *Id.* at ¶ 19. Following a jury trial, in which the FA ND Entities lost all of their remaining claims against BAPTKO and Kupper, the federal court entered Judgment in favor of BAPTKO on November 7, 2024. *Id.*; *see also* Index # 20. On April 7, 2025, the federal court issued an Amended Judgment (Index # 21), awarding Kupper and BAPTKO attorneys' fees in the amount of $1,085,186.44 and costs in the amount of $223,328.71. Amended Complaint (Index # 19) at ¶ 19. The total federal judgment against the FA ND Entities is $4,672,710.82, plus interest. *Id.* The November 7, 2024 Judgment has been filed as a foreign judgment in North Dakota State District Court, South Central Judicial District, Morton County, North Dakota, Case No. 30-2024-cv-01337. *Id.*

## II.    Post-Judgment Discovery in the Federal Lawsuit

[¶3]    Plaintiffs BAPTKO and Kupper engaged in post-judgment written discovery in the federal court case, which included the necessity for a motion to compel and for sanctions. Amended

---

[1] The Moving Defendants have requested the Court take judicial notice of the dockets concerning the underlying federal case (Case Nos. 1:21-cv-00138 and 1:21-cv-00183). Moving Defendants' Brief at ¶ 10 n. 1. Plaintiffs join in the Moving Defendant's request to take judicial notice of these federal dockets.

Complaint (Index # 19) at ¶ 31. During post-judgment discovery, the FA ND Entities and their parent company, Foundation Automotive Corp., did not provide any documents or information identifying any current assets, and Plaintiffs have not been able to independently locate any current assets for these entities through Plaintiffs' own investigation. However, the FA ND Entities and Foundation Automotive Corp. did produce certain documents relating to their divestment of assets shortly prior to and after the federal trial, namely the Mandan Dealership businesses and the real estate associated with the Mandan Dealerships.[2] In response to a motion to compel and for sanctions, they also produced a Declaration of Derek Slemko, purporting to explain this divestiture. Index # 22.

[¶4]    It should be noted, Derek Slemko ("Slemko") is the Chief Financial Officer of Foundation Automotive Corp., the parent company of the FA ND Entities. Index # 22 at ¶¶ 1-2. Slemko's declaration was attached as an exhibit to the Amended Complaint in this state court case, given that it is a document contemplated by the Amended Complaint and is not itself protected by the federal protective order, having been publicly filed in the federal court case. Throughout their brief on this motion (Index # 41), the Moving Defendants cite to and reference Slemko's Declaration as if all of its contents are agreed with by Plaintiffs or are fully incorporated into Plaintiffs' complaint allegations. Plaintiffs most certainly do not agree with, or incorporate into the Amended Complaint, every self-serving statement in a declaration of Slemko, who is a representative of the

---

[2] The documents obtained in post-judgment discovery from the FA ND Entities are marked confidential or designated as "Attorneys Eyes Only" as is the habit of the FA ND Entities' counsel throughout the federal court consolidated case to try to litigate in darkness, and thus are subject to a protective order issued by the federal court. They cannot be filed in this state court action without this Court first issuing its own protective order. The FA ND Entities were admonished by the federal court for improperly designating documents as confidential and attorneys eyes only. Case No. 1:20-cv-00138, Doc. 198; *Exh. 1* to Bakke Affidavit. Nevertheless, such documents have provided Plaintiffs with a further good faith basis to pursue their claims in this case, as alleged in the Amended Complaint.

FA ND Entities (defendants in the present state court case).

[¶5]    In any event, Plaintiffs' post-judgment discovery efforts have revealed documents that support the allegations in this current state court case, particularly when compared with statements and positions the FA ND Entities took during the federal litigation. For example, in October 2023, the CEO of Foundation Automotive Corp., Kevin Kutschinski ("Kutschinski"), testified in his deposition (which was played at trial in the federal case without objection) that he had no interest in selling the Mandan Dealerships because he liked the cash flow and the Mandan Dealerships had been a good investment for Foundation Automotive Corp. Amended Complaint (Index # 19) at ¶ 21. Through post-judgment discovery, Plaintiffs have learned that shortly prior to Kutschinski's deposition, the FA ND Entities had already divested themselves of their ownership interest in the real estate where the Mandan Dealerships are located. *Id.* at ¶ 22.

[¶6]    Plaintiffs have also learned that, shortly after judgment was entered in the federal case, the FA ND Entities sold all the remaining Mandan Dealership assets, including personal property and goodwill, to Defendants EAGAL3 LLC and EAGAL4 LLC. *Id.* at ¶ 23. Plaintiffs assert in the Amended Complaint, as part of the sale of the Mandan Dealerships, the real estate was transferred back to the FA ND Entities from CARS-DB12 L.L.C and CARS-DB5, L.P., and was then assigned to Defendant PMKC. *Id.* (EAGAL3 LLC, EAGAL4 LLC, and PMKC are related entities associated with the Eide Automotive Group. Those three parties are hereafter collectively referred to as the "Eide Parties"). *Id.* The Mandan Dealerships, including the associated real property, personal property, and goodwill, are now owned and operated by the Eide Parties. *Id.*

[¶7]    According to Slemko's Declaration, "As for the proceeds from the sale of the Mandan Dealerships, [they] primarily allocated the funds toward satisfying existing loans and financing arrangements – including floor plans, transaction costs, and fees payable to Haig and other lenders.

After satisfying the obligations of our lenders, **the remaining amount available as liquidity to Foundation was nominal.**" Index # 22 at ¶ 19 (emphasis added).

[¶8]    Based on the foregoing chain of events as alleged in the Amended Complaint, Plaintiffs and the FA ND Entities were engaged in litigation for several years in federal court relating to the FA ND Entities' failure to pay earn-out amounts owed, and other issues under the contract for the sale of the Mandan Dealerships by BAPTKO to the FA ND Entities. According to Kutschinski's trial testimony, he had no interest in selling the Mandan Dealerships because he liked the cash flow and the Mandan Dealerships had been a good investment. Yet, as the federal case neared trial (at which the FA ND Entities would ultimately lose on all counts based on court orders as to some causes of action and a jury verdict on other claims, and have judgment entered against them for more than $4.6 million), the FA ND Entities started divesting themselves of their assets, beginning with the real estate associated with the Mandan Dealerships. Then, shortly after judgment was entered, the FA ND Entities sold their remaining Mandan Dealership assets, and Plaintiffs assert that as part of the transaction the real estate was temporarily transferred through the FA ND Entities. According to Slemko's claims in his declaration, after paying off debts, only a "nominal" amount was left from the proceeds of the sale, being the only known assets of the FA ND Entities. In other words, despite running profitable businesses with good cash flow, the FA Entities decided to make themselves insolvent shortly after judgment in excess of $4.6 million was entered against them.

### III.    The Nature of this State Court Case

[¶9]    This current state court case is brought pursuant to the Uniform Voidable Transactions Act (N.D.C.C ch. 13-02.1). Amended Complaint (Index # 19) at ¶¶ 27-31. Plaintiffs allege the transfers of the real estate associated with the Mandan Dealerships to CARS-DB12 L.L.C and CARS-DB5,

L.P., then back to the FA ND Entities and later to PMKC, were made with the actual intent to hinder, delay, or defraud Plaintiffs as creditors of the FA ND Entities. *Id.* at ¶ 28. Additionally, Plaintiffs allege the transfers of the remaining non-real estate assets of Mandan Dealership to EAGAL3 LLC and EAGAL4 LLC were also made with the actual intent to hinder, delay, or defraud Plaintiffs as creditors of the FA ND Entities. *Id.* at ¶ 30. North Dakota Century Code section 13-02.1-04 provides a non-exclusive list of factors that may support a finding of actual intent, and Plaintiffs' Amended Complaint contains a list of relevant factors, with supporting alleged facts (quoted and discussed in more detail below). *Id.* at ¶ 31.

[¶10]   While Slemko claims the divestiture of all of the FA ND Entities' assets was merely part of a "strategic initiative" (Index 22 at ¶ 5), Plaintiffs allege it was done with the actual intent to hinder, delay, or defraud Plaintiffs as creditors (Index 19 at ¶¶ 28-31), and Plaintiffs have cited the statutory factors (aka "badges of fraud"), with supporting facts. Amended Complaint (Index # 19) at ¶ 31. For purposes of this motion to dismiss, the Court must take Plaintiffs' allegations as true. *In re Est. of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521, 524.

[¶11]   Plaintiffs have requested the Court both void the subject transfers to the extent necessary to satisfy Plaintiffs' claims, and issue an order allowing Plaintiffs to levy execution on the assets transferred and/or their proceeds. Amended Complaint (Index # 19) at ¶ 32. Both of these remedies are explicitly permitted under the Uniform Voidable Transactions Act. N.D.C.C. §§ 13-02.1-07(1)(a) and 13-02.1-07(2).

## IV.   <u>There is No Stay of Execution of the Federal Judgment Because the FA ND Entities Have Failed to Post a Bond or Other Security Despite Repeated Representations They Would Do So</u>

[¶12]   After the judgment was entered in the federal case, there was an automatic stay on execution on the judgment and any proceedings to enforce it, which temporarily prevented actions

like the present state court action during the automatic stay.  Fed. R. Civ. P. 62(a) (stating, "Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."). The automatic 30-day stay has long since expired for the federal judgment and amended judgment.

[¶13]   Federal Rule of Civil Procedure 62(b) provides a simple path for the FA ND Entities to extend the stay after the automatic stay expired, but they have chosen not to take that path, despite repeated representations that they would do so. Rule 62(b) states: "At any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). "The purpose of a supersedeas bond is to secure the appellee from loss resulting from the stay of execution. Generally, a district court will set the supersedeas bond at an amount equal to the judgment being appealed." *Brakebill v. Jaeger*, No. 1:16-CV-008, 2020 WL 13699062, at *1 (D.N.D. June 29, 2020) (quotations and citation omitted).

[¶14]   While the FA ND Entities have filed an appeal of the judgment in the federal case to the Eighth Circuit Court of Appeals, they have never sought a stay of execution of judgment pending the appeal, and have never provided a bond or other security to secure a stay of execution. Plaintiffs have obtained an enforceable federal judgment, and the FA ND Entities have not taken the required steps to stay enforcement of that judgment pending appeal. The FA ND Entities did seek a stay from the federal court pending the court's ruling on post-trial motions (Case No. 1:21-cv-00183, Doc. No. 534; *Exh. 2* to Bakke Affidavit), which was later denied by the court as moot when it ruled on the post-trial motions (Case No. 1:21-cv-00183, Doc. No. 544; *Exh. 3* to Bakke Affidavit). The FA ND Entities have never filed any other motion for stay, including in relation to their appeal to the Eighth Circuit.

[¶15]   It should be noted, the FA ND Entities' failure to post a bond or other security flies in the face of their repeated assertions to Plaintiffs' counsel and the federal court that they would do so. After the entry of the federal judgment, counsel for Plaintiffs expressed concern on multiple occasions to counsel for the FA ND Entities that they appear to be depleting assets, and he asked for more information and assurances in that regard and in regard to posting a bond. Case No. 1:20-cv-00138, Doc. No. 540-2, 540-3, 540-5; *Exh. 4* to Bakke Affidavit. Counsel for the FA ND Entities stated in an email, "as we noted multiple times on the record at trial, we will be appealing the case to the Eighth Circuit, and will be filing a motion to maintain the stay on execution through disposition on appeal." Case No. 1:20-cv-00138, Doc. No. 540-4; *Exh. 5* to Bakke Affidavit. Further, counsel for the FA ND Entities told the federal court the FA Entities and Foundation Automotive Corp. are "prepared to post a supersedeas bond to secure the Judgment," (Case No. 1:20-cv-00138, Doc. 535 at p. 2; *Exh. 6* to Bakke Affidavit), but they have never done so.

## LEGAL STANDARD

[¶16]   The North Dakota Supreme Court has explained:

> "A motion to dismiss a complaint under N.D.R.Civ.P. 12(b)(vi) tests the legal sufficiency of the claim presented in the complaint." *Brandvold v. Lewis & Clark Pub. Sch. Dist. No. 161,* 2011 ND 185, ¶ 6, 803 N.W.2d 827 (quoting *Vandall v. Trinity Hosps.,* 2004 ND 47, ¶ 5, 676 N.W.2d 88). "On appeal from a dismissal under N.D.R.Civ.P. 12(b)(vi), we construe the complaint in the light most favorable to the plaintiff and accept as true the well-pleaded allegations in the complaint." *Brandvold,* at ¶ 6 (quoting *Vandall,* at ¶ 5).

*In re Est. of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521, 524.  Accepting the Amended Complaint allegations as true for purposes of this motion to dismiss, the motion must be denied.

## ARGUMENT

I.      **This State Court Action is Not an Improper Collateral Attack on Federal Jurisdiction**

[¶17]   The Moving Defendants have made every effort to disingenuously twist Plaintiffs' entirely appropriate post-judgment discovery in the federal case, and the commencement of this current

state court lawsuit, into something nefarious on the part of Plaintiffs. However, the Moving Defendants have wholly failed to explain the basis of their assertions, and failed to provide supporting case law or other legal authority. Their claims that Plaintiffs have done something procedurally wrong are merely bold assertions without any support, and are designed to distract from the actual wrongdoing of defendants to hinder Plaintiffs' efforts to collect on their substantial federal judgment.

[¶18]   The Plaintiffs were well within their rights to seek post-judgment discovery in the federal case. Rule 69 of the Federal Rules of Civil Procedure provides in relevant part, "In aid of the judgment or execution, the judgment creditor . . . may obtain discovery from any person— including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "'The scope of post judgment discovery is very broad,'" in order "to permit a judgment creditor to discover assets upon which it may execute." *Select Energy Services, LLC v. Halo Holdings Group, LLLP*, No. 4:14-cv-140, 2015 WL 3889492, at *1 (D.N.D. June 24, 2015) (quoting *F.D.I.C. v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995)); *Mid-Dakota Clinic, P.C. v. Kolsrud*, 1999 ND 244, ¶ 7, 603 N.W.2d 475. "The purpose of post-judgment discovery is to learn information relevant to the existence or transfer of the judgment debtor's assets." *United States v. McLean*, No. 23-cv-2096 (PJS/TNL), 2024 WL 3102252, at *2 (D. Minn. June 24, 2024) (quotation omitted). "As such, Rule 69(a) 'allows the judgment creditor freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor.'" *Id.* (quoting *SIM Surgical, LLC v. SpineFrontier, LLC*, No. 4:20-CV-01060-JAR, 2023 WL 1100380, at *2 (E.D. Mo. Jan. 30, 2023)). "A judgment creditor is therefore ordinarily entitled to a very thorough examination of a judgment debtor with respect to its assets, including discovery [of] the identity and location of any of the judgment debtor's assets, wherever located." *British Int'l*

*Ins. Co. v. Seguros La Republica, S.A.*, No. 90Civ.2370 (JFK)(FM), 2000 WL 713057, at *5 (S.D.N.Y. June 2, 2000) (citations omitted).

[¶19]   On the basis of post-judgment discovery, Plaintiffs learned the FA ND Entities had depleted their assets shortly before and after judgment was entered against them, leaving them with only a "nominal" amount. Plaintiffs now seek to make use of the protections of the Uniform Voidable Transactions Act under state law to claw back these fraudulent transactions and execute on the large judgment secured as a result of a federal court judge's rulings and a jury verdict. *See* Fed. R. Civ. P. 69(a)(2) ("as provided in these rules or by the procedure of the state where the court is located.").

[¶20]   The Moving Defendants accuse Plaintiffs of "forum shopping," suggesting Plaintiffs have used this state court action to bypass federal post-judgment collections proceedings. Moving Defendant's Brief at ¶ 40. Plaintiffs served the FA ND Entities with post judgment discovery in the federal case seeking, among other things, information about all current assets. FA ND Entities have not disclosed any current assets. Rather, they have produced documents establishing all their assets were divested shortly before and after judgment was entered. State Court post-judgment collections proceedings are the appropriate path in order for Plaintiffs to collect the amount owed by the FA ND Entities. N.D.C.C. § 13-02.1-07.

[¶21]   The Moving Defendants' claim that this judgment execution action should have been pursued in the federal court case makes no sense and is unsupported by any case law or other legal authority. The case *Weekes-Walker v. Macon Cnty. Greyhound Park, Inc.* is instructive. 2017 WL 906961 (M.D. Ala. Mar. 7, 2017). In that federal case, after judgment was entered, the plaintiffs sought to add a defendant (Patricia McGregor) to the case "for the purpose of obtaining a declaration from [the] court that the mortgage was fraudulently conveyed to Patricia McGregor to

avoid the judgment in this case in violation of the Alabama Fraudulent Transfer Act, Ala. Code 1975 § 8-9A-1, et seq.[3] Plaintiffs further sought 'a writ of execution on the asset(s) of [Defendant], free and clear of any claims of Patricia McGregor.'" *Id.* at *2. As noted by the court, "[t]o say that the law is confusing on this point is understatement of the highest order." In any event, the court refused to entertain the request, explaining, "[w]hat has been tried by the court is the claim of the creditor against the debtor—*not* the title to any real or personal property the debtor has, or had, that may satisfy the claim." *Id.* at *4. The court explained:

> There can be no greater property right in English common law than the requirement that private property may not be seized by the government or anyone else without due process of law. In this very context, that means notice, a claim compliant with the rules of civil procedure and common law, adequate time to conduct discovery, prepare a defense, and engage in motion practice, and a trial, with attendant rights to appeal—in short, a separate action for the current owner of the property to defend that ownership against claims of fraud.

Weekes-Walker v. Macon Cnty. Greyhound Park, Inc., No. 3:10-CV-895-WKW, 2017 WL 906961, at *4 (M.D. Ala. Mar. 7, 2017). Similarly, the present action required the inclusion of necessary parties with an interest in the property at issue, who are not parties to the federal court case which created the judgment debt.

[¶22] The Moving Defendant's arguments appear to be based on the Moving Defendants' mistaken belief that the only court which may take action with respect to enforcement of a judgment is the very court that issued the judgment. They cite no case law or other legal authority to this effect and it is nonsensical. The present state court action involves real property located in Morton County, North Dakota, and includes necessary parties with interests in the subject property who are not parties to the existing federal action (EAGAL3 LLC; EAGAL4 LLC; PMKC Mandan

---

[3] This Alabama law is also based on the Uniform Fraudulent Transfer Act and is substantively similar to the North Dakota Fraudulent Transactions Act (N.D.C.C. ch. 13-02.1).

LLP; Starion Bank, and Bravera Bank). It should be noted this case is based on state law - the Uniform Voidable Transactions Act (no federal question), and there is no diversity of citizenship between Plaintiffs and the Eide Parties or the two bank defendants. *See* Amended Complaint (Index # 19) at ¶¶ 2, 5-9. The Moving Defendants have not explained how the claims in this state court action could have triggered federal court jurisdiction at all, much less in the specific federal case in which the federal judgment was obtained against the FA ND Entities.

[¶23]   The Moving Defendants' motion to dismiss is nothing more than an effort to secure the equivalent of a stay of execution of the federal judgment, without actually posting the bond or other security necessary to obtain a stay. They have not cited any legal authority establishing this state court action to enforce a federal judgment must be dismissed pending the outcome of an appeal in the absence of a stay. The FA ND Entities' appeal of the federal judgment does not provide any basis to dismiss this case in the absence of a stay of the federal judgment, which has never been secured. The Moving Defendants essentially seek all the benefits of a stay of execution without them having to post any security at all – shifting the entire risk to the Plaintiffs– the winner at trial in the federal case. If the FA ND Entities were to have posted a sufficient bond in federal court and secured a stay of execution, this case could not have proceeded, but they have not done so. They have cited no law at all establishing that this type of case should be dismissed simply because the federal judgment is under appeal, but no stay of execution is entered.

[¶24]   Further, the Moving Defendants exaggerate in the extreme the actual merits of their appeal to the Eighth Circuit. They argue:

> During the trial before the Federal Court, BAPTKO failed to establish that Foundation properly assigned its obligations under the earnout provision to the respective FA ND Entities. The Federal Court has also not made any finding that Foundation assigned the obligations relating to the earnout provision to the FA ND Entities.

> This unaddressed issue has resulted in an ambiguous Federal Judgment that does not accurately reflect the Foundation Parties' respective responsibilities under the earnout provision. The Federal Appeal challenges not only the underlying liability determinations and damage calculations, but also the fundamental question of which entities, if any, should be liable for the earnout payments that form the basis of BAPTKO's Federal Judgment.

[¶25]   The Moving Defendants' argument that these issues went "unaddressed" by the federal district court, allegedly resulting in "an ambiguous Federal Judgment", is at best a very misplaced argument, and at worst an intentional misrepresentation to this Court. This Court's attention is directed to the order of the federal district court in which United States District Judge Traynor explicitly ruled against the FA ND Parties on these specific issues and explained the basis of his rulings in detail. In denying their motion to dismiss, Judge Traynor found that "ND CHEV… expressly assumed all obligations and liabilities from Foundation under its assignment…" and "ND SUB also expressly assumed all obligations and liabilities from Foundation under its assignment….."  Case No. 1:21-cv-00183, Doc. No. 40 at ¶¶ 5-11; *Exh. 7* to Bakke Affidavit. While explaining the basis of his order in this regard, Judge Traynor quoted in full the relevant contract provisions (with citations to the record), which expressly stated the FA ND Entities contractually agreed to the assignment of "all of [Foundation's] rights and obligations under the Asset Agreement." Case No. 1:21-cv-00183, Doc. No. 40 at ¶¶ 8-9; *Exh. 7*.

[¶26]   In addition to the foregoing orders, the Amended Judgment in the federal case could not be clearer that the judgment is against all of the defendants in that case: Foundation Automotive Corp., FA ND CHEV, LLC, and FA ND SUB, LLC. (Index # 21)

[¶27]   The Moving Defendants' argument to this Court, and the same pending argument before the Eighth Circuit Court of Appeals, that Judge Traynor somehow left these issues "unaddressed," is patently absurd. It is illustrative of the FA ND Entities' typical shotgun approach, throwing out numerous weak or nonsensical arguments as a delay tactic. It is notable that the two consolidated

federal cases involved numerous claims, and all of Foundation Parties' claims were either dismissed by the Court or rejected by the jury on the special verdict form, while BAPTKO and Kupper prevailed on all of their claims, obtaining the complete relief requested. If the FA ND Entities want a stay of enforcement actions pending the outcome of their futile appeal, Federal Rule of Civil Procedure 62(b) is still available to them. It is their choice not to make use of it.

## II.    The Amended Complaint and Jury Demand Contains Sufficient Particularity

[¶28]    The Moving Defendants argue Plaintiffs have failed to plead fraud with sufficient particularity to meet the heightened pleading standard of Rule 9(b). Moving Defendant's Brief at ¶¶ 36-38, 42-46. The Moving Defendants falsely claim "the Amended Complaint is devoid of facts demonstrating the "badges of fraud" set forth in Section 13-02.1-04(2)." The cited statute, N.D.C.C. § 13-02.1-04(2) (part of the Uniform Voidable Transactions Act), provides a non-exclusive list of factors to determine whether a transfer was made with the actual intent to hinder, delay, or defraud a creditor of the debtor. N.D.C.C. § 13-02.1-04(2).

[¶29]    Rather than rely on the Moving Defendants' bald assertion that Plaintiffs pled "only generalized and conclusory allegations," the Court should review the actual Amended Complaint, wherein Plaintiffs clearly identified each relevant statutory badge of fraud and provided relevant facts right next to each. In that regard, the Amended Complaint states:

> Many factors support the finding of actual intent, including but not limited to:
>
> b. The debtor retained possession or control of the property transferred after the transfer *(FA ND CHEV and FA ND SUB sold the real estate during the federal case but continued to operate their businesses there, and later bought back the property after judgment was entered to then sold/transferred the property to PMKC).*
>
> c. The transfer or obligation was disclosed or concealed *(BAPTKO was forced to bring a motion to compel and for sanctions in the Federal case to attempt to obtain documents and information about the sale).*
>
> d. Before the transfer was made or obligation was incurred, the debtor had been

- 14 -

sued or threatened with suit *(the transfer of the real estate occurred during [the] federal case, and the complete sale of the Mandan Dealerships and divesting of the funds occurred within weeks of judgment being entered in the federal case).*

e. The transfer was of substantially all the debtor's assets *(upon information and belief, the Mandan Dealerships were substantially all of FA ND CHEV and FA ND SUB's assets, and according to the Declaration of Derek Slemko (**Exhibit C**), FA ND CHEV and FA ND SUB were left with only a "nominal" amounts after the proceeds were disbursed[4]).*

…

i. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred *(according to the Declaration of Derek Slemko (**Exhibit C**), FA ND CHEV and FA ND SUB were left with only a "nominal" amounts after the proceeds were disbursed, without any apparent assets to pay the judgment debt to Kupper and BAPTKO).*

j. The transfer occurred shortly before or shortly after a substantial debt was incurred *(the transfer of the real estate occurred during the federal case, and the complete sale of the Mandan Dealerships and divesting of funds occurred within weeks of judgment being entered* [in BAPTKO's favor]*).*

Amended Complaint (Index # 19) at ¶ 31 (citing N.D.C.C. § 13-02.1-04(2)) (emphasis added, with underlines identifying the statutory badges of fraud, and italics identifying supporting facts). It should be noted, the supporting facts provided next to each statutory badge of fraud, above, are in reference to specific facts explained in more detail in the Factual Allegations section of the Amended Complaint (at ¶¶ 11-26).

[¶30]   Overall, Plaintiffs assert their Amended Complaint is plead with sufficient particularity, as is clear from a review of the Amended Complaint itself. However, if the Court disagrees, it should order Plaintiffs to file a new amended complaint to address the issue, rather than outright dismissal of Plaintiffs' meritorious claims.

[¶31]   The Moving Defendants also argue:

---

[4] Slemko does not assert that the FA ND Entities were compelled to make these disbursements, which were entirely voluntary by the FA ND Entities.

> Of equal significance, the undisputed timeline-which Plaintiffs notably avoid in their pleading-establishes that the Eide Transaction was planned and initiated months before the Federal Judgment was entered. Mr. Slemko's declaration-which, at this stage of the case must be accepted as true, *see In re Estate of Nelson*, 863 N.W.2d at 524-establishes that Foundation began strategic discussions about selling the Mandan Dealerships in early 2024 as part of a broader business initiative to focus on core markets.

Moving Defendant's Brief at ¶ 44. The Moving Defendants' argument in this regard is fundamentally flawed and intentionally misleading. As an initial matter, the Court must <u>not</u> accept all the statements of Derek Slemko in his declaration as true for purposes of this motion to dismiss. The Moving Defendants' attempts to get the Court to do so throughout their brief is improper. The Court should "construe the complaint in the light most favorable to the <u>plaintiff</u> and accept as true the well-pleaded <u>allegations in the complaint.</u>" *In re Est. of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521, 524 (emphasis added) (citations omitted). Derek Slemko is the Chief Financial Officer of Foundation Automotive Corp., the parent company of the FA ND Entities (<u>defendants</u> in this state court case). Declaration of Derek Slemko (Index # 22) at ¶¶ 1-2. Slemko submitted the declaration to the federal court in opposition to BAPTKO and Kupper's motion to compel responses to post-judgment discovery and for sanctions. *Id.* at ¶ 3. Slemko's declaration was attached as an exhibit to the Amended Complaint, but Plaintiffs most certainly do not allege that every self-serving statement in the declaration is true. While Slemko may claim that Foundation just so happened to "begin strategic discussions about selling the Mandan Dealerships in early 2024 as part of a broader business initiative to focus on core market," the Court should not assume the truth of such corporate speak by a representative of the <u>defendants</u> in this case. Rather, the Court should assume the truth of the <u>plaintiffs'</u> allegations. It should be noted, "early 2024" was years into the federal litigation and was at a time when the parties were gearing up for a jury trial the defendants would ultimately lose. Transfers made when a debtor had been sued or even just threatened with suit are

a badge of fraud. N.D.C.C. § 13-02.1-04(2)(d). Slemko's claim that the decision to divest all of the assets of the FA ND Entities had nothing to do with the litigation is absurd. This is particularly true in light of the allegation in the Amended Complaint that, "In October 2023, the CEO of Foundation Automotive (parent company FA ND CHEV and FA ND SUB), Kevin Kutschinski ("Kutschinski"), testified in his deposition (which was played at trial in the federal case without objection) that he had no interest in selling the Mandan Dealerships because he liked the cash flow and the Mandan Dealerships had been a good investment for Foundation Automotive." Amended Complaint (Index # 19) at ¶ 21.

### III.    The Amended Complaint Alleges Facts Demonstrating the FA Entities Received Less Than Reasonably Equivalent Value

[¶32]    The Moving Defendants argue the Amended Complaint does not allege facts demonstrating that the FA ND Entities received less than reasonably equivalent value. Moving Defendant's Brief at ¶ 47-52. As an initial matter, the Court should simply accept as true at this stage the Plaintiffs' allegation that, "[t]he Eide Parties did not take the assets for reasonably equivalent value." Amended Complaint (Index # 19) at ¶ 26. *In re Est. of Nelson*, 2015 ND 122, ¶ 5, 863 N.W.2d 521, 524. Do the Moving Defendants expect Plaintiffs to include expert opinions and all relevant facts on the value of the dealerships at the pleading stage? The Moving Defendants have not cited any legal authority that an allegation about value must be supported with specific evidence at this stage. Whether the value was sufficient is a question of fact to be determined by the jury, with fact and expert evidence, not established fully in the pleadings.

[¶33]    In any event, as alleged in the Amended Complaint (Index # 19), there was testimony at trial that Jesse Peterson (President/CEO of Eide Automotive Group) made a verbal proposal to purchase the Mandan Dealerships for $25 to $26 million in 2021, which Kutschinski rejected because he liked the cash flow of the Mandan Dealerships. Kutschinski not only rejected the $25

million to $26 million offer but made a counteroffer for a much higher number in part because the Mandan Dealerships had been a good investment for Foundation Automotive. This alone creates a fact issue on the value of the dealerships, which the Moving Defendants apparently concede. The very one who ultimately purchased the dealerships for far less (Eide Automotive) had made a much larger offer, which was not accepted by the FA ND Entities. Rather, they sold at a drastic discount shortly after judgment was entered against them.

## IV.      The Amended Complaint Alleges Facts Regarding Debtor Insolvency

[¶34]    The Moving Defendants argue the Amended Complaint fails to allege debtor insolvency and fails to allege facts regarding debtor insolvency, which is not true. Moving Defendants' Brief at ¶¶ 53-54. Plaintiffs explicitly alleged in their pleading, "The transfer was of substantially all the debtor's assets (upon information and belief, the Mandan Dealerships were substantially all of FA ND CHEV and FA ND SUB's assets, and according to the Declaration of Derek Slemko (*Exhibit C*), FA ND CHEV and FA ND SUB were left with only a "nominal" amounts after the proceeds were disbursed)." Amended Complaint (Index # 19) at ¶ 31. As discussed above, post-judgment discovery and Plaintiffs' own investigation did not reveal any current assets of the FA ND Entities, and the FA ND Entities produced evidence in post-judgment discovery that their only known assets were intentionally disposed of without any compelling circumstances to do so, leaving them with only nominal amounts.

## V.       The Issue of Whether EAGAL Entities Are Good-Faith Purchasers is a Question of Fact to be Determined at Trial

[¶35]    The Moving Defendants argue the EAGAL Entities purchased the assets in good faith. Moving Defendants' Brief at ¶¶ 55-57. While they are certainly free to argue that defense at trial, their defense is not a basis to grant a motion to dismiss. As alleged in the Amended Complaint, "At all relevant times, they knew of the existence of Kupper and BAPTKO's legal claims, knew

of the federal case, and knew they were obtaining substantially all the assets of FA ND CHEV and FA ND SUB used in the operation of the Mandan Dealerships, mere weeks after a substantial judgment was entered against FA ND CHEV and FA ND SUB. The Eide Parties took steps to attempt to shield themselves from legal liability.[5]" Amended Complaint (Index # 19) at ¶ 25. Slemko even admits he kept the EAGAL Entities well informed of these matters throughout the sale. *See id.* Their supposed "good faith" is a question of fact to be decided at trial, not on a motion to dismiss.

**VI.    The FA Entities Held an Ownership Interest at the Time of Transfer**

[¶36]    The Moving Defendants argue the FA ND Entities held no ownership interest at the time of the transfer. Moving Defendants' Brief at ¶¶ 58-62. This argument is simply false and contrary to documents produced under confidential seal in post-judgment discovery in the federal case. To avoid any allegation of violation of the federal protective order, Plaintiffs will not file the supporting documents in this state court case until the Court issues its own protective order and the documents. However, the issue need not be analyzed by the Court in detail at this time. Plaintiffs specifically alleged in their Amended Complaint, "As part of the sale of the Mandan Dealerships, the real estate was transferred back to FA ND CHEV and FA ND SUB from CARS-DB12 L.L.C and CARS-DB5, L.P., and was then assigned to PMKC." Amended Complaint (Index # 19) at ¶ 23. The Court must accept this allegation as true at this motion to dismiss stage, and the allegation has been made in good faith based on documents produced in post-judgment discovery in the federal case.

---

[5] More information and documents regarding the intentional steps the EAGAL Entities took to attempt to shield themselves from legal liability in relation to the federal judgment were produced under confidential designation in post-judgment discovery in the federal case, and can be provided to this Court pursuant to a protective order.

[¶37]    Plaintiffs request that the Moving Defendants' motion to dismiss be denied.

Dated this 11th day of July, 2025.

BAKKE GRINOLDS WIEDERHOLT


By: */s/ Randall J. Bakke*
        Randall J. Bakke (#03898)
        David R. Phillips (#06116)
        300 West Century Avenue
        P.O. Box 4247
        Bismarck, ND 58502-4247
        (701) 751-8188
        rbakke@bgwattorneys.com
        dphillips@bgwattorneys.com

        Attorneys for Plaintiffs