**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | |
|---|---|
| FA ND CHEV, LLC and FA ND SUB, LLC,<br><br>        Plaintiffs,<br><br>                        v.<br><br>Robert Kupper; Bismarck Motor Company; and BMC Marine LLC d/b/a Moritz Sport & Marine,<br><br>        Defendants.<br>.......................................................................<br>BAPTKO, Inc.,<br><br>        Plaintiff and Counter-Defendant,<br>                        v.<br><br>Foundation Automotive Corp., an Alberta Corporation; FA ND CHEV, LLC; and FA ND SUB, LLC,<br><br>        Defendants and Counterclaimants. | Civil No. 1:20-CV-00138-DMT-CRH<br><br><br><br>**THE FOUNDATION PARTIES'**<br>**RESPONSE BRIEF IN OPPOSITION TO**<br>**BAPTKO, INC. AND ROBERT**<br>**KUPPER'S POST-HEARING BRIEF** |

BAPTKO and Kupper's Brief (Doc. 630) is long on baseless inflammatory rhetoric and short on legal merit. Rather than discussing the merits of the issues in any sober manner, BAPTKO and Kupper choose instead to hurl personal attacks at opposing counsel—accusations of "lies," "bad faith," and "contempt." This reckless and unsupported bombast, however, cannot mask the fundamental flaws in their own arguments. Indeed, rather than pursue traditional judgment enforcement avenues—which remain available, yet unused—BAPTKO launched a multi-jurisdictional litigation campaign, the success of which hinges on a judgment that is not only pending in the Eighth Circuit but may very well be vacated. BAPTKO and Kupper appear far more interested in pressuring and harassing the Foundation Parties into giving up and settling the state law claims than vindicating legitimate legal claims or "recovering" on the judgment in any traditional sense. Perhaps most revealing of this plan—BAPTKO and Kupper insist that if the Foundation Parties post a supersedeas bond, the state court lawsuits "would go away." That is, they appear to make a fantastic suggestion: that the act of positing a bond would take all the Foundation Parties' post-judgment transfers out of the realm of fraud. Such a suggestion is as legally incorrect as it is self-serving.

The fact is, the Foundation Parties cannot post a bond in the full amount of the Amended Judgment. The creditors with priority liens on substantially all Foundation assets have not authorized such a bond, and their financial situation renders a bond covering the full judgment infeasible. Moreover, the Court lacks authority to compel such a bond under the circumstances. If, however, the Court permits BAPTKO and Kupper to use discovery materials in premature state court actions, the Foundation Parties must be protected. Should the judgment be reversed, BAPTKO and Kupper must restore the Foundation Parties to their prior position and pay all fees and costs incurred in defending these unnecessary actions. BAPTKO and Kupper proliferate this litigation at their own peril.

## I.     THE FOUNDATION PARTIES DID NOT LIE TO THE COURT—CIRCUMSTANCES CHANGED DRAMATICALLY.

BAPTKO devotes significant portions of its argument on claims that the Foundation Parties "lied" to this Court. In doing so, however, BAPTKO ignores the associated factual circumstances.

In April 2025, the Foundation Parties proposed a $500,000 bond for post-trial motions—a short-term measure for weeks or months. That same month, the Court entered an Amended Judgment increasing the total by nearly $2 million to approximately $5 million plus interest. In short, what had been a modest short-term bond became a $5 million-plus multi-year bond.

More fundamentally, the Foundation Parties' finances changed. As counsel explained, they ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Hr'g Tr. at 177:15-21.) In fact, between the judgment and October 7, 2025 hearing, Foundation downsized from 23 dealerships to 10. And following the hearing, the Foundation Parties explored obtaining a bond. Senior secured creditors did not authorize it. It is simply not feasible.

These are not lies—they are facts exhibiting changed circumstances. The Foundation Parties have not filed ▮▮▮▮▮▮ and continue operating ten dealerships. They cannot post a bond because senior secured creditors holding priority claims have not authorized diverting assets to bond premiums. BAPTKO conflates inability to post a bond with insolvency.

2

## II.    SENIOR SECURED CREDITORS HAVE LEGAL PRIORITY—NO FRAUDULENT TRANSFER OCCURRED.

BAPTKO's "fraudulent transfer" theory ignores secured creditor priority. The allocation of proceeds was legally required compliance with ███████████████████████████████████ In 2022, over two years before the judgment, Foundation entered credit agreements with senior lenders establishing first priority security interests. (Hr'g Tr. at 75:20-76:11.) As Mr. Slemko testified, the FA ND Entities could not divert funds to BAPTKO without violating senior creditor rights. (*Id.* 86:3-4.) As secured creditors, they had priority over unsecured judgment creditors like BAPTKO.

Around the end of 2023 and beginning of 2024, the Foundation Parties were in ███████ ████████████████████████████████████████ (Hr'g Tr. at 76:24-77:5.) ███████████████ ██████████████████████ sale of the Mandan dealerships by September 2024. (Hr'g Tr. at 87:5-19.) The Foundation Parties had no choice. The proceeds were allocated according to contractual priority: first to senior secured lenders in order of their priority, then to operational creditors necessary to maintain the business. (Hr'g Tr. at 79:14-80:7.) This is not fraudulent activity—it is exactly how secured financing works.

Moreover, BAPTKO's allegations regarding transfers through Foundation Automotive U.S. Corp. lack merit. This entity is not a "third party" vis-à-vis the Foundation Parties. Rather, it is the co-borrower on the same credit facilities that the FA ND Entities are obligated as guarantors. (Hr'g Tr. at 75:4-8.) Perhaps just as important, cash consolidation within this integrated structure has been standard practice for Foundation since 2020. (Hr'g Tr. at 78:8-10.)

## III.    THE COURT CANNOT COMPEL A BOND.

BAPTKO and Kupper argue the Court should compel a bond as a discovery sanction, which is not an appropriate discovery sanction. Supersedeas bonds protect judgment creditors from dissipation—they are not punishment. Appropriate discovery sanctions are those in Rule 37: compelled production, monetary penalties, attorneys' fees. Requiring a bond in an amount not

justified by dissipation risk is an abuse of discretion.

The Foundation Parties substantially complied with discovery, producing over 1,600 pages. Rule 37 requires "willful violation"—not good-faith disputes about scope or concerns about misuse. *Chrysler Corp. v. Carey L.L.C.,* 186 F.3d 1016, 1019 (8th Cir. 1999). The Foundation Parties' concerns about BAPTKO's misuse proved entirely justified when BAPTKO violated the Protective Order by filing state court actions using federal discovery against non-parties. Counsel has an obligation to protect confidential information from improper use.

Nonetheless, BAPTKO claims under an estoppel theory that the Foundation Parties are bound by April 2025 statements about posting a bond. But circumstances materially changed. First, the Court entered an amended judgment, which nullified the judgment as originally entered—which the statements in question were directed towards. Treating conditional April statements about a judgment that is now null and void, and a $500,000 short-term bond, as binding admissions requiring a $5 million-plus multi-year bond under radically different circumstances is the antithesis of equity. It would be manifestly *unjust*.

## IV.    BAPTKO AND KUPPER PROLIFERATE LITIGATION AT THEIR OWN PERIL.

BAPTKO and Kupper are sophisticated litigants who know the judgment is on appeal and may be reversed. They have calculated that pursuing multi-jurisdictional litigation will pressure the Foundation Parties into settlement. This Court should make clear that BAPTKO and Kupper pursue this strategy at their own risk.

State court fraudulent transfer actions filed before a federal judgment is final—based entirely on federal discovery—constitute unnecessary multiplication of proceedings if the judgment is reversed. Federal courts have inherent authority to award fees when a party unnecessarily multiplies proceedings. *See* 28 U.S.C. § 1927. The Foundation Parties should not bear the expense of defending premature collection actions that may prove unwarranted. Their appellate rights should not be

4

prejudiced by strategic multi-jurisdictional litigation designed to force settlement. If this Court permits BAPTKO and Kupper to use discovery materials in state court actions while the judgment remains on appeal, BAPTKO and Kupper must bear all responsibility if the judgment is reversed and the Foundation Parties are entitled to restoration to their prior position. An order permitting use of discovery materials must explicitly condition such use on the judgment being affirmed, preserve all restitution rights if reversed, and authorize fee awards for defending unnecessary actions.

## CONCLUSION

BAPTKO and Kupper's demand for an unauthorized, unfeasible bond—paired with their admission that lawsuits hinge on it—exposes a strategy driven by leverage, not law. The Foundation Parties cannot post a bond that senior secured creditors have not authorized without breaching obligations to those creditors and triggering ███████████████████████████—harming all parties including BAPTKO and Kupper. The Foundation Parties have produced over 1,600 pages of documents, participated in extensive proceedings, and acted in good faith throughout. The sale proceeds were allocated according to the legal priority of senior secured creditors whose interests predate BAPTKO's judgment by over two years. No sanctionable conduct occurred. If BAPTKO is permitted to use discovery materials in premature state court actions while the judgment remains on appeal, the Foundation Parties must be protected. BAPTKO and Kupper proliferate this litigation at their own peril and must bear responsibility if the judgment is reversed.

The Foundation Parties respectfully request that this Court: (1) deny BAPTKO's motion to compel and for sanctions; (2) deny or condition BAPTKO's motion to use documents in state court proceedings, with express protections for restitution and fee recovery if the judgment is reversed; (3) enforce the Protective Order prohibiting use of confidential information outside this cases; (4) deny any requirement to post a supersedeas bond; and (5) stay execution pending appeal without a bond.

Dated this 3rd day of November, 2025.

Respectfully submitted,

*/s/ Kensye N. Wood*
Maxwell N. Shaffer
Kensye N. Wood
LELAND SHAFFER LLP
8694 E. 28th Avenue
Denver, Colorado 80238
(720) 556-1872
Maxwell.Shaffer@lelandshaffer.com
Kensye.Wood@lelandshaffer.com

*Attorneys for Foundation Automotive Corp.,*
*FA ND CHEV, LLC, and FA ND SUB, LLC*