## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| FA ND CHEV, LLC and FA ND SUB, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATIONS** |
| | ) | |
| Robert Kupper; Bismarck Motor Company; | ) | |
| and BMC Marine LLC d/b/a Moritz Sport | ) | |
| & Marine, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| BAPTKO, Inc., | ) | |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Foundation Automotive Corp., an Alberta | ) | Case No.: 1:20-cv-00138 |
| Corporation; FA ND CHEV, LLC; and | ) | |
| FA ND SUB, LLC, | ) | |
| | ) | |
| Defendants and Counterclaimants. | ) | |

Before the undersigned is an array of pending motions, including BAPTKO Inc. and Robert Kupper's ("BAPTKO") *Motion to Compel Discovery, For Sanctions, and For Expedited Decision* (Doc. No. 552), and *Motion to Use Documents and Information Obtained in Post-Judgment Discovery* (Doc. No. 590), as well as FA ND CHEV, LLC, FA ND SUB, LLC, and Foundation Automotive Corp.'s (collectively "the Foundation Parties") *Motion to Enforce Protective Order* (Doc. No. 602) and *Motion for Attorney's Fees and to Stay Pending Appeal.* (Doc. No. 604). The undersigned shall address each motion in turn, and assumes the information provided by the parties is true for purposes of this order.

## I.    Motion to Compel Discovery, For Sanctions, and For Expedited Decision

On April 18, 2025, BAPTKO filed a *Motion to Compel Discovery, For Sanctions, and For Expedited Decision* (Doc. No. 552). Therein, BAPTKO requested the court enter an order compelling the Foundation Parties to (1) fully respond to its discovery requests in aid of execution on the amended judgment with substantive responses, and without objections; (2) award BAPTKO reasonable expenses incurred as a result of the Foundation Parties' failure to cooperate in discovery, and (3) for expedited decision on the matter.

BAPTKO opined that on February 7, 2025, after expiration of the 30-day automatic stay of execution on the judgment, BAPTKO served on the Foundation Parties written discovery in aid of execution, requesting information pertaining to tax returns, financial statements, assets, debts, and creditors, as well as other information pertaining to the Foundation Parties' ability to pay the judgment. (Doc. No. 556 at 3). BAPTKO also requested documents and information pertaining to the sale of the two Mandan Dealerships to a third party during the stay of execution. BAPTKO specifically requested from each of the Foundation Parties the following:

> **INTERROGATORY NO. 7:** Please identify and describe in detail the sale of the subject Mandan dealerships, which was completed after judgment was entered in this case, including the following:
> a.  Identify the parties to the sale;
> b.  Identify the sale price and/or other consideration for the sale;
> c.  Identify any terms or conditions of the sale that referenced or related to the above-captioned lawsuit or the judgment entered in this lawsuit;
> d.  Identify and describe where the proceeds of the sale were deposited or kept after the sale.
> e.  Identify and describe any subsequent transfers of the proceeds, and the current location of the proceeds.
> f.  Identify and describe how the proceeds were used/spent since the sale.

(*Id.* at 3-4). BAPTKO also requested documents from each of the Foundation Parties pertaining to the proceeds of the Mandan dealership sales.

**REQUEST NO. 11:** With respect to the sale of the subject Mandan Dealerships, which was completed after judgment was entered in this case, please provide copies of the following:

    a.   All contracts and related contract documents;

    b.   All closing documents;

    c.   All documents relating to the payment of the funds from the purchaser, and any deposit or transfer of those funds since the sale.

    d.   All documents relating to the use, spending, investing or otherwise accounting for the proceeds since the sale.

(*Id.* at 4). The Foundation Parties served their responses to BAPTKO's discovery requests on March 20, 2025, after receiving an extension of time to respond. BAPTKO alleged that in the responses, the Foundation Parties failed to provide a single substantive answer to interrogatories or a single document in response to the requests for production of documents, instead objecting to every request.[1] (*See* Doc. Nos. 540-9, 540-10, 540-11).

The parties engaged in a meet and confer in April of 2025, and after being unable to reach a resolution, appeared before the undersigned on April 8, 2025, for a status conference to discuss the discovery dispute. (*See* Doc. No. 546). Following the status conference, the undersigned ordered that the pre-judgment Protective Order ("Protective Order" or "Amended Protective Order") (*See* Doc. No. 275) continue to apply to post-judgment discovery proceedings unless otherwise ordered by the court, that the Foundation Parties disclose all records pertaining to the sale of the Mandan dealerships to BAPTKO by the end of the business day on April 10, 2025, and to engage in a second meet and confer by April 13, 2025, and if the parties were unable to reach an agreement after the second confer, BAPTKO was permitted to file a motion to compel or other appropriate motions. (Doc. No. 547).

---

[1] BAPTKO further noted that the Foundation Parties indicated a willingness to produce finance statements for 2024, and tax returns for the years 2023 and 2024, however, no finance statements or tax documents had been provided as of the date of BAPTKO's motion. (*See* Doc. No. 556 at 6).

The Foundation Parties produced 211 pages of documents related to the sale of the Mandan dealerships on April 10, 2025, and later provided an unredacted version of the amounts paid by the purchaser of the Mandan dealerships. (*See generally* Doc. No. 582). The produced documents did not include information regarding how the payment for the goodwill and real property was made, nor did it contain information indicating which Foundation Party or Parties received proceeds from the Mandan sale, and whether the proceeds were ever transferred to a different account, entity, or person, or where the proceeds are currently located. (Doc. No. 556 at 9).

Upon engaging in a meet and confer on April 13, 2025, counsel for the Foundation Parties provided that the proceeds from the sale of the Mandan dealerships were no longer held by FA ND SUB, LLC, or FA ND CHEV, LLC, and that neither FA ND SUB, LLC nor FA ND CHEV, LLC, hold any assets at all. (*Id.* at 9). At the time of the meet and confer, BAPTKO also requested the Foundation Parties provide documents and information regarding assets currently held by the Foundation Parties, to include financial accounts, real property, and business ownership interests by April 14, 2025, and the Foundation Parties purportedly agreed to do so. (*Id.*). However, the Foundation Parties later provided FA ND CHEV, LLC's 2023 tax return, and indicated that it was difficult to discern what documents BAPTKO was seeking as the discovery requests were broad and generalized in nature, and that BAPTKO had not conferred in good faith by failing to narrow the scope of the requests. (*Id.* at 10-11). BAPTKO sent multiple emails to the Foundation Parties attempting to describe the information being sought in relation to the sale of the Mandan dealerships and to again request the voluntary production of documents and information responsive to the discovery requests regarding the location of the sale proceeds. (*Id.* at 11-13). Finally, at the time BAPTKO filed its motion, the Foundation Parties had not provided any documents in response to an April 16, 2025, email, and refused to provide any substantive

responses to BAPTKO's discovery requests other than documents pertaining to the sale of the Mandan dealerships, which do not describe assets currently held by the Foundation Parties, and FA ND CHEV, LLC's 2023 tax return. (*Id.* at 13).

On May 2, 2025, the Foundation Parties filed a response in opposition to BAPTKO's motion. (Doc. No. 562). In its motion the Foundation Parties contended it has acted in good faith throughout the post-judgment discovery process, and the requested relief is premature and unwarranted. The Foundation Parties argued that BAPTKO's motion should be denied as: (1) the motion is procedurally improper as it violates the 30-day stay of execution following entry of the Amended Judgment; (2) BAPTKO misrepresented the Foundation Parties' discovery compliance to the court; (3) BAPTKO did not engage in good faith conferrals; (4) BAPTKO's discovery requests continue to be excessively broad and disproportionate to the needs of execution of the judgment; and (5) sanctions are unwarranted. (*Id.* at 1-2).

The Foundation Parties gave a timeline of events differing from those provided by BAPTKO. The Foundation Parties asserted that BAPTKO was aware of the sale of the Mandan deanships prior to when it sought discovery. As provided by the Foundation Parties, BAPTKO emailed the Foundation Parties on November 6, 2024, the day after conclusion of trial and before entry of the Original Judgment, regarding the sale of the two Mandan dealerships. (*Id.* at 2). On December 4, 2024, three days before the 30-day stay of the Original Judgment lapsed, BAPTKO sent a letter to the Foundation Parties' counsel regarding the sale of the Mandan dealership. (*Id.*).

Foundation's Chief Financial Officer Derek Slemko ("CFO Slemko") opined that Foundation began exploring the potential sale of the Mandan dealerships in in early 2024 as part of a corporate strategy to refocus on dealerships in key markets, with an initiative designed to consolidate operations where Foundation could achieve greater scale and operational efficiency.

(*Id.* at 3). North Dakota was not considered one of these "key" markets. (*Id.*). The Foundation Parties engaged a third-party broker to market the Mandan dealerships for sale, approximately four months before entry of the Order on Summary Judgment (Doc. No. 373), and approximately seven months before entry of the Original Judgment (Doc. No. 490). The Foundation Parties received an initial purchase offer for both the Mandan dealerships in July 2024, however, the sale ultimately fell through. (Doc. No. 562 at 3). In September 2024, Eide Automotive ("Eide") expressed interest in purchasing the Mandan dealerships, with the Foundation Parties executing and finalizing a letter of intent for Eide to purchase the dealerships on September 19, 2024. (*Id.* at 3-4). The Foundation Parties and Eide closed the sale of the Mandan dealerships on December 11, 2024. (*Id.* at 4).

In terms of the real estate associated with the Mandan dealerships, Foundation entered into a real estate purchase agreement in 2023, wherein Foundation agreed to sell all dealership real estate to CARS-DB12 L.L.C. and CARS-DB5, L.P. (collectively "CARS"). (*Id.*). This transaction closed before the discussion of selling the Mandan dealerships began, meaning the Foundation Parties did not own the real estate at the time of the asset purchase transition with Eide in December 2024, and were not entitled to and did not receive those proceeds. (*Id.*). As to the Mandan dealership sale proceeds, the Foundation Parties allocated the funds toward satisfaction of existing loans, financing arrangements including floor plans, transaction costs, and feeds payable to the third-party broker and other lenders. (*Id.*). Any remaining amount of liquidity was nominal, and the decision to sell the Mandan dealerships was part of a business strategy entered months before the Judgment was entered. (*Id.*).

The Foundation Parties further contended that despite being aware of the sale prior to entry of the Original Judgment, BAPTKO waited until February 7, 2025, two months after the stay on the Original Judgment expired, to serve written discovery in aid of execution. (*Id.*). After

disagreement as to an appropriate extension of time to respond to the post-judgment discovery requests, the court granted the Foundation Parties a 10-day extension on March 10, 2025. (*Id.* at 5). The Foundation Parties served their responses and objections on March 20, 2025, objecting to the requests as overbroad, unduly burdensome, and not reasonably calculated to aid in execution of the judgment. (*Id.*). The Foundation Parties also specifically objected to BAPTKO's request for documents dating back to June of 2019, over five years prior to entry of the Original Judgment, but provided that it would produce financial statements for 2024 and tax returns from 2023 and 2024 on a rolling basis. (*Id.*).

On April 1, 2025, the parties engaged in a meet and confer regarding the discovery responses. (*Id.*). At the time of the conference, the Foundation Parties proposed providing information from June 1, 2024, to present, but BAPTKO objected to this limitation. (*Id.*). A status conference was held with the undersigned on April 8, 2025. (*Id.*). At the conclusion of the conference, the undersigned ordered the Foundation Parties to disclose all records pertaining to the sale of the Mandan dealerships by April 10, 2025, and to engage in a second meet and confer by April 13, 2025. (*Id.*; *see also* Doc. No. 547). The Foundation Parties disclosed 211 pages of documents pertaining to the December 2024 sale of the Mandan dealerships on April 10, 2025. (Doc. No. 562 at 6). The parties scheduled a meet and confer for April 13, 2025, and upon BAPTKO's request that the redactions on the produced documents be removed, the Foundation Parties obliged, providing unredacted copies on April 12, 2025. (*Id.*).

The parties engaged in the second meet and confer on April 13, 2025. (*Id.*).

During this call, counsel for BAPTKO indicated that even if the Foundation Parties produced additional documents, a motion to compel was likely inevitable. This statement reveals that BAPTKO's present Motion was not filed to resolve a genuine discovery dispute, but rather as a tactical move to create issues and undermine the credibility of the Foundation Parties and their counsel.

(*Id.*). On April 14, 2025, the Foundation Parties sent BAPTKO an email summarizing the April

13, 2025, meet and confer and produced an additional 177 pages of documents. (*Id.*). Within the

email, the Foundation Parties advised they were having difficulty discerning what documents

BAPTKO was seeking given the broad and generalized nature of the requests, and that it appeared

BAPTKO had not conferred in good faith about the discovery dispute. As noted by the Foundation

Parties' counsel in the April 14, 2025, email,

> More importantly, we need to address a procedural issue that impacts the time of
> any motion to compel. On April 7, 2025, the Court entered an amended judgment
> to include attorney's fees and costs. Under applicable rules, this amended judgment
> is stayed for 30 days. The April 7 amended judgment substantively altered the
> original judgment, and consequently, any execution of the judgment is stayed
> during this period. While BAPTKO and Kupper are certainly permitted to issue
> discovery during the stay, it cannot execute on the judgment. Therefore, a motion
> to compel would be improper and premature at this stage.

(Doc. No. 562-3 at 2).

On April 16, 2025, BAPTKO emailed the Foundation Parties requesting additional

documents and information pertaining to the sale of the Mandan Dealerships by April 17, 2025, at

1:00 PM CT. (Doc. No. 562 at 7). The Foundation Parties responded on April 17, 2025, advising

that counsel was unable to respond within the declared deadline. (*Id.*).

> Despite the prior reminder of the automatic stay of the Amended judgment, on April
> 18, 2025, BAPTKO filed the present Motion to Compel and for Sanctions (Doc.
> No. 552), making it apparent that BAPTKO was eager to file its Motion at the
> earliest opportunity, regardless of the Foundation Parties' ongoing good faith
> efforts to provide responsive information.

(*Id.*). The same day, the Foundation Parties produced an additional set of documents, including

information as to where the sale proceeds went, totaling over 400 pages produced in response to

BAPTKO's discovery requests. (*Id.*). Upon receiving the additional documents from the

Foundation Parties on April 18, 2025, BAPTKO issued subpoenas *duces tecum* to BMO Bank,

N.A. ("BMO") for the Mandan dealerships' bank accounts to obtain documents relating to the sale and subsequent transactions in December 2024. (*Id.* at 7-8).

> This tactic reveals BAPTKO's true objective: rather than working to execute on the judgment through established procedures, like writs of garnishment to the bank accounts, BAPTKO chose to subpoena BMO to gather information to set up a separate claim for fraudulent transfer. As is clear by the communications from and actions of counsel for BAPTKO, the present Motion is not genuinely about obtaining information to execute on the judgment, but rather about pursuing collateral litigation strategies.

(*Id.* at 8).

On May 9, 2025, BAPTKO replied to the Foundation Parties' response. (Doc. No. 568). BAPTKO advised the instant motion was necessary to pierce through the Foundation Parties' evasive tactics and hold it to its legal obligation. (*Id.* at 1). Such a motion was necessary to obtain documents and information in aid of execution on the judgment under the current circumstances, whereas the Foundation Parties never posted a supersedeas bond to secure a stay of execution pending appeal, despite assurances of its intent to do so and later making a similar representation to the Court, its failure to provide information about the Foundation Parties' current assets in response to discovery requests, and divesting two of the three judgment debtors of assets within weeks after the Judgment was entered. (*Id.* at 4-5).

The undersigned first addresses the Foundation Parties' allegation that BAPTKO's motion was procedurally improper as it was filed in violation of the 30-day stay of execution following entry of the Amended Judgment. An Amended Judgment was entered on April 7, 2025. (Doc. No. 545). The Foundation Parties argue that this triggered a new 30-day automatic stay of execution pursuant to Federal Rules of Civil Procedure 62(a), which would remain in effect until May 7, 2025. (Doc. No. 562 at 9-10). BAPTKO filed its motion to compel on April 18, 2025, within the automatic stay period. (*Id.* at 10; Doc. No. 552).

While Rule 62(a) provides an automatic stay on execution of a judgment and enforcement proceedings for thirty (30) days after entry of the judgment, there are exceptions. Fed. R. Civ. P. 62(a). Specifically, the court itself may order otherwise, or as dictated by Rule 62(c) and (d). *Id.* Here, BAPTKO was given leave to file its motion to compel. Specifically, in an April 8, 2025, Order, the undersigned opined that the parties were to engage in a second meet and confer by April 13, 2025, and "[i]f the parties are unable to reach an agreement after the second meet and confer, the [BAPTKO] parties may file their motion to compel and/or other appropriate motions." (Doc. No. 547). The parties complied with the Order, and upon an unsuccessful meet and confer, BAPTKO filed the current motion.

Even if BAPTKO were to have filed a procedurally improper motion, the undersigned still would not recommend denial of the motion on this basis. As requested by the Foundation Parties, "[t]his Court should deny or, at minimum, defer ruling on BAPTKO's Motion until after the expiration of the automatic stay." (Doc. No. 562 at 10). The automatic stay remained in effect until May 7, 2025. It is now well past expiration of the stay.

BAPTKO asks the court to compel the Foundation Parties to fully respond to its discovery requests in aid of execution on the amended judgment. Such a motion is dictated by the Federal Rules of Civil Procedure 69. Rule 69 provides, "[i]n aid of the judgment or execution, the judgment creditor … may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).[2] Under this statute, all discovery procedures provided in the rules are available. Fed. R. Civ. P. 69,

---

[2] The Foundation Parties argue that while the scope of post-judgment discovery is broad, it is not unlimited. It specifically points to Rule 26, which permits discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). However, the rule further provides that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

advisory committee notes to 1970 amendment. "The purpose of post-judgment discovery is to learn information relevant to the existence or transfer of the judgment debtor's assets." *United States v. McLean*, No. 23-CV-2096 (PJS/TNL), 2024 WL 4664448, at *2 (D. Minn. Nov. 4, 2024) (quoting *Brit. Int'l Ins. Co. v. Seguros La Republica, S.A.*, 200 F.R.D. 586, 589 (W.D. Tex. 2000)). "The scope of post[-]judgment discovery is very broad to permit a judgment creditor to discover assets upon which execution may be made." *McLean*, 2024 WL 4664448, at *2 (*quoting JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 256 (5th Cir. 2019)). Rule 69(a) therefore "allows the judgment creditor freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *McLean*, 2024 WL 4664448, at *2 (quoting *SIM Surgical, LLC v. SpineFrontier, LLC*, No. 4:20-CV-01060-JAR, 2023 WL 1100380, at *2 (E.D. Mo. Jan. 30, 2023)).

Based on the parties' briefing, it is apparent the Foundation Parties have provided responses. However, the Foundation Parties appear to continue to be less than forthcoming. In fact, the undersigned previously addressed this issue on at least two prior occasions. After an April 8, 2025, status conference regarding a discovery dispute, the Foundation Parties were ordered to disclose all records pertaining to the sale of the Mandan dealerships to BAPTKO by the end of business day on April 10, 2025. (*See* Doc. No. 547). As reported by both BAPTKO and the Foundation Parties, 211 pages of documents pertaining to the sale were disclosed on April 10, 2025. The Foundation Parties later produced an additional 177 pages of documents after the April 13, 2025, meet and confer, and an additional set of documents after April 17, 2025.

As previously noted, the undersigned required *all* records pertaining to the sale of the Mandan dealerships be disclosed by April 10, 2025. Even so, counsel for BAPTKO repeatedly

requested additional information even after the April 10, 2025, disclosures. As opined by

BAPTKO's counsel in an April 11, 2025, email:

> Thank you for providing some limited additional information as directed by Magistrate Judge Hochhalter. However, the information you provided was extremely limited and we do not believe it was in compliance with Magistrate Judge Hochhalter's directive at the recent meet and confer conference. The information you provided appears to be related to the sale of the Mandan Dealerships previously owed by FA ND CHEV and FA ND SUB and there is no virtually no information provided as to where the proceeds from the sale of the Mandan Dealerships went, other than one wire transfer document identifying that the proceeds were deposited in a BMO Harris bank account for some Foundation entity. None of the other discovery requests or information we asked for was provided at all. Similarly, no information was provided to identify where the proceeds from the Mandan Dealerships went after the money arrived at BMO Harris or where that money is now.

(Doc. No. 562-2 at 3). Further, BAPTKO contended in an April 24, 2025, email to the Foundation

Parties:

> There is no information in the documents provided indicating where the payment proceeds for the Mandan dealership sales went to. We do note that the BMO Harris documents you produced indicate that what appears to be funds paid to FA ND CHEV, LLC and FA ND SUB, LLC for the Mandan dealerships were withdrawn from the FA ND CHEV, LLC and FA ND SUB, LLC BMO accounts soon after the closing on the Mandan dealerships. In that regard, see entry on December 11, 2024, reflecting a "PC TRANSFER DEBIT BAL TRANSFER" of $13,416,829.49 identified in FAC000396. Also see a similar "PC TRANSFER DEBIT PAL TRANSFER["] on December 11, 202[]4 in the amount of $11, 539,727.59, identified in FAC000404.
> We are requesting the Foundation parties (FA ND CHEV, LLC, FA ND SUB, LLC, and Foundation Automotive Corp) immediately advise where there referenced funds in the amounts of $13,416,829.49 (FAC000396) and $11,539,727.59 (FAC000404) were transferred to and that Foundation produce all related documentation.

(Doc. No. 562-5 at 1).

Even more disconcerting is that the undersigned again had to discuss the disclosure of

information and documents at the October 7, 2025, omnibus hearing.

> THE COURT: From today's testimony, though, the funds from the sale went to secured creditors, I mean, they went in a roundabout way. It may have gone to a

nonparty initially, but supposedly they were paid to secured creditors who had a priority interest.

MR. BAKKE: Well, except for we don't have any documentation to show that. And the critical step here is between the FA ND entities and Foundation Automotive U.S. I have not heard any testimony or seen any evidence that these FA ND entities owed a dime to the third party they transferred it to, Foundation Automotive U.S. That debt, if there was a debt, was owed by Foundation Automotive U.S.; so you can't use a third party to transfer the money to.

Now they say Foundation via FA ND entities were owed part of this money. We have no idea. Mr. Slemko hasn't said how much that is or whether –

THE COURT: Well, there's going to be documentation of these different security interest that if they haven't been disclosed, they can be.

MR. BAKKE: Which we don't have.

THE COURT: Right. I get that.

But, Mr. Shaffer, you'd agree that there's – there is documentation to substantiate the claims that these various creditors had to the proceeds from the sale of these two dealerships?

MR. SHAFFER: Yes, Your Honor. And –

THE COURT: And – and has that been disclosed?

MR. SHAFFER: The actual credit agreements for the facilities have not been disclosed and out – my understanding –

THE COURT: Because it seems to be that that's part of what is required to be disclosed.

MR. SHAFFER: I don't disagree, Your Honor.

THE COURT: okay.

(Doc. No. 628 at 179-181). The undersigned subsequently ordered the Foundation Parties to produce all relevant documents after the October 7, 2025, omnibus hearing.

[T]he court **ORDERS** that the Foundation Parties shall produce by October 17, 2025 (if they have not already) all documents, including but not limited to promissory notes, loans, or other or other financial agreements with creditors, to substantiate that other creditors had a right or claim to the proceeds from the sale of FA ND CHEV, LLC's and FA ND SUB, LLC's dealerships in Mandan, North Dakota.

(Doc. No. 629 at 2-3) (emphasis in original).

Despite these repeated orders, it appears the Foundation Parties still have not produced all the required documents as directed and have intentionally withheld documents despite prior court orders. "[A]fter the October 7, 2025, evidentiary hearing ("hearing"), Debtors produced 1,287 pages of documents, including previously undisclosed documents regarding Debtor's financing and relating to the sale of the Mandan Dealerships (which were ordered to be produced no later than April 10, 2025)." (Doc. No. 635 at 2-3) (emphasis and internal citations omitted). Even with these late disclosures, BAPTKO continues to allege the Foundation Parties have not disclosed what happened to the sale proceeds for the Mandan dealerships. This resulted in BAPTKO subpoenaing a third-party bank to learn the funds were initially transferred from FA ND CHEV, LLC and FA ND SUB, LLC to a related non-party entity, Foundation Automotive US Corp., but the details of where the proceeds have since gone remain unknown. (Doc. No. 635 at 3). BAPTKO is further allegedly unaware of the location or description of any of the Foundation Parties' current assets. (Doc. No. 587 at 4).

The court's attention is also struck by the Foundation Parties' own admissions. Although the Foundation Parties contend that BAPTKO made "fundamental misrepresentations" to the court about its discovery efforts, pointing to the disclosure of over 400 pages of documents in response to discovery requests, the lack of relevance of the documents to post-judgment execution proceedings, and its efforts to provide additional responsive information within a reasonable scope, the undersigned is not convinced the Foundation Parties have complied with discovery to the extent it asserts it did. While the undersigned disagrees with BAPTKO that the Foundation Parties completely failed to participate in discovery, it is worth noting concerns raised in the Foundation Parties' own briefing.

Per the Foundation Parties' post-hearing brief, "[t]he evidence showed good faith efforts to produce discovery to BAPTKO while balancing legitimate apprehensions about potential misuse, including the risk of public dissemination of financial data that could imperil business operations, manufacturer relationships, collateral financers, and, ultimately, BAPTKO and Kupper's own ability to collect on their judgment." (Doc. No. 633 at 7-8) (emphasis omitted). While the undersigned is sympathetic to the parties' concerns about the risk of public dissemination of financial data and the potential for misuse, the parties chose to litigate this matter in a public forum, and despite such apprehensions, disclosure of information and documents is not optional, nor can the parties pick and choose what to disclose based on personal apprehension.

The Foundation Parties further alleged that it has "repeatedly expressed willingness to provide additional responsive information within a reasonable scope." (Doc. No. 562 at 11). Yet, testimony provided by the Foundation Parties' counsel at the time of the October 2025, hearing, is unsupportive of that fact. Counsel alleged that while the Foundation Parties offered to provide information if BAPTKO would agree to limit the scope, such an offer was declined. (Doc. No. 628 at 141). However, further examination revealed that BAPTKO requested the Foundation Parties provide all responsive information and documents for each interrogatory and request for production, limited to whatever timeframe the Foundation Parties felt was reasonable and allowable under the Federal Rules of Civil Procedure. (*Id.* at 142). The Foundation Parties did not provide BAPTKO with a time period, nor did it provide any information for said time period, due to its belief that "a motion to compel and a motion for sanctions was inevitable." (*Id.*).

This court has ordered the Foundation Parties to disclose information and documents on multiple occasions. It should not be in a position to have to direct complete disclosure again. While the undersigned appreciates that the Foundation Parties have provided some relevant disclosures,

it still has not disclosed where the sale proceeds have gone or the location or description of current assets, which is relevant to BAPTKO's attempts to collect the judgment. However, the undersigned also does not find it appropriate to require the Foundation Parties to fully respond to BAPTKO's discovery requests with substantive responses, and without objections. While information need not be admissible to be discoverable, the Foundation Parties have a right to object to discovery requests to preserve the record. This does not mean the Foundation Parties do not have to answer or get by with boilerplate objections.

Though the Foundation Parties are of the mind that BAPTKO's discovery requests are overbroad and disproportionate, Rule 69 discovery broadly allows the judgment creditor an opportunity to discover assets that could be used for execution of the judgment. Here, the Foundation Parties take specific issue with BAPTKO's request for financial information dating back to 2019, which it asserts is beyond what is necessary or proportional for post-judgment execution, and the discovery requests themselves are overly broad and burdensome.

BAPTKO has since modified its request from information dating back to 2019 to all substantive responses and documents from July 31, 2020, the date of the lawsuit's commencement, to the present. (Doc. No. 568 at 6). BAPTKO further acknowledged that it requests more than just information and documents pertaining to the sale of the Mandan dealerships.

> BAPTKO has also separately requested documents and information describing other assets they may own and transactions they may have been involved with, including for example: the location and current balance of all bank accounts; the location and value of all real and personal property; transfers of business interests, personal property, and real property; and instruments evincing debt, among other categories of documents and information.

(*Id.*). While acknowledging that the Foundation Parties have produced information and documents pursuant to its discovery obligations, many of these disclosures have been substantially delayed, or only select documents and information has been provided. Accordingly, the undersigned

recommends that the Foundation Parties be required to submit all substantive responses and documents to BAPTKO's requests from July 31, 2020, to the present. Such disclosures shall be made within seven (7) days from the date of the final Order. The Foundation Parties may provide objections but will still be required to substantively respond. As a reminder, information need not be admissible to be discoverable, and one's apprehensions about potential misuse is not an appropriate basis to thwart disclosure under the Rules.

As to whether BAPTKO did not engage in good faith conferrals, such an argument is meritless. Both at the time of briefing and during the post-judgment discovery phase, the Foundation Parties took issue with what it determined was a failure of BAPTKO to confer in good faith. An April 2025, email from the Foundation Parties' counsel advised that its position was that BAPTKO failed to provide any "meaningful detail or guidance" as to post-judgment discovery and thus did not confer in good faith. (Doc. No. 562-3 at 1). Similar arguments are repeated elsewhere in the briefing. (*See* Doc. No. 562 at 18-19). The Foundation Parties also alleged that counsel for BAPTKO indicated a motion to compel was inevitable regardless of what documents were produced. While such a statement was documented in an email from the Foundation Parties' counsel memorializing the events of an April 13, 2025, meet and confer (*see* Doc. No. 562-3 at 1), and counsel continued to argue a motion to compel was inevitable (*see* Doc. No. 628 at 117-19, 142-43), to the undersigned's knowledge, there is no available recording of the meet and confer, and counsel for BAPTKO disagreed with the rendition of what occurred as dictated in the email. However, even if BAPTKO's counsel made such a statement, it does not necessarily mean there was no good faith effort made to resolve the dispute prior to the filing of the motion to compel. It is clear from the Local Rules that after a meet and confer and hearing with the court, a motion to compel may be filed, which is a reality in many civil suits, even when parties attempted to resolve

discovery disputes in good faith. Also notable is that this was a second meet and confer ordered by the court after an initial meet and confer and hearing with the undersigned, during which the parties were ordered to engage in a second meet and confer prior to the filing of any motion to compel.

Second, BAPTKO requests the court award it reasonable expenses incurred as a result of the Foundation Parties' failure to cooperate in discovery. "As the Foundation Parties' responses to BAPTKO's post-judgment discovery requests are evasive in the extreme, entirely incomplete, and contain no answers whatsoever, they should be sanctioned pursuant to Rule 37." (Doc. No. 556 at 22). Federal Rules of Civil Procedure 37 provides in relevant part:

> **(a) Motion for an Order Compelling Disclosure or Discovery.**
> **(1) *In General*.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
> …
> **(4) *Evasive or Incomplete Disclosure, Answer, or Response*.** For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.
> **(5) *Payment of Expenses; Protective Orders*.**
> …
> **(C)** *If the Motion is Granted in Part and Denied in Part.* If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.

Fed. R. Civ. P. 37(a)(1), (4), (5)(C).

The Foundation Parties request the court deny the issuance of sanctions as they are unwarranted under the circumstances. In support of this request, the Foundation Parties argued there has been no violation of Rule 37 as it has timely responded to discovery requests, participated

in multiple meet and confers, engaged in substantive email communications addressing concerns and providing clarifications, made ongoing production of tax returns and financial information, and offered specific explanations for objections. Further, BAPTKO's request was procedurally defective as it rejected proposals to narrow the scope of discovery, refused to meaningfully engage with the Foundation Parties' concerns about the breadth of the discovery requests, and insisted on immediate discovery despite the 30-day automatic stay.

The undersigned will not re-address the arguments made here. Rule 37 provides that in the event a motion is granted in part; the court *may* apportion reasonable expenses. *See* Fed. R. Civ. P. 37(a)(5)(C). The undersigned does not find a basis for doing so here based on the conduct of both parties. It is likely no surprise to either party that this court is cognizant of the number of resources and time spent on this matter and the state court actions. However, both parties have engaged in conduct that frankly could warrant sanctions under Rule 37, but the undersigned is not inclined to recommend such action here. In this instance, the parties shall be responsible for their own fees and costs associated with bringing the respective motions, but the parties are cautioned that stonewalling, vague responses, and inappropriate attacks on counsel may not be met with grace in the future.

Finally, BAPTKO requested expedited decision on the current motion. BAPTKO's motion was filed on April 18, 2025. The undersigned is not in a position to now expediate the matter when such a length of time has passed, and numerous post-judgment motions must be addressed and ruled on. Accordingly, to the extent BAPTKO requests an expedited decision on this matter, it can be deemed moot.

II.     **Motion to Use Documents and Information Obtained in Post-Judgment Discovery**

On August 26, 2025, BAPTKO filed a *Motion to Use Documents and Information Obtained in Post-Judgment Discovery* (Doc. No. 590). BAPTKO requested "the Court issue an order permitting BAPTKO to use documents and information obtained in post-judgment discovery, including those marked 'Confidential,' to be used in state court actions to collect on the judgment, subject to any protective order entered by the state court." (*Id.* at 1). In support of its request, BAPTKO alleged that the Foundation Parties have avoided collecting on the judgment by selling real estate and other assets relating to the Mandan Dealerships shortly after entry of the initial judgment and fraudulently transferred proceeds of the sale to a Foundation company not subject to the judgment or party to this action. (Doc. No. 591 at 2). BAPTKO has commenced two state court actions, one in the 151st Judicial District of Texas, and one in the South Central Judicial District of North Dakota, seeking collection on the federal judgment and relating to the fraudulent transfers that occurred prior to and after the entry of the judgment. BAPTKO now argues that it should be permitted to use post-judgment discovery obtained in the federal case in the state court actions to collect on the federal judgment once the state courts enter an appropriate protective order.

On September 9, 2025, the Foundation Parties responded to BAPTKO's motion. (Doc. No. 601). The Foundation Parties argued "the Motion violates the express terms of this Court's Amended Protective Order; represents an improper attempt to circumvent federal discovery rules; abuses Rule 69 and its post-judgment discovery process; and, further, reveals that BAPTKO failed to follow the required procedures for using protected materials in other litigation." (*Id.* at 1-2). Furthermore, "granting the Motion would act to facilitate forum shopping and BAPTKO's vexatious litigation tactics." (*Id.* at 2). Elsewhere in its briefing, the Foundation Parties argued that

BAPTKO is barred from pursuing new contract claims based on the same transaction or occurrence under the theory of *res judicata,* and its attempts to use post-judgment discovery to develop new claims is an improper attempt to circumvent the preclusive effect of the judgment entered in this court. (Doc. No. 562 at 16-18).

On September 16, 2025, BAPTKO filed a reply to the Foundation Parties' September 9, 2025, response. (Doc. No. 606). Therein, BAPTKO asserted that while the Foundation Parties attempt to describe the state court actions as "additional litigation," "separate lawsuits," or "parallel litigation," the state court proceedings are actually collection actions wherein BAPTKO is attempting to collect on debt owed under the federal judgment. Moreover, BAPTKO argued the Foundation Parties grossly misrepresented its "strategy," there is good cause to modify the Amended Protective Order, the Amended Protective Order does not currently address the use contemplated in BAPTKO's motion, there has been no forum shopping, and there are no alternative remedies available.

While the Foundation Parties claim to be concerned with the state court actions acting as new contract claims based on the same transaction or occurrence as the instant matter, it contradicts itself. It is true that the Foundation Parties adamantly believe BAPTKO is attempting to circumvent the federal proceedings, however, according to a memorandum filed in the North Dakota state matter, "[t]his case is a thinly veiled post-judgment collection tactic designed to circumvent the federal appellate process, despite the fact that the judgment in the underlying matter is currently pending before the Eighth Circuit." (Doc. No. 592-2 at 2). It appears to the undersigned that the Foundation Parties are "talking out of both sides of their mouth" as it has acknowledged the state matters are post-judgment collection actions but also attempt to portray them as new contract claims.

In a matter of expediency, permitting the parties to use post-judgment discovery in the state court proceedings would serve judicial efficiency. BAPTKO initiated the state actions to collect on the debt owed under the federal judgment; it is reasonable to extend the protection of the current Protective Order to both the North Dakota and Texas state court actions. As questioned by the undersigned previously, "[w]hy shouldn't this Court expand [the protective order] because the Court has the power to do that, order otherwise, and allow the same substance to apply in these two state court proceedings?" (Doc. No. 628 at 162). The undersigned further noted that although it can issue an order stating the amended protective order can apply to the state matters, it will be up to the state court judge to impose it. (*Id.* at 165). It is the recommendation of the undersigned that the Protective Order be extended for use in the state court proceedings and the list of individuals to whom information may be disclosed, such as "other persons," shall be expanded to include all counterparts[3] during the North Dakota and Texas state court proceedings. The undersigned further recommends that any protective order entered by the state court mirror that of the federal court to the extent practicable. Upon the entry of appropriate protective orders in the North Dakota and Texas matters, the parties may use documents and information obtained in post-judgment discovery to the extent dictated by the protective orders.

### III. Motion to Enforce Protective Order and Motion for Attorney's Fees and to Stay Pending Appeal

On September 9, 2025, the Foundation Parties filed a *Motion to Enforce Protective Order* (Doc. No. 602) and *Motion for Attorney's Fees and to Stay Pending Appeal.* (Doc. No. 604). The Foundation Parties moved for the court to enter an order: (1) enforcing the Amended Protective Order and enjoining BAPTKO from further violations; (2) staying the state court proceedings in

---

[3] The state court counterparts shall be dictated by the list on pages 5-6 at paragraph 18 of the Amended Protective Order. (*See* Doc. No. 275 at 5-6).

North Dakota and Texas pending resolution of the pending appeal in this matter; (3) staying post-judgment enforcement pending appeal; and (4) require BAPTKO and its counsel to pay attorney's fees and expenses incurred in bringing the instant motion. (Doc. No. 602 at 1).

Within its memorandum, the Foundation Parties argued BAPTKO's conduct demonstrated "a fundamental misunderstanding of – or deliberate disregard for – the limits imposed by court-ordered discovery protections. The current violations are not isolated incidents but represent a continuation of the same misconduct that required judicial intervention three years ago." (Doc. No. 603 at 1-2). The Foundation Parties pointed to a 2022 *Motion to Enforce the Stipulated Protective Order and for Sanctions* (Doc. Nos. 80-81) filed "based on [Robert] Kupper's misuse of confidential discovery materials." (*Id.* at 2), and the court's enforcement of the protective order based on the sharing of information subject to the protective order with BAPTKO prior to the consolidation of the cases. (*See* Doc. No. 170). The Foundation Parties now contend BAPTKO is engaging in the same misconduct.

The Amended Protective Order entered on August 31, 2023, provides that "[i]nformation that is designated as 'Confidential' shall not be used for any purpose except for the prosecution or defense of these Consolidated Cases unless authorized by further order of this Court." (Doc. No. 275 at 5). As previously noted, the undersigned entered an order in April of 2025, directing that the Protective Order continue to apply to post-judgment proceedings unless otherwise ordered by the court. (Doc. No. 547).

Despite the directive that the Protective Order continues to apply to post-judgment discovery, the Foundation Parties contend that BAPTKO has directly violated the Protective Order and abused the post-judgment discovery process by initiating state court actions in North Dakota and Texas. (Doc. No. 603 at 3-4). The North Dakota action "seeks to unwind transfers from the

Mandan dealership sale using fraudulent transfer theories under the North Dakota Uniform Voidable Transactions Act." (*Id.* at 4). The Texas action similarly seeks to unwind transfers from the Mandan dealership sale and alleges fraudulent transfer theories under Texas law. (*Id.*).

The Foundation Parties further pointed to BAPTKO's filing of a motion requesting permission to use documents and information obtained in post-judgment discovery, including those designated as "Confidential," in the state court actions as a direct contravention of the Protective Order. (*Id.*). Finally, the Foundation Parties argued that the filing of parallel state court proceedings revealed that BAPTKO's true aim was to build and prosecute fraudulent transfer claims as opposed to aiding in the execution of the federal judgment. (*Id.* at 4-5).

BAPTKO filed a response in opposition to the Foundation Parties' motions on September 23, 2025. (Doc. No. 608). Therein, BAPTKO averred that the Foundation Parties continue to lock it in a box where the only option to collect on the judgment is to conduct post-judgment discovery, and to only execute on the judgment in this case against parties whose assets were depleted almost immediately after entry of the judgment. (*Id.* at 4). BAPTKO further argued that in bringing this motion, the Foundation Parties failed to comply with local rules, failed to establish BAPTKO violated the Protective Order, that commencement of the state court actions was appropriate, and post-judgment enforcement should only be stayed pending appeal if the Foundation Parties post a full supersedes bond.

On September 30, 2025, the Foundation Parties filed a reply in support of their motion. (Doc. No. 617). The Foundation Parties contended that BAPTKO's response confirms that it views the Protective Order as "a mere inconvenience to be circumvented rather than a binding judicial command." (*Id.* at 1). Moreover, BAPTKO has engaged in "hair-splitting" by claiming not to have violated the Protective Order as they have not filed confidential documents but have filed two

separate state court actions premised on information obtained through federal post-judgment discovery. (*Id.*). The Foundation Parties further argued that it is in compliance with Local Rule 37.1, BAPTKO has in fact violated the Protective Order, the state court actions constitute improper forum shopping and abuse of discovery, and the state court actions justify unconditional stay.

The undersigned first turns to BAPTKO's assertion that the Foundation Parties failed to follow the procedures outlined in Local Rule 37.1 in the filing of the instant *Motion to Enforce Protective Order* (Doc. No. 602) and *Motion for Attorney's Fees and to Stay Pending Appeal* (Doc. No. 604). BAPTKO argued that the Foundation Parties filed the instant motion without having a meet and confer with BAPTKO, and without participating in a telephonic status conference with the Magistrate Judge, as required by the local rules.

Local Rule 37.1 dictates civil discovery motions. The Rule provides as follows:

(A)    OBLIGATION TO CONFER
A party may not file a motion concerning a discovery or scheduling dispute (*e.g.*, a motion to compel discovery, motion for sanctions, motion for protective order, or motion to amend scheduling order) until the parties have conferred, either in person, by telephone, or by other reliable, real-time electronic means, to make a reasonable, good faith effort to resolve the dispute without involving the court. A written demand for relief, including a demand through email, is not sufficient. The moving party must make a reasonable effort to confer, and the opposing party must make a reasonable effort to participate.

(B)    OBLIGATION FOR CONFERENCE WITH MAGISTRATE JUDGE
In addition to the requirements in subsection (A), the parties may not file a motion concerning a discovery or scheduling dispute until after the parties have participated in a conference with the assigned magistrate judge unless the court grant sleave to file the motion. The parties must contact the chambers of the assigned magistrate judge to request a conference be scheduled.

(C)    SANCTIONS FOR NON-COMPLIANCE
A party's failure to comply with the requirements of this rule may result in the court summarily granting or denying the motion, as well as awarding costs and reasonable attorney's fees.

D.N.D. Civ. L.R. 37.1.

In response to BAPTKO's contention that the Foundation Parties failed to comply with the requirements of Local Rule 37.1, the Foundation Parties averred that such objection is meritless. (Doc. No. 617 at 2). The Foundation Parties argued that BAPTKO initiated parallel litigation in multiple jurisdictions utilizing information obtained through post-judgment discovery subject to the Protective Order, and "the Foundation Parties need not engage in a 'meet and confer' process to enforce these continued violations of the Protective Order." (*Id.*). In support of this argument, the Foundation Parties pointed to the state court complaints, asserting that the violations were evident on the face of the complaints, which were filed without permission of this court, or by seeking modification of the Protective Order, and correspondence between the parties' counsel further demonstrates BAPTKO was aware of the violations but continued its conduct anyway. (*Id.*). As such, the Foundation Parties argued that it properly brought the matter to the court's attention, and BAPTKO was fully aware of the Foundation Parties' position regarding use of discovery in other proceedings, and the court explicitly extended the Protective Order to post-judgment discovery.

While the undersigned cautions the Foundation Parties to heed the local rules more closely in the future, it is not inclined to recommend denial of the motion on that basis in this specific instance. The court was aware of this motion prior to the October 7, 2025, hearing and ordered the parties to prepare accordingly in advance of the hearing, and no such argument was made at the time of the hearing. As such, the undersigned shall consider the merits of the motion.

The Foundation Parties additionally request the court enforce the Amended Protective Order and enjoin BAPTKO from any further violations. The undersigned has thoroughly reviewed the Amended Protective Order and its prior ruling on the *Motion to Enforce the Stipulated*

*Protective Order and for Sanctions.* (*See* Doc. Nos. 80-81, 170). The Amended Protective Order states as follows:

> 16.    Information that is designated as "Confidential" shall not be used for any purpose except for the prosecution or defense of these Consolidated Cases unless authorized by further order of this Court.

(Doc. No. 275 at 5). It further provides,

> Except as the Court may otherwise expressly direct and subject to the further conditions imposed by this Protective Order, information that is designated as "Confidential" may be disclosed only to:
> …
> (l) Such other Persons by further order of the Court.

(*Id.* at 5-6). The Foundation Parties interpret this to mean that all information disclosed under the Protective Order deemed confidential cannot be used for any purpose other than prosecuting or defending this litigation in this specific case. However, in reading the language of the Protective Order, and in the court's order extending the Protective Order to post-judgment discovery proceedings, this is simply not the case. The Protective Order specifically provides that information designated as confidential may only be used for purposes of prosecution or defense of the Consolidated Cases, unless authorized by further order of the court. The court also has authority to order disclosure to other persons. Not only does this permit the parties to use such information in prosecuting or defending this litigation, but the court also has the authority to permit the use of information by further order.

At the omnibus hearing on October 7, 2025, the undersigned discussed the use of the Amended Protective Order in depth with the parties. Notably, the undersigned noted throughout the hearing that the Protective Order's language permits the use of confidential information for the prosecution or defense of the consolidated cases.

> THE COURT: Well, and I think Mr. Bakke's position is that part of recovering the judgment on behalf of his client is determining whether there have

27

been fraudulent transfers of money that could otherwise be available to satisfy that judgment. Am I right about that, Mr. Bakke?

       MR. BAKKE: You're absolutely spot on.

       THE COURT: And that, to me, is mentioned in this protective order that we have in place. Let me find that.

       I'm looking at page 5 of the amended protective order, subpart (e), paragraph 16: Confidential information shall not be used for any purpose except for the prosecution or defense of these consolidated cases.

       And I think Mr. Bakke's point is that he's prosecuting this case. Having received a judgment, he's trying to have his client realize on that judgment. And part of that process is finding out whether money was fraudulently transferred at some point or another. So to me that fits within the parameters of the existing protective order. And do you disagree with that?

       MR. SHAFFER: Slightly, Your Honor.

(Doc. No. 628 at 158). Of further interest is the Foundation Parties' notation in its post-hearing briefing:

> The Foundation Parties do not oppose reasonable use of discovery materials obtained here to enforce judgments and pursue valid claims related to the post-judgment collection efforts, provided such use is conditioned upon any and all receiving parties following the protections that this Court has put in place to maintain the confidentiality of the information and protect the Foundation Parties' interests.

(Doc. No. 633 at 7). It is evident that neither party disagrees with the use of discovery materials obtained in the federal case being used to enforce the judgment and pursue valid claims related to post-judgment collection, conditioned by the protections put in place, and yet the parties still cannot agree on what constitutes appropriate disclosure. The Amended Protective Order permits the parties to use information in the defense or prosecution of the case, or as otherwise directed by the court. This means that under the Protective Order, BAPTKO has the right to use information ascertained in the course of this matter to collect on the judgment, whether in state court or otherwise.

The undersigned is also not convinced that BAPTKO violated the terms of the Protective Order in the two state court proceedings. As previously noted, the Protective Order permits the use of information in defending or prosecuting the consolidated cases. The purported purpose of the state court proceedings is to assist in the collection of the judgment, which is in line with the provisions of the Protective Order. Even if BAPTKO was incorrect in its assumption that the confidential information could be used in the state court proceedings, there is no indication that BAPTKO has revealed confidential information in the pleadings or other filings in the state court proceedings and has instead requested the court permit it to use such documents and information obtained in post-judgment discovery in the state court actions.

Such disclosure of confidential documents or information in the state court proceedings was inquired about at the October 7, 2025, hearing, with counsel for BAPTKO questioning the Foundation Parties' counsel as to what was supposedly disclosed in the state court proceedings that was produced in the federal court action.

> THE COURT: Just for clarity, the documents that the witness was referring to were used for informational purposes, I think was her testimony, in drafting the complaint at state court. Is that what you were saying, Ms. Wood?
>
> THE WITNESS: Yes, Your Honor.
>
> Q. (MR. BAKKE CONTINUING) Okay. Let's go through the documents referenced there, the information.
>        So in this, in terms of the failure to pay, it talks about the earnout provisions in the APA; correct?
>
> A. on page 2?
>
> Q. On page 2 and 3.
>
> A. That is the header that I'm reading there, yes.
>
> Q. Okay. So that's – that's not a document that was produced in post-judgment discovery, is it?
>
> A. No.

Q. Okay. And then let's turn to page 4 of the federal lawsuit to recover unpaid earnouts of money. Those talk about the judgments, the original judgment and the amended judgment, both of which are publicly filed; correct?

A. Yes.

Q. Those weren't produced by Foundation in post-judgment discovery, were they?

A. No, they were not.

Q. Okay. And then the transfers made with actual intent to hinder, delay or defraud BAPTKO on – starting on paragraph 21, page 5 continuing on to page 6, in terms of the sales documents, those documents that are referred to, the real estate transaction documents, those are publicly available in Morton County through the NDRIN system, are they not?

A. The reason you know to look for those is because of the closing binder that was produced because that – as Mr. Slemko testified earlier, that whole transfer of property was – involved a lease agreement, the – to, you know, free up capital. I mean, it wasn't just, like, direct. It wasn't clear. The only way you know that is if you look at the closing binder.

Q. Well, no. It would be a matter of just simply looking it up on NDRIN showing who had the mortgages. It was Bravera Bank and Starion Bank for the real estate and showing that the documents – because there were warranty deeds and related documents filed, showing the property transferred from the CARS entities to the Eide entities; correct? Specifically PKMC. Those are publicly available documents, aren't they?

A. The link to Foundation was the – cause like you just said, when you search that it doesn't come up FA ND CHEV, FA ND SUB owed that property. It comes up with this CARS entity that owned it and then transferred it to the Eide entities. So the only way you know that's connected to Foundation is through the closing binder.

Q. Well, except for during the case in federal court there was discussion in front of the jury in open court and in deposition testimony that was not sealed where there was discussion that Foundation had sold and was in the process of selling the real estate and owned the real estate prior to CARS; correct? That's all publicly available information. You don't need to look at –

A. I don't think so.

Q. – anything that was produced by Foundation in post-judgment discovery, do you?

A. I'm going to heavily disagree with that as an accurate portrayal of what was said in open court in front of the jury.

30

(Doc. No. 628 at 147-50). The undersigned also inquired about confidential information used in the filing of the state court actions.

> THE COURT: Hang on once. The complaints have already been filed in these state actions, am I right about that, Mr. Bakke?
>
> MR. BAKKE: Yes.
>
> THE COURT: And were documents attached as exhibits somehow to those complaints or some such thing?
>
> MR BAKKE: No.
>
> THE COURT: So none of the confidential documents have been used in public filings in the state court proceedings?
>
> MR. BAKKE: Correct. We'd like to.

(Doc. No. 628 at 159). BAPTKO reaffirmed this in its post-hearing briefing. Because the Protective Order permits the use of information obtained in the course of litigation to defend or prosecute the Consolidated Cases, the undersigned is not inclined to find that BAPTKO has violated the terms of the Protective Order or to otherwise recommend enforcement of the Protective Order.

Next the undersigned turns to the Foundation Parties' request that the court stay the North Dakota and Texas state proceedings. This request is a non-starter. Not only do the Foundation Parties request this court exert its authority over the state courts, but it also cites no caselaw to support the contention that this court even has the authority to interfere with judgment collection actions filed in state courts. While not binding precedent, the undersigned is persuaded by the findings of the Southern District of New York.

> Nothing in Rule 69(a) confines a judgment creditor to a single forum for its collection proceedings. *See Est. of Ungar v. Palestinian Auth.*, 412 F. Supp. 2d 328, 331 (S.D.N.Y. 206) ("Plaintiffs are not prohibited from maintaining parallel federal and state causes of action to enforce a judgment."). To the contrary: "[S]everal courts have opined that filing concomitant state and federal proceedings in an effort to satisfy an outstanding default judgment may be the most prudent court of action."

*Id.* (collecting cases); *see also Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 1993 WL 50528, at *2 (E.D.N.Y. Feb. 23, 1993) ("[T]he fact that plaintiff has commenced proceedings in the New York State courts to enforce the federal judgment does not preclude this court from granting discovery" under Rule 69(a)(2)) (collecting cases); 12 Federal Practice & Procedure § 3013 ("The fact that an action is pending in state court to enforce the federal court judgment does not preclude supplementary proceedings in aid of execution in the federal court.").

*Clinton Cap. Corp. v. 257 W. 21st St. Assocs., Inc.*, No. 16MC353LAKBCM, 2024 WL 1142210, at *3 (S.D.N.Y. Feb. 28, 2024), *report and recommendation adopted*, No. 16-MC-353 (LAK), 2024 WL 1141045 (S.D.N.Y. Mar. 15, 2024).

Here, the state court proceedings initiated by BAPTKO stem from attempts to collect on the federal judgment and are essentially collection actions. Best put by BAPTKO, "the assets at issue have been moved to another state, and are outside of the subject matter jurisdiction of this Court involving non-diverse parties and no federal question." (Doc. No. 606 at 3). Because the Foundation Parties fail to point to any legal authority under which this court can stay the state court actions, beyond generally stating "[the need for a stay] stems from the Court's inherent authority to enforce its orders, prevent circumvention of its procedures, and ensure that discovery is not weaponized for collateral litigation" (Doc. No. 633 at 15), and has not to the undersigned's knowledge requested the state courts stay their proceedings, there is no justification or authority for this court to exert its authority over the state court actions.

The Foundation Parties likewise request the court stay post-judgment enforcement pending appeal. The Foundation Parties previously filed a *Motion to Stay Execution of Judgment* and supporting memorandum. (Doc. No. 534, 535). Therein, the Foundation Parties requested the court enter an order staying the Judgment pending the court's decision on various post-trial motions. Notably,

The Foundation Parties are prepared to post a supersedeas bond to secure the Judgment; however, it would be inefficient and unduly burdensome for them to secure an initial bond now for a portion of the current Judgment amount and then

later obtain an additional bond once the Court determines the total amount due after resolving the Fees/Costs Motion.

(Doc. No. 535 at 2). Moreover, "[s]taying execution of the Judgment pending resolution of the Post-Trial Motions and the Fees/Costs Motion will not prejudice BAPTKO, as the Foundation Parties remain willing to post an appropriate bond as necessary for a potential appeal to secure the final judgment once determined." (*Id.* at 3). Upon ruling on the post-trial motions, the court deemed the *Motion to Stay Execution of Judgment* moot. (*See* Doc. No. 544).

The Foundation Parties now ask to stay post-judgment enforcement pending appeal; however, circumstances are much changed since its initial motion. Particularly, the Foundation Parties allege throughout its briefing that it is no longer in a position to post a supersedes bond. (*See* Doc. No. 633 at 8).[4]

Federal Rules of Civil Procedure 62 governs the stay of proceedings to enforce a judgment. Pursuant to this Rule, "[a]t any time after judgment is entered, a party may obtain a stay by providing a bond or other security. The stay takes effect when the court approves the bond or other security and remains in effect for the time specified in the bond or other security." Fed. R. Civ. P. 62(b). "This means that 'an appellant may obtain a stay of [a] money judgment during the pendency of the appeal as a matter of right by posting an adequate supersedeas bond.'" *Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (KMM/JFD), 2025 WL 2103730, at *1 (D. Minn. July 28, 2025) (quoting *Estate of Snyder v. Julian*, No. 1:11-cv-24-LMB, 2014 WL 668191, at *1 (E.D. Mo. Feb. 20, 2014)).[5] The Federal Rules of Appellate Procedure provide

---

[4] Interestingly, in a memorandum filed in support of a Motion to Dismiss Plaintiff's Amended Complaint in the North Dakota state matter the Foundation Parties argued that although BAPTKO alleged it was insolvent, there is no such insolvency. "Here, [BAPTKO] allege[s] no insolvency and plead[s] no facts suggesting the FA ND Entities had no remaining assets, operations, or income. [BAPTKO's] insolvency theory rests on a mischaracterization of financial consequences, not legal criteria." (*See* Doc. No. 592-2 at 17-18).

[5] "Finally, subdivision (b) changes the provision in the former subdivision (d) that 'an appellant' may obtain a stay. Under new subdivision (b), 'a party' may obtain a stay. For example, a party may wish to secure a stay pending

further relevant instruction. In filing a motion for stay, the party seeking the stay must first ordinarily move for the following relief in the district court: (1) a stay of judgment or order of the district court pending appeal; (2) approval of a bond or other security provided to obtain a stay of the judgment; or (3) an order suspending, modifying, restoring, or granting an injunction while the appeal is pending. Fed. R. App. R. 8(a)(1)(A)-(C).

"The purpose of a supersedeas bond is to secure the appellee from loss resulting from the stay of execution." *Exec. Air Taxi Corp. v. Cty. of Bismarck, N.D.*, No. 1:04-CV-56, 2007 WL 559819, at *1 (D.N.D. Feb. 14, 2007) (quoting *Fed. Prescription Serv., Inc. v. American Pharm.*, 636 F.2d 755, 761 (D.C. Cir. 1980)) (internal quotation marks omitted). A supersedeas bond generally is set at an amount equal to the judgment being appealed, however, the district court, at its discretion, has the authority to waive the supersedeas bond requirement or set it at a lower amount. *Brakebill v. Jaeger*, No. 1:16-CV-008, 2020 WL 13699062, at *1 (D.N.D. June 29, 2020); *see also Exec. Air Taxi Corp.*, 2007 WL 559819, at *1. The court may consider multiple factors when determining whether to waive the bond requirement: "(1) the complexity of the collection process; (2) the amount of time required to obtain a judgment on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the appellant's ability to pay the bond is so plain the cost of the bond would be a waste of money; and (5) whether the appellant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the appellant in an insecure position." *Exec. Air Taxi Corp.*, 2007 WL 559819, at *1; *see also Dillon v. Cty. of Chicago*, 866 F.2d 902, 904-05 (7th Cir. 1988).

The first factor considered is the complexity of the collection process. Based on the extent of filings, post-judgment motions, discovery disputes, the fact this is a consolidated case that is

disposition of post-judgment proceedings after expiration of the automatic stay, not yet knowing whether it will want to appeal." Fed. R. Civ. P. 62, advisory committee notes to 2018 amendment.

not only on appeal, but has also resulted in the filing of two state cases, and that one of the named parties, Foundation Automotive Corp., is a Canadian corporation, it would be unreasonable to assume that the collection process would be anything but complex.

The second factor looks to the amount of time required to obtain a judgment on appeal. This matter has been pending on appeal since April 11, 2025. (Doc. No. 548). To date, the parties have filed their briefs in the Eighth Circuit Court of Appeals, with only the scheduling of oral argument, and the oral argument itself, remaining before the decision is made on appeal.

Upon consideration of the third factor, the undersigned is not confident in the ability of the Foundation Parties to pay the Judgment. Although CFO Slemko testified that while the bond would not put the Foundation Parties into bankruptcy, there was no means to pay it, and it would be "another catalyst" towards bankruptcy. (*See* Doc. No. 628 at 92-93). The Foundation Parties further argued that following the October 2025 hearing, it explored the option of obtaining a bond, but senior secured creditors did not authorize it and were holding priority claims.[6]

The fourth factor looks to whether the appellant's ability to pay the bond is so plain that the cost of the bond would be a waste of money. Based on the parties' briefing and arguments before the court, it appears that the Foundation Parties are in a somewhat precarious financial situation and their ability to pay the bond is in question. The Foundation Parties specifically note that "[a] bond is not financially feasible under current circumstances." (Doc. No. 633 at 8). While the undersigned does not have all the information as to the current status of the Foundation Parties' finances, this in itself is enough to cause concern that the Foundation Parties may be unable to pay the bond.

---

[6] Also noted in the Foundation Parties' briefing is that "[t]he proceeds were allocated according to contractual priority: first to senior secured lenders in order of their priority, then to operational creditors necessary to maintain the business." (Doc. No. 638 at 3) (internal citations omitted).

Finally, the fifth factor weighs whether the appellant is in such a precarious financial situation that the requirement to post bond would place other creditors of the appellant in an insecure position. In its briefing, the Foundation Parties advised that following the October 2025 hearing, the ability of obtaining a supersedeas bond was explored with its lenders and advisors. (Doc. No. 633 at 9). However, senior creditors did not authorize a bond due to the company's current financial situation, which would render a bond unfeasible. (*Id.* at 10). Moreover, the Foundation Parties opined that the collection efforts risk disrupting relationships with senior lenders, and could lead to harm to stakeholders, including third-party creditors. (*Id.* at 15).

In stark contrast to the Foundation Parties' allegations of financial woes, is BAPTKO's argument that the Foundation Parties do not claim to be in such a precarious situation as to place other creditors in an unsecure position. (*See* Doc. No. 608 at 16). BAPTKO points to the fact that the Foundation Parties previously claimed it could satisfy the judgment and were prepared to post a supersedeas bond, and its continued employment of two to three attorneys, all of whom reside outside the State of North Dakota. (*Id.* at 17). This matter was discussed at the time of the October 2025, hearing, at which two out-of-state attorneys personally appeared in this District. During attorney Randall Bakke's ("Mr. Bakke") examination of CFO Slemko, Mr. Bakke questioned:

> Q. Okay. Okay. And I'm also curious, has there been discussion at Foundation why in, as an example, the state court lawsuit in Mandan that Foundation staffs everything that occurs in that case with three lawyers?
>
> A. Three? I'm –
>
> Q. Yes, Ms. Woods, Mr. Shaffer, and a gentlemen [sic] by the name of Jack Zuger, an attorney from St. Paul, Minnesota.
>
> A. Right. Because we needed local counsel.
>
> Q. Well, I guess if you're in dire financial straits, why are you manning these cases with up to three attorneys rather than one? Has there been discussion about that?
>
> A. A lot. Yes.

(Doc. No. 628 at 49). BAPTKO argues this conduct demonstrates the Foundation Parties are not in the dire financial situation it sets itself out to be in. (*See* Doc. No. 608 at 17).

Considering these factors, the undersigned is not convinced that a stay should be issued without an adequate supersedeas bond. While the undersigned is mindful of the difficulties the Foundation Parties are facing, the undersigned must also weigh the potential for it to go insolvent during the pendency of appeal and post-judgment proceedings. As opined by the District of Minnesota,

> Defendants suggest that they should not be required to post a bond simply because they cannot. But this fact weighs against the relief sought. Courts tend to waive the bond requirement based on a conclusion that a judgment debtor is in such a financially secure position that there is no reasonable likelihood a judgment creditor will end up unable to collect after the appeals process is completed.

*Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (KMM/JFP), 2025 WL 2103730, at *2 (D. Minn. July 28, 2025); *compare Willis Elec. Co., Ltd. v. Polygroup Ltd.*, No. 15-CV-3443 (JNE/DTS), 2024 WL 1653709, at *2 (D. Minn. Apr. 17, 2024) ("Given the substantial amount of the judgment and the importance of securing it against the possibility of Ploygroup's insolvency during the appeal process, the Court finds that a bond for the full amount of the judgment plus 10% for post-judgment interest, costs, and damages for delay is necessary." (internal citations omitted)), *with Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 761 (D.C. Cir. 1980) ("The elements of the situation here were as follows: (1) the damage award was $102,000, with action on the request for attorneys' fees and costs being deferred pending appeal because both parties had appealed on questions going to the merits; (2) the documented net worth of the judgment debtor was $4.8 million, about 47 times the amount of the damage award; (3) the judgment debtor was a long-time resident of the District of Columbia, and there was no indication it had any intent to leave. In light of these factors, we cannot say the district court abused

its discretion in granting a stay on appeal without requiring a supersedeas bond." (internal citations omitted)).

The undersigned has previously addressed the potential complications with collecting the judgment. "Am I requiring them to produce blood from a turnip then? Because the testimony was they can't afford it." (Doc. No. 628 at 169). Similar conclusions have been addressed by other courts in the Eighth Circuit; however, lack of funds is not reason enough for a stay without a supersedeas bond. *See Kelley v. Westford Special Situations Master Fund, L.P.*, No. 19-CV-1073 (KMM/JFP), 2025 WL 2103730, at *3 (D. Minn. July 28, 2025) ("Defendants do not address how the amount of time required to resolve the appeal supports waiver and the record provides no basis for the Court to have confidence in the availability of funds to pay the judgment. Indeed, Defendants have gone to demonstrate the opposite. While this may ultimately mean that Defendants are correct that the Trustee 'cannot squeeze blood from a stone,' they provide no reason why that reality should allow them to obtain a stay of execution of execution of the judgment without posting a supersedeas bond." (internal citations omitted)).

Based on the Foundation Partes' current financial position, and as dictated by relevant caselaw, the undersigned recommends that the court require a supersedeas bond for the full amount of judgment, plus 10% for post-judgment interest, costs, and damages. The undersigned further recommends that upon posting the bond, a stay be entered pending resolution of the appeal to the Eighth Circuit.

Finally, the Foundation Parties request the court require BAPTKO and its counsel to pay reasonable attorney's fees and expenses incurred in bringing the instant motion. As previously opined, the issuance of reasonable fees and expenses is dictated by Federal Rules of Civil Procedure 37.

An award of reasonable attorney's fees and expenses is not justified here. Each party shall be responsible for its own fees and costs. While the Foundation Parties argue it was forced to expend substantial resources in addressing BAPTKO's misconduct and the pending motions, the undersigned reminds both the Foundation Parties and BAPTKO that it takes two to tango. The undersigned is also not so quick to forget that it had to order disclosure of post-judgment discovery on multiple occasions and had to do so yet again. The undersigned cautions against continued failure to fully comply with the court's orders.

## IV.    Conclusion

For the reasons articulated above, the undersigned recommends that BAPTKO's *Motion to Compel Discovery, For Sanctions, and For Expedited Decision* (Doc. No. 552) be **GRANTED IN PART**. BAPTKO's *Motion to Use Documents and Information Obtained in Post-Judgment Discovery* (Doc. No. 590) be **GRANTED**. The Foundation Parties' *Motion to Enforce Protective Order* (Doc. No. 602) be **DENIED** and the *Motion for Attorney's Fees and to Stay Pending Appeal* (Doc. No. 604) be **GRANTED IN PART**. Finally, the parties' counsel are encouraged to recall their civility and remember that they are working in the best interests of their clients, not ad hominem attacks on one another.

**NOTICE OF RIGHT TO FILE OBJECTIONS**

Pursuant to D.N.D. Civ. L.R. 72.1(D)(3), any party may object to this recommendation within seven (7) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 11th day of February, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court