**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | |
|---|---|
| FA ND CHEV, LLC and FA ND SUB, LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>Robert Kupper; Bismarck Motor Company; and BMC Marine LLC d/b/a Moritz Sport & Marine,<br><br>    Defendants.<br>.................................................................<br><br>BAPTKO, Inc.,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>Foundation Automotive Corp., an Alberta Corporation; FA ND CHEV, LLC; and FA ND SUB, LLC,<br><br>    Defendants and Counterclaimants. | Civil No. 1:20-CV-00138-DMT-CRH<br><br><br><br><br>**THE FOUNDATION PARTIES'**<br>**RESPONSE TO ORDER TO SHOW**<br>**CAUSE** |

Foundation Automotive Corp. ("Foundation"), FA ND CHEV, LLC ("FA CHEV"), and FA ND SUB, LLC ("FA SUB," and together with FA CHEV, the "FA ND Entities") (collectively, the "Foundation Parties"), hereby respectfully submit this Response to the Court's Order (Doc. 648) to Show Cause as to "why the Foundation Parties, their officers, directors, and representatives should not be held in contempt for failing to abide by the February 23, 2026, Order requiring it to post bond in the amount of $5,139,981.90[.]" In support thereof, the Foundation Parties state as follows:

**BACKGROUND**

This matter arises from post-judgment proceedings following a seven-day jury trial in which this Court entered judgment in favor of BAPTKO, Inc. ("BAPTKO") on November 7, 2024, in the amount of $3,000,000.00, plus prejudgment interest of $364,195.67. (Doc. 490.) Following resolution of post-trial motions, the Court entered an Amended Judgment on April 7, 2025, adding

attorneys' fees of $1,085,186.44 and costs of $223,328.71, bringing the total judgment to $4,672,710.82, plus post-judgment interest. (Doc. 545.) On April 11, 2025, the Foundation Parties filed a notice of appeal to the United States Court of Appeals for the Eighth Circuit, which remains pending. (Doc. 548; Case No. 25-1747.)

During the course of post-judgment discovery, BAPTKO initiated two parallel state court actions without first seeking leave of this Court. On May 29, 2025, BAPTKO and Kupper filed suit in the South Central Judicial District Court in Morton County, North Dakota (Case No. 30-2025-CV-00652), asserting fraudulent transfer claims under the North Dakota Uniform Voidable Transactions Act arising out of the December 2024 sale of the Mandan dealerships. BAPTKO separately initiated a second action in the 151st Judicial District Court of Harris County, Texas (Case No. 2025-44872), against Foundation Automotive US Corp. and Foundation Auto Holdings, LLC, non-parties to this federal case, asserting substantially similar fraudulent transfer claims under Texas law. Both state court actions were premised on information and documents obtained through federal post-judgment discovery governed by the Court's Amended Protective Order (Doc. 275), which expressly prohibits the use of confidential information for any purpose other than the prosecution or defense of the consolidated federal cases unless authorized by further order of this Court. (*Id*. at ¶ 16.) The Court had specifically reaffirmed on April 8, 2025, that the Amended Protective Order continued to apply to all post-judgment discovery proceedings. (Doc. 547.) BAPTKO did not seek leave of this Court before initiating either state court proceeding. It sought retroactive authorization to use federally-designated confidential documents in those proceedings only after both lawsuits were already filed. (Doc. 590.)

In direct response to BAPTKO's initiation of these unauthorized parallel proceedings, the Foundation Parties filed a Motion to Enforce Protective Order and a Motion for Attorney's Fees

and to Stay Pending Appeal on September 9, 2025. (Docs. 602, 604.) The Foundation Parties sought, among other relief, a stay of the North Dakota and Texas state court proceedings pending resolution of the Eighth Circuit appeal. (Doc. 603.) Critically, the Foundation Parties' stay request was not a conventional supersedeas bond request under Federal Rule of Civil Procedure 62 directed at staying execution of the judgment. Rather, it was relief sought as a sanction for BAPTKO's improper use of federal post-judgment discovery to fuel collateral litigation filed in direct contravention of this Court's Amended Protective Order.

The Foundation Parties expressly argued that bond requirements attach to execution stays, not to orders enjoining litigation initiated in violation of court-ordered discovery protections, and that the need for a stay arose from the Court's inherent authority to enforce its own orders and prevent circumvention of its procedures — independent of any bond obligation. (Doc. 633 at 15.)

The Foundation Parties further argued that, in any event, a supersedeas bond was not financially feasible. When the Foundation Parties had proposed posting a modest $500,000 bond in April 2025 to secure a short-term stay during the pendency of post-trial motions, that proposal contemplated a brief period while the District Court addressed the Foundation Parties' post-trial motions. (Doc. 542; Doc. 633 at 8-9.) The denial of those motions and the entry of the Amended Judgment increased the total amount at issue by nearly $2 million, and transformed what had been contemplated as a short-term measure into a question of posting a bond of approximately $5 million for the duration of a multi-year appellate process. (Doc. 633 at 9.) In the intervening months, the Foundation Parties' financial circumstances had deteriorated significantly. As CFO Derek Slemko testified at the October 7, 2025 omnibus hearing, Foundation's cash management system sweeps all dealership proceeds on a daily basis into Foundation Automotive U.S. Corp., which then allocates those funds in accordance with contractual and forbearance obligations to

3

senior secured institutional lenders whose rights predated the judgment and are legally superior to those of BAPTKO as an unsecured judgment creditor. (Transcript of Oct. 7, 2025 Omnibus Hearing ("Hr'g Tr.") at 21:17-23; 22:13-25; 23:1-7.) Mr. Slemko testified that Foundation could not have set aside funds to satisfy the BAPTKO judgment because all available proceeds were required to be applied to outstanding senior secured obligations—obligations totaling approximately $150 million including unpaid interest—in order to prevent its lenders from calling their loans and forcing the company into liquidation. (Hr'g Tr. at 76-77.) Following the October 7 hearing, the Foundation Parties diligently explored whether a supersedeas bond could be obtained with their lenders and advisors. Senior secured creditors did not authorize a bond due to the lack of available unencumbered collateral, rendering the premium economically unmanageable under the company's current financial condition. (Doc. 633 at 10.) The Court itself acknowledged this reality at the hearing, asking whether requiring the Foundation Parties to post bond would be "requiring them to produce blood from a turnip." (Hr'g Tr. at 169:15-16.)

BAPTKO's response confirmed that the bond demand was not a good-faith effort to secure the judgment, but a pressure tactic. BAPTKO's counsel represented at the October 7 hearing that if the Foundation Parties posted a supersedeas bond, the two state court lawsuits would go away. (Hr'g Tr. at 172-73.) As the Foundation Parties argued, that position is both illogical and revealing: the validity of alleged fraudulent transfers has no bearing on whether the Foundation Parties are able to post a bond in the federal case, and linking dismissal of the state court actions to the posting of a bond confirms that those lawsuits were being deployed as strategic pressure rather than as legitimate enforcement mechanisms. (Doc. 633 at 10, 14.)

On February 11, 2026, Magistrate Judge Hochhalter issued a Report and Recommendation concluding, among other things, that BAPTKO had not violated the Amended Protective Order

4

and that this Court lacked authority to enjoin the state court proceedings. (Doc. 642.) The Report and Recommendation further recommended that the Foundation Parties' request for a stay pending appeal be granted only upon deposit of a supersedeas bond in the full amount of the judgment plus ten percent—a condition that conflated the Foundation Parties' sanction-based stay request with the conventional Rule 62 bond framework the Foundation Parties had not invoked and had specifically argued was inapplicable. On February 23, 2026, Judge Traynor adopted the Report and Recommendation in its entirety and ordered the Foundation Parties to deposit $5,139,981.90 with the Clerk of Court for deposit into the Court Registry Investment System ("CRIS"), conditioning the stay of the judgment on that deposit. (Doc. 645.) The February 23, 2026 Order did not specify a deadline by which the deposit was required to be made.

On March 16, 2026, the parties appeared for a status conference to address the Foundation Parties' compliance with the February 23, 2026 Order. On March 17, 2026, the Court entered the Order Directing Disclosure and to Show Cause, directing the Foundation Parties to show cause why they and their officers, directors, and representatives should not be held in contempt for failing to make the required deposit. (Doc. 648.)

## ARGUMENT

### I.    CONTEMPT IS NOT APPROPRIATE BECAUSE THERE IS NO SPECIFIC DEADLINE FOR THE CRIS DEPOSIT.

"Contempt is serious." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (5th Cir. 2017). It is "a potent weapon" available to the judiciary. *See Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). "To reflect its seriousness, courts must exercise the contempt sanction with caution and use '[t]he least possible power adequate to the end proposed.'" *Gascho*, 875 F.3d at 799 (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)).

"Contempt cannot be based on 'a decree too vague to be understood,' but is instead reserved for those who 'fully understand[]' the meaning of a court order and yet 'choose[] to ignore its mandate.'" *Id.* (*quoting Int'l Longshoremen's Ass'n*, 389 U.S. at 76).  And because the remedy is "extraordinary nature, courts rightly impose it with caution." *Joshi v. Pro. Health Servs., Inc.*, 817 F.2d 877, 879 n.2 (D.C. Cir. 1987). "A party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly violated a definite and specific order of the court." *Gascho*, 875 F.3d at 799 (internal quotation mark and citation omitted).

The February 23, 2026 Order directed the Foundation Parties to deposit $5,139,981.90 into the Court Registry Investment System. (Doc. 645.) It did not, however, specify any deadline by which that deposit was required to be made.  Considering the absence of a compliance deadline, a contempt cannot lie. for failing to comply with a timeframe the Court never imposed. The Foundation Parties have not flouted a specific command of this Court; they have simply not yet completed an act for which no deadline was established. Until the Court issues an order specifying a date certain for performance and the Foundation Parties fail to comply with that date, the predicate for a contempt finding is absent. The show cause order should accordingly be discharged.

## II.    IRRESPECTIVE OF A COURT ORDER, COMPLIANCE IS IMPOSSIBLE.

Even where the threshold showing of a clear order and noncompliance is made, a finding of contempt is precluded when the alleged contemnor demonstrates an inability to comply. Once a prima facie case of contempt is established, the burden shifts to the non-movant to show (1) that it was unable to comply, explaining why categorically and in detail; (2) that its inability to comply was not self-induced; and (3) that it made in good faith all reasonable efforts to comply. The Foundation Parties satisfy each element of this defense.

**A.**      **The Foundation Parties are genuinely unable to make the required CRIS deposit, and have explained why categorically and in detail.**

The Foundation Parties' inability to deposit $5,139,981.90 is not a matter of strategy or preference. It is a financial reality confirmed by sworn testimony and voluminous documentary evidence already before the Court. As CFO Derek Slemko testified under oath at the October 7, 2025 omnibus hearing, Foundation's cash management system sweeps all dealership proceeds on a daily basis into Foundation Automotive U.S. Corp., which then allocates those funds in strict accordance with contractual and forbearance obligations owed to senior secured institutional lenders. (Hr'g Tr. at 21:17-23; 22:13-25; 23:1-7.) Those senior secured lenders hold first-priority claims on the Foundation Parties' assets—claims that arose years before BAPTKO's judgment and are legally superior to those of BAPTKO as an unsecured judgment creditor. (Hr'g Tr. at 75:12-20.) Mr. Slemko testified that Foundation's outstanding obligations to its senior secured lender total approximately $150 million, including unpaid interest, and that all available proceeds must be applied to those obligations to prevent the lender from calling its loans and forcing the company into liquidation. (Hr'g Tr. at 76:8-77:5.) The Foundation Parties have no unencumbered assets from which to fund a deposit of the magnitude the February 23, 2026 Order requires.

Following the October 7, 2025 hearing, the Foundation Parties diligently explored whether a supersedeas bond could be obtained through their lenders and advisors. Senior secured creditors declined to authorize the bond precisely because the Foundation Parties lack available unencumbered collateral, rendering the bond premium economically unmanageable under current financial conditions. (Doc. 633 at 10.) These findings were further corroborated by the Foundation Parties' October 17, 2025 production of over 1,200 pages of records supporting the entitlement of senior secured lenders to dealership sale proceeds and confirming the structure of the Foundation Parties' financial obligations. (Doc. 633 at 8.) The Court itself acknowledged the gravity of this

situation at the October 7 hearing, asking whether compelling a bond deposit would be "requiring them to produce blood from a turnip." (Hr'g Tr. at 169:15-16.) That acknowledgment was well-founded. The Foundation Parties have explained their inability to comply categorically and in detail, as the Eighth Circuit requires.

### B.    The Foundation Parties' inability to comply is not self-induced.

The inability-to-comply defense is unavailable where the contemnor's financial incapacity is the product of its own deliberate conduct designed to avoid compliance. That is not this case. The Foundation Parties' financial condition is the product of a senior secured credit facility obtained years before the judgment was entered and a forbearance arrangement with institutional lenders that preceded, and operates independently of, the BAPTKO judgment. The sale of the Mandan dealerships—the event BAPTKO characterizes as the source of available proceeds—was itself required by the terms of those senior secured obligations. Mr. Slemko testified that Foundation was in default on its credit facility in early 2024, could not make interest payments, and undertook the Mandan sale under significant lender pressure to deliver and satisfy outstanding obligations through an asset-sale waterfall. (Hr'g Tr. at 75:22-77:5.) The proceeds were allocated in strict priority order to secured creditors whose claims predate the judgment—not to avoid BAPTKO, but to comply with contractual obligations that bound the Foundation Parties long before BAPTKO obtained its judgment.

Moreover, the Foundation Parties' financial deterioration since the judgment was entered reflects the consequences of an overleveraged balance sheet and reduced dealership performance—not voluntary asset dissipation. Since entry of judgment, Foundation has sold thirteen dealerships and reduced its footprint from twenty-three to ten operating dealerships, with all proceeds flowing to senior secured creditors pursuant to the existing waterfall. (Doc. 633 at 14.) None of this was orchestrated to frustrate BAPTKO's collection efforts. The inability to fund

a $5.1 million deposit today is a consequence of financial obligations incurred years ago, not a consequence of conduct designed to evade this Court's order.

        **C.       The Foundation Parties have made all reasonable good-faith efforts to comply.**

The third element of the inability defense requires a showing that the alleged contemnor made in good faith all reasonable efforts to comply. The Foundation Parties have done precisely that. After the October 7, 2025 hearing, Foundation's leadership and counsel worked with its lenders and financial advisors to evaluate the feasibility of obtaining a supersedeas bond. That inquiry was thorough and earnest. The conclusion—that senior secured creditors would not authorize the bond and that the premium on a bond of this magnitude was economically unmanageable given the Foundation Parties' capital structure—was not reached by default. It was reached through diligent engagement with the relevant parties. (Doc. 633 at 9-10.) The Foundation Parties have not stood idle in the face of the February 23, 2026 Order. They have engaged in ongoing document production in response to the Court's parallel disclosure directives and have appeared before the Court at the March 16, 2026 status conference to address the order's requirements directly. Good faith is evident throughout.

**III.     FOUNDATION NEVER REQUESTED A STAY UNDER RULE 62.**

An independent reason that contempt does not lie here is that the February 23, 2026 Order's bond condition was imposed on a motion that was never a Rule 62 execution stay request in the first instance. The Foundation Parties' Motion for Attorney's Fees and to Stay Pending Appeal sought relief as a sanction for BAPTKO's conduct in filing two parallel state court actions in direct contravention of this Court's Amended Protective Order—not as a supersedeas bond request under Rule 62 to stay execution of the judgment. (Doc. 603.) The Foundation Parties argued expressly that bond requirements attach to execution stays, not to orders enjoining litigation improperly initiated through the abuse of federal post-judgment discovery. (Doc. 633 at 15.) The need for the

requested stay arose from this Court's inherent authority to enforce its own orders and prevent circumvention of its procedures—authority that operates independently of any bond obligation. The Foundation Parties further argued that Rule 62(d) is permissive, not mandatory, and that district courts lack authority to unilaterally impose a supersedeas bond in the absence of an appellant's motion for a formal stay of execution. (Doc. 633 at 10-12; *citing U.S. for Use of Terry Inv. Co. v. United Funding & Investors, Inc*., 800 F. Supp. 879, 881-82 (E.D. Cal. 1992); *Af-Cap, Inc. v. Republic of Congo*, No. A-01-CA-321-SS, 2005 WL 8155158, at *1 (W.D. Tex. Oct. 17, 2005).)

The February 23, 2026 Order, in conditioning the requested stay on a CRIS deposit, effectively transformed the Foundation Parties' sanction-based motion into a conventional Rule 62 bond proceeding and imposed a payment obligation the Foundation Parties never invited through that vehicle. A party cannot be held in contempt for failing to satisfy a financial obligation that was imposed by recharacterizing the nature of its own motion. To hold the Foundation Parties in contempt under these circumstances would be to punish them for the Court's analytical framework, not for any willful defiance of a clearly understood command.

## IV.    CIVIL CONTEMPT WOULD BE DISPROPORTIONATE AND COUNTERPRODUCTIVE.

The March 17, 2026 Order directs the parties to contemplate a range of potential remedies, including receivership, dismissal of the appeal, civil and criminal contempt, writs of execution, and involuntary bankruptcy. (Doc. 648.) The Foundation Parties address each in turn.

Receivership and involuntary bankruptcy would not benefit BAPTKO and would instead severely harm all parties' prospects for recovery. The Foundation Parties operate under forbearance agreements with institutional senior secured lenders holding priority claims totaling approximately $150 million. Any aggressive judicial intervention that disrupts the Foundation

10

Parties' operating relationships with those lenders—including the appointment of a receiver or the filing of an involuntary bankruptcy petition—risks causing those lenders to terminate forbearance, call their loans, and initiate foreclosure or liquidation proceedings. In that event, BAPTKO—as an unsecured judgment creditor ranking below all senior secured debt—would stand to recover nothing. The Court acknowledged this precise risk at the October 7, 2025 hearing when it recognized that the Foundation Parties cannot simply be bled dry without consequence to the very creditor seeking enforcement. The Foundation Parties' ability to continue operating and generating cash flow is the only realistic mechanism through which BAPTKO could eventually recover on its judgment, whether through the outcome of the pending Eighth Circuit appeal or otherwise.

Dismissal of the appeal is equally inappropriate. The Eighth Circuit appeal raises substantial and legitimate questions regarding the liability of the FA ND Entities specifically, including whether BAPTKO proved at trial that Foundation properly assigned its obligations under the earnout provision to FA ND CHEV, LLC and FA ND SUB, LLC. These are not frivolous arguments; they go to the threshold question of which parties, if any, are properly obligated under the judgment. Dismissing the appeal as a sanction for a non-willful inability to post bond would deprive the Foundation Parties of their right to appellate review based on financial circumstances that are not of their own making, and would risk an unjust outcome should the Eighth Circuit agree with any of the Foundation Parties' arguments on the merits.

Writs of execution are available to BAPTKO through conventional channels if it chooses to pursue them, but BAPTKO has never availed itself of those remedies. As the Foundation Parties have noted throughout these proceedings, BAPTKO allowed the automatic stay to expire in December 2024 without seeking a writ of garnishment, writ of execution, or any other conventional enforcement mechanism against the Foundation Parties' identifiable assets.

11

BAPTKO instead chose to file two parallel state court lawsuits using federally-protected discovery materials, a course of action that has consumed the parties' and this Court's resources for months. That BAPTKO has not pursued the conventional tools available to judgment creditors is a factor the Court should weigh before imposing extraordinary remedies against parties who have, at all times, engaged in good faith with this Court's discovery and enforcement directives.

The Foundation Parties respectfully submit that the appropriate disposition of the show cause order is to discharge it, allow the parties to continue the rolling document production currently underway in compliance with the March 17, 2026 disclosure directive, and afford the Foundation Parties a reasonable and specified deadline within which to make the CRIS deposit or to demonstrate to the Court's satisfaction that compliance remains financially impossible.

## **CONCLUSION**

For the foregoing reasons, the Foundation Parties respectfully request that the Court discharge the Order to Show Cause. The February 23, 2026 Order imposed no deadline for the CRIS deposit, and contempt cannot lie for failure to comply with a timeframe never established. Even if a sufficient predicate for contempt existed, the Foundation Parties' inability to fund the required deposit is genuine, not self-induced, and the product of senior secured debt obligations that predate and are legally superior to BAPTKO's unsecured judgment—circumstances this Court itself recognized when it asked whether compelling the deposit would require producing blood from a turnip. The Foundation Parties have at all times acted in good faith, engaged in rolling document production in compliance with the Court's disclosure directives, and explored in earnest every available avenue for satisfying the bond requirement. Contempt is a remedy of last resort reserved for willful defiance of clear judicial commands. Neither element is present here. The Foundation Parties respectfully request that the show cause order be discharged and that the Court

establish a specific, reasonable deadline within which the Foundation Parties may demonstrate continued good-faith compliance or make the required deposit to the extent circumstances permit.

Dated this 31st day of March, 2026.

Respectfully submitted,

*/s/ Kensye N. Wood*
Maxwell N. Shaffer
Kensye N. Wood
LELAND SHAFFER LLP
8694 E. 28th Avenue
Denver, Colorado 80238
(720) 556-1872
Maxwell.Shaffer@lelandshaffer.com
Kensye.Wood@lelandshaffer.com

*Attorneys for Foundation Automotive Corp.,*
*FA ND CHEV, LLC, and FA ND SUB, LLC*

13