IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| FA ND CHEV, LLC and FA ND SUB, LLC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| Robert Kupper; Bismarck Motor Company; and BMC Marine LLC d/b/a Moritz Sport & Marine, | ) ) ) ) | |
| Defendants. | ) ) | Case No. 1:20-CV-00138-DMT-CRH |
| | ) | |
| BAPTKO, Inc., | ) ) | |
| Plaintiff and Counter-Defendant, | ) ) ) | |
| v. | ) ) | |
| Foundation Automotive Corp., an Alberta Corporation; FA ND CHEV, LLC; and FA ND SUB, LLC, | ) ) ) ) | |
| Defendants and Counterclaimants. | ) ) | |

**SECOND SUPPLEMENT TO FA ND SUB, LLC'S RESPONSES AND OBJECTIONS TO BAPTKO, INC.'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS IN AID OF EXECUTION**

Pursuant to Fed. R. Civ. P. 26, 33, and 34, FA ND SUB, LLC ("FA SUB"), through counsel, hereby submits this Second Supplement to Responses and Objections to BAPTKO, Inc.'s ("BAPTKO") Interrogatories and Requests for Production of Documents in Aid of Execution.

**Exhibit 7**

**GENERAL OBJECTIONS**

1.      FA SUB objects to each and every Interrogatory and Request for Production (each a "Request," and collectively, the "Requests") to the extent it seeks information and/or documents subject to the attorney-client privilege and/or work product doctrine. FA SUB will not produce information or documents protected by the attorney-client and/or work product doctrine privileges or any other privilege that would make the information immune from discovery in whole or in part. FA SUB does not intend by these responses or objections to waive any applicable privilege.

2.      FA SUB objects to the "General Definitions" and "Instructions" to the Requests to the extent that they are vague, ambiguous, overbroad, unduly burdensome, and neither relevant to the enforcement of the judgment nor proportional to the needs of the case, and to the extent they impose or attempt to impose greater duties on FA SUB than those provided under the Federal Rules of Civil Procedure. Subject to and without waiving these objections, FA SUB will respond to the Requests without regard to the definitions, based on the reasonable and ordinary meanings of the words used, and in accordance with the applicable rules and authority.

3.      FA SUB's responses are limited to the period July 31, 2020 to present, consistent with the Court's directive.

4.      These General Objections are incorporated into each one of FA SUB's objections and responses below.

**INTERROGATORIES**

**INTERROGATORY NO. 1:**  Identify all banks, brokerages, or other financial or lending institutions (collectively "financial institution") in which FA ND SUB has maintained any checking accounts, savings accounts, investment accounts, certificates of deposits, safety deposit boxes, or other accounts from June 21, 2019 to present. For each account, identify:

2

a. The name, address and telephone number of the financial institution and the branch where the account is located;

b. The type of account and type of asset in the account;

c. The account number and routing number, if applicable;

d. The full name(s) under which the account is held;

e. The current balance of the account;

f. The identity of each authorized signer for the account at any time from June 21, 2019 to present and the dates between which the signer was authorized; and

g. The contents of FA ND SUB'S resolution establishing the account, copying the resolution verbatim or attaching a copy of it to your answers.

**FIRST SUPPLEMENTAL RESPONSE:** This Interrogatory is overly broad in time and scope, unduly burdensome, and seeks information that is irrelevant to BAPTKO's collection or enforcement of the judgment and disproportionate to the needs of this case. Post-judgment discovery is subject to the normal discovery limits, as well as being calculated to assist in collecting on a judgment. *See* FED. R. CIV. P. 69(a)(1) ("The procedure on execution-and in proceedings supplementary to and in aid of judgment or execution-must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *Credit Lyonnais, S.A., v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) ("The right to conduct discovery applies both before and after judgment.").

FA SUB's accounts with financial institutions over the past five years and six months have no relation to the execution of the judgment in this case nor is the information calculated to aid BAPTKO in collecting on the judgment. The Interrogatory seeks information dating back to June 21, 2019, which was revised to July 31, 2020 per the Court's recent order. The judgment, however, was entered on November 7, 2024. The expansive timeframe does not assist BAPTKO in identifying assets or financial information relevant to the satisfaction of the judgment. Post-

judgment discovery must be limited to information relevant to the judgment debtor's present ability to satisfy the judgment, rather than serving as an impermissible fishing expedition into historical financial matters. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26(b) does not "allow fishing expeditions in discovery," and "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear on the issues in the case.").

FA SUB further objects to the extent the Interrogatory seeks information equally reflected in bank statements produced or to be produced, or seeks information not within FA SUB's possession, custody, or control.

Subject to and without waiving these objections and limited to July 31, 2020 to present, FA SUB responds as follows:

FA SUB has maintained the following deposit accounts during the relevant period:

1. BMO BANK N.A. (formerly BMO Harris Bank, N.A.)
   Address: 111 West Monroe St., 18th Floor, West Chicago, IL 60603
   Account Name: FA ND SUB LLC
   Account Type: Checking Account
   Account Number: 255-069-7
   Routing Number: 071000288
   Current Balance: $5,711.39

2. STARION BANK
   Address: 109 First St NW, Mandan, ND 58554
   Account Name: FA ND SUB LLC
   Account Type: Checking Account
   Routing Number: 091310767
   Account Number: 10189086
   Current Balance: approximately $0.00 or nominal amount

Authorized signatories during the relevant period include designated corporate officers and treasury personnel, including:

4

| INDIVIDUAL AUTHORIZATION | DATE ADDED | DATE REMOVED |
|---|---|---|
| Kevin Kutschinksi | 02/01/2019 | |
| Derek Slemko | 06/01/2020 | |
| Jess Wright | 03/16/2023 | 04/17/2024 |
| Lisa Metcalf | 09/28/2023 | 08/20/2024 |
| Judy Baird | 09/28/2023 | 07/18/2024 |
| Jose Medina | 09/28/2023 | |
| Forest Dane Olson | 09/28/2023 | 04/29/2025 |
| Holly Jundt | 03/21/2024 | 08/19/2024 |
| Josie Amador | 06/21/2024 | 02/25/2025 |
| Sherry Moos | 08/19/2024 | 11/17/2025 |
| Kristi Slemko | 08/20/2024 | |

Current balances as of the date of these responses are reflected in the most recent account statements, which will be produced on a rolling basis. Balances fluctuate daily. Responsive non-privileged banking resolutions establishing account authority will also be produced on a rolling basis. FA SUB does not maintain brokerage accounts, certificates of deposit, or safety deposit boxes in its own name during the relevant period.

To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB further states that BMO Harris Bank produced certain account statements of FA SUB from December 1, 2024 through October 31, 2025 in the Harris County, Texas action pursuant to subpoena issued by BAPTKO. To the extent those account statements reflect transactions associated with FA SUB's deposit accounts, those materials are already in BAPTKO's possession as a result of that subpoena production. FA SUB will not duplicate documents already produced by BMO in response to that subpoena.

FA SUB will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**INTERROGATORY NO. 2:** Identify all personal property FA ND SUB owned, claimed any interest in, or had title to, including but not limited to inventory, motor vehicles, equipment, machinery, tools, collections, etc. regardless of locations, from June 21, 2019 to present. As to each item of personal property, identify:

a. A complete description of the item, including as applicable the year, make, model, serial number, and other permanent identification numbers;

b. The item's estimated current fair market value;

c. The complete address or legal description of the location of each item;

d. A description of FA SUB'S interest in the property; and

e. The identity of each person or business, other than FA SUB, with an ownership interest, lien, or other interest in the property, and identify and describe their interest.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and disproportionate to the needs of post-judgment discovery to the extent it seeks a line-item inventory of every item of dealership property over a multi-year period, including serial numbers and permanent identification numbers for inventory that was routinely acquired and sold in the ordinary course of business. FA SUB further objects to the extent the Interrogatory calls for legal conclusions regarding ownership, valuation opinions not maintained in the ordinary course of business, or information equally reflected in documents already produced. FA SUB also objects to the extent it seeks identification of *de minimis* office property or assets no longer owned. This Interrogatory essentially asks FA SUB to identify any property—irrespective of the size or value—it has owned or had an interest in over the course several years. This Interrogatory is, therefore, overly broad and unduly burdensome. The phrases "inventory," "equipment," "machinery," "tools," and "collections" are undefined, and therefore, make the Interrogatory vague and ambiguous.

6

Subject to these objections and limited to July 31, 2020 to present, FA SUB states as follows:

From June 21, 2019 through December 11, 2024, FA SUB operated the Mandan Subaru dealership. During that period, the dealership possessed vehicle inventory, parts inventory, equipment, machinery, tools, furniture, fixtures, accounts, and related intangible assets used in dealership operations. Vehicle inventory was acquired and financed pursuant to floorplan financing arrangements with BMO and was subject at all relevant times to BMO's perfected floorplan security interest.

All other operating assets, including parts inventory, equipment, furniture, and fixtures were subject to valid and perfected security interests held by BMO Harris Bank and HPS Investment Partners pursuant to governing credit agreements, guarantees, security agreements, and related UCC filings. Accordingly, to the extent FA SUB held physical possession of dealership assets, such assets were fully encumbered by secured creditor liens and were not owned free and clear. Documents reflecting the governing credit facilities, collateral grants, and UCC filings were previously disclosed and produced. Leading up to and following the December 11, 2024 transaction, FA SUB did not retain unencumbered operating personal property. The identities of lienholders and the nature of their security interests are reflected in the secured credit agreements and UCC filings previously produced.

Because dealership inventory turned over continuously in the ordinary course of business, and because substantially all such assets were transferred in the December 11, 2024 asset sale, FA SUB does not maintain a current inventory of individual items with serial numbers or estimated fair market values beyond what is reflected in ordinary-course financial statements and closing documentation already produced. At the time of the December 2024 sale, substantially all

7

operating assets were transferred to the Buyer as encumbered collateral, and sale proceeds were applied in accordance with secured creditor rights. Following the December 11, 2024 transaction, FA SUB did not retain material operating personal property and does not possess unencumbered personal property available for discretionary disposition.

FA SUB reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 3:** Identify whether FA ND SUB has an ownership interest in, option to purchase, contract to sell, leasehold in, or other interest in any real property from June 21, 2019 to present; for each parcel of real property, state:

 a. The address and legal description of the property;

 b. The approximate size of the property in acreage;

 c. A description of each structure and other improvement on the property;

 d. A description of FA ND SUB's interest in the property;

 e. The identity of each person or business, other than FA ND SUB, with an ownership interest, mortgage, or other interest in the property, and identify and describe their interest.

 f. The owner of the property as stated in the documents of title, and the location of each such document;

 g. The current fair market value of the property; and

 h. The present value of FA ND SUB's equity interest in the property.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Interrogatory to the extent it seeks information regarding real property owned by affiliated or third-party entities rather than FA SUB itself, calls for legal conclusions regarding title interests, or seeks documents equally available from public land records. This Interrogatory is overly broad and unduly burdensome, as it demands disclosure of real property interests from a period irrelevant to FA SUB's current financial ability to satisfy the judgment. Post-judgment discovery is intended to identify present

8

assets that may be used for judgment enforcement, not to conduct an extensive historical inquiry into real estate transactions and holdings that may no longer exist or be relevant. FA SUB further objects to the extent the Interrogatory seeks information beyond property in which FA SUB held a direct legal interest.

Subject to these objections and limited to July 31, 2020 to present, FA SUB states as follows:

During the relevant time period, FA SUB did not own real property and did not hold title to any real property. The real estate associated with the Mandan Subaru dealership operations was owned by separate affiliated real estate entities and was subject to recorded mortgage liens held by secured lenders, including BMO Harris Bank. FA SUB did not hold an ownership interest reflected in any deed or document of title.

During the period in which FA SUB operated the Mandan Subaru dealership, it occupied the dealership premises pursuant to lease arrangements with the owner. Those leasehold interests constituted FA SUB's only interest in the real property. The dealership premises were located in Mandan, North Dakota, and consisted of improved commercial property used for automotive sales and service operations. The legal description, acreage, and title documents for the property are reflected in public records and in documents maintained by the record title holder, not FA SUB.

To the extent FA SUB held leasehold rights, those rights were subject to the terms of the governing lease agreements and, where applicable, lender rights associated with the encumbered property. In connection with the December 11, 2024 transaction, any leasehold interests held by FA SUB were assigned or terminated consistent with the closing documentation previously produced.

For FA SUB's option to purchase and governing lease agreements, *see* FAC001189-FAC001684, FAC002031-36, FAC002089-92. FA SUB does not possess deeds or title documents reflecting ownership because it did not hold record title to the real property.

FA SUB reserves the right to supplement this response pursuant to Rule 26(e).

**INTERROGATORY NO. 4:** Does FA ND SUB claim that any of its personal property, real property, or any other asset owned by it is exempt from the claims of its creditors? If so, for each, identify:

   a. A description of the property/asset and its estimated value; and

   b. The reason for claiming the property/asset to be exempt.

**FIRST SUPPLEMENTAL RESPONSE:** This Interrogatory is vague, ambiguous, and confusing, particularly in its reference to exemptions. Exemptions from creditor claims typically apply to individual judgment debtors, not entities such as FA SUB. As drafted, the Interrogatory is unclear as to its legal or factual basis and does not specify any applicable exemption laws relevant to FA SUB.

Subject to and without waiving these objections, FA SUB responds as follows based on its understanding of what is currently being asked:

FA SUB does not claim statutory exemption status under individual debtor exemption laws. FA SUB reserves all rights arising under applicable secured credit agreements and lien priority structures.

**INTERROGATORY NO. 5:** At any time from June 21, 2019 to present, has FA ND SUB transferred, conveyed, or assigned (or contracted to transfer, convey, or assign) any business, real or personal property, or any rights in any business or real or personal property? If so, for each transaction identify:

a.  A complete description of the transaction;

b.  The date of the transaction

c.  The full name and complete address of each person involved in the transaction; and

d.  The payment or other consideration received or paid, or expected to be received or paid, by FA ND SUB in exchange.

**FIRST SUPPLEMENTAL RESPONSE:**  This Interrogatory is overly broad, unduly burdensome, and seeks information that is irrelevant and not proportional to the needs of post-judgment discovery. The Interrogatory improperly demands information dating back to June 21, 2019, despite the fact that judgment was not entered in this case until November 7, 2024. Any transfers, conveyances, or assignments that occurred prior to the entry of judgment are not relevant to determining FA SUB's current ability to satisfy the judgment.

Additionally, the Interrogatory is not limited to transactions involving assets currently owned by FA SUB or assets that BAPTKO could use to satisfy the judgment. Instead, the request broadly seeks information about any and all past transfers—regardless of whether those transactions were legitimate business dealings conducted well before any judgment existed, or even before Foundation Automotive Corp. ("Foundation") and BAPTKO were parties to this consolidated case. This temporal overreach renders the Interrogatory unduly burdensome and improper, as it seeks irrelevant information, particularly given the lack of any reasonable connection between pre-judgment transactions and post-judgment enforcement.

Subject to these objections and limited to July 31, 2020 to present, FA SUB states as follows:

The principal material transfer during the relevant period was the sale of the Mandan Subaru dealership assets on December 11, 2024:

1.  Buyer: EAGAL4 LLC

11

2. Gross Purchase Price: *See* FAC000001-211, FAC000390-92

3. Proceeds were applied to:

- HPS Investment Partners—*see* FAC001948-52, FAC002086-88

- BMO Harris Bank — *see* FAC000390-92, FAC001769-815, FAC002030

- Transaction expenses and customary closing costs—*see* FAC000390-407, FAC001948-52, FAC001697-1702, FAC001777-84, FAC001801-15, FAC001977-2029

The December 2024 transaction is described more fully in response to Interrogatory No. 7. Responsive non-privileged documents sufficient to describe material transfers have been previously produced. FA SUB is not aware of any other material asset transfers during the relevant period.

**INTERROGATORY NO. 6:** Has FA ND SUB taken any steps to ensure it will have sufficient assets available to pay the judgment in this legal action?  If so, please identify and describe the steps you have taken in detail.

**FIRST SUPPLEMENTAL RESPONSE:** This Interrogatory improperly seeks information regarding post-judgment asset management and decision-making, which is not within the permissible scope of post-judgment discovery. Additionally, to the extent that the Interrogatory seeks information related to financial planning, reserves, or internal decision-making, it is unduly burdensome and requests proprietary and confidential business strategy information. FA SUB objects to this Interrogatory on the grounds that it calls for legal conclusions regarding its obligations and priority of creditors, improperly assumes that FA SUB possesses unencumbered assets available for discretionary allocation, and seeks information beyond the scope of permissible post-judgment discovery under Rule 69. FA SUB further objects to the extent the Interrogatory

# Exhibit 6

seeks privileged communications concerning litigation strategy, appellate rights, bond discussions, lender negotiations, or legal advice.

Subject to and without waiving these objections, FA SUB states as follows:

FA SUB has conducted its operations in accordance with its contractual obligations to its secured lenders and in compliance with governing credit agreements. At all relevant times, substantially all of FA SUB's operating assets, including inventory, accounts, and proceeds, were subject to valid and perfected security interests held by secured creditors, including BMO Harris Bank and HPS Investment Partners. Vehicle inventory was financed through floorplan arrangements with BMO and subject to BMO's perfected security interest. FA SUB does not possess unencumbered operating assets that it may unilaterally reserve or designate for payment of an unsecured judgment. Any disposition of assets or proceeds has been governed by contractual secured creditor rights and applicable lien priority.

FA SUB has exercised and continues to exercise its lawful appellate rights with respect to the judgment. FA SUB has evaluated liquidity, engaged in discussions with secured lenders, and assessed options relating to appellate security. To the extent this Interrogatory seeks disclosure of privileged communications with counsel or lenders concerning litigation strategy or appellate planning, such information is withheld on privilege grounds.

**INTERROGATORY NO. 7:** Please identify and describe in detail the sale by FA ND SUB, LLC of its Mandan Dealership, which was completed after judgment was entered in this case, including the following:

1. Identify the parties to the sale;

2. Identify the sale price and/or other consideration for the sale;

3. Identify any terms or conditions of the sale that referenced or related to the above-captioned lawsuit or the judgment entered in this lawsuit;

4.  Identify and describe where the proceeds of the sale were deposited or kept after the sale.

5.  Identify and describe any subsequent transfers of proceeds, and the current location of the proceeds.

6.  Identify and describe how FA ND SUB, LLC has used/spent the since the sale.

**FIRST SUPPLEMENTAL RESPONSE:**  This Interrogatory is overly broad, unduly burdensome, and seeks information that is irrelevant to the post-judgment collection process. FA SUB also objects to this Request on the basis that the phrase "other consideration for the sale" is undefined, and, therefore, makes the request vague and ambiguous. FA SUB objects to this Interrogatory on the grounds that it improperly assumes that FA SUB possesses unencumbered assets capable of discretionary disposition, calls for legal conclusions regarding characterization of the transaction, seeks information equally available in produced transaction documents, and seeks information beyond the scope of permissible post-judgment discovery under Rule 69.

Subject to these objections and limited to non-privileged information within FA SUB's possession, custody, or control, FA SUB responds as follows:

1.  Parties to the Sale:

On October 15, 2024, FA ND CHEV, LLC ("FA CHEV") and FA SUB, as sellers, entered into an Asset Purchase Agreement (the "APA") with EAGAL3 LLC and EAGAL4 LLC (collectively, the "Buyers") as purchasers. EAGAL3 LLC and EAGAL4 LLC are entities affiliated with the Eide Automotive Group, a Bismarck, North Dakota-based dealership group. Neither EAGAL3 LLC nor EAGAL4 LLC was affiliated in any way with FA CHEV, FA SUB, or any other Foundation entity. The transaction closed on December 11, 2024. The APA has been previously produced—FAC000001-211.

2.  Sale Price and Consideration:

The transaction involved a negotiated cash purchase price, subject to customary working capital adjustments, payoff amounts, and closing adjustments typical for automotive dealership asset transactions. The transactions contemplated by the APA generated total gross proceeds of approximately $36,854,180.39. Specifically, EAGAL3 LLC wired $13,516,671.76 to FA CHEV, and EAGAL4 LLC wired a total of $12,438,508.63 to FA SUB (consisting of $11,638,508.63 at closing and $800,000.00 held in escrow). The consideration included amounts attributable to vehicle inventory, accounts receivable, equipment, goodwill, intellectual property, and other dealership assets. The APA, which contains the complete terms of the transaction, has been previously produced—FAC000001-211.

3.  Terms Referencing the Lawsuit or Judgment:

No terms or conditions of the APA specifically referenced this lawsuit or conditioned the closing on resolution of BAPTKO's claims. Exhibit 4 of the APA, however, disclosed the existence of the consolidated federal action (FAC000026). The sale was conducted pursuant to lender-directed requirements under a forbearance framework with BMO Harris Bank, N.A. and HPS Investment Partners, LLC that predated the entry of the North Dakota judgment and was undertaken as part of a lender-approved deleveraging plan. The marketing of the Mandan dealerships through Haig Partners, LLC commenced in April 2024, and the APA was executed on October 15, 2024, prior to entry of the federal judgment on November 7, 2024.

4.  Deposit of Proceeds:

The purchase price was wired by the Buyers directly to dealership operating accounts maintained by FA CHEV and FA SUB as part of Foundation Automotive US Corp.'s ("FAUS") centralized treasury and cash-management system. Those dealership operating accounts

functioned as zero-balance or sweep accounts under the treasury system in place at that time. At end of day on December 11, 2024, pursuant to routine sweep operations within the centralized treasury system, the balance in FA CHEV's account ($13,416,829.49) and the balance in FA SUB's account ($11,539,727.59) were swept to FAUS centralized treasury account. Additionally, Foundation Auto Holdings, LLC ("FAH") transferred $1,250,000 to FA CHEV on December 11, 2024 in connection with a CARS lease termination obligation required to complete the transaction, and that amount was included in the funds processed through FA CHEV's account. Please see documents previously produced at FAC000390-407, FAC001769-815, FAC001929-52, FAC001977-2029, FAC002030.

     5.   Subsequent Transfers and Current Location of Proceeds:

Immediately following receipt of the proceeds into the centralized treasury system, and consistent with mandatory lender payoff requirements under the Credit Agreement, Intercreditor Agreement, Guarantee and Collateral Agreement, and forbearance agreements, the proceeds were disbursed as follows:

On December 11, 2024, FA CHEV wired $207,231.90 and $1,224,067.41 to First American Title Insurance Company in connection with lease termination and dealership transfer obligations required to close the transaction. On December 11, 2024, FAUS wired $12,500,000 to HPS Investment Partners as a term loan principal repayment. On December 12, 2024, FAUS wired $5,500,000 to HPS Investment Partners as an additional term loan principal payment. On December 12, 2024, FAUS paid $2,384,222 to BMO Harris Bank in connection with secured real estate mortgage obligations. On December 11, 2024, FAH wired $600,000 to Haig Partners, LLC pursuant to the brokerage agreement governing the sale. In connection with the closing process, the Buyers' floor plan lender separately satisfied the existing BMO Harris Bank floor plan balance

in the amount of $11,404,365, extinguishing the existing floor plan indebtedness as a condition to transfer of vehicle inventory. On December 18, 2024, FAUS paid $1,563,918 to Global Dealer Resources, LLC pursuant to a contractual payment obligation triggered by the Dealership Sale.

Following the application of all secured debt payments and required closing disbursements, approximately $826,412 remained as liquidity within the centralized treasury system. That amount was maintained pursuant to lender-imposed liquidity requirements under the forbearance framework and remained subject to ongoing lender oversight and contractual restrictions. The retained liquidity was not distributed to equity holders and was not available for discretionary transfer outside the secured credit structure.

FA CHEV and FA SUB did not retain any unrestricted proceeds following the closing. At no time did FA CHEV or FA SUB possess sale proceeds free and clear of the secured lenders' perfected security interests. The underlying bank records, wire confirmations, payoff letters, and closing documents reflecting the foregoing disbursements have been produced.

6. <u>How proceeds were used/spent</u>:

As set forth in Sub-part (5) above, the proceeds from the Mandan Dealership Sale were applied entirely to: (i) satisfaction of secured term loan obligations to HPS Investment Partners ($18,000,000 total); (ii) satisfaction of secured real estate mortgage obligations to BMO Harris Bank ($2,384,222); (iii) extinguishment of existing BMO Harris Bank floor plan indebtedness ($11,404,365, satisfied by the Buyers' floor plan lender at closing); (iv) required closing disbursements to First American Title Insurance Company for lease termination and transfer obligations ($1,431,299.31); (v) payment of the brokerage commission to Haig Partners, LLC ($600,000); and (vi) a contractual payment to Global Dealer Resources, LLC triggered by the sale ($1,563,918). The gross proceeds from the Dealership Sale were insufficient to satisfy all

17

outstanding secured obligations of the borrower group, and secured indebtedness remained outstanding under the Credit Agreement following application of the proceeds.

FA SUB reserves all objections based on privilege to the extent this Interrogatory seeks disclosure of communications with counsel or internal litigation strategy analyses.

**SECOND SUPPLEMENTAL RESPONSE:** FA SUB supplements its prior response to Interrogatory No. 7 to provide a complete, narrative description of the Mandan Dealership sale and the disposition of all proceeds. FA SUB has conducted a reasonable investigation and has identified all non-privileged information within its possession, custody, or control responsive to this Interrogatory. The information set forth below reflects FA SUB's full and complete response based on that investigation. FA SUB is not withholding any responsive information within its possession, custody, or control.

FA SUB preserves its objections to the extent this Interrogatory seeks information beyond the scope of permissible post-judgment discovery under Rule 69, calls for legal conclusions, or seeks information not within its possession, custody, or control. These objections do not limit the substantive response provided below.

1. <u>Parties to the Sale</u>:

On October 15, 2024, FA ND CHEV, LLC ("<u>FA CHEV</u>") and FA ND SUB, LLC ("<u>FA SUB</u>"), as sellers, entered into an Asset Purchase Agreement (the "<u>APA</u>") with EAGAL3 LLC and EAGAL4 LLC (collectively, the "<u>Buyers</u>") as purchasers. EAGAL3 LLC and EAGAL4 LLC are entities affiliated with the Eide Automotive Group, a Bismarck, North Dakota-based dealership group. Neither EAGAL3 LLC nor EAGAL4 LLC was affiliated in any way with FA CHEV, FA SUB, or any other Foundation entity. The transaction closed on December 11, 2024. The APA has been produced at FAC000001-211.

18

2. Sale Price and Consideration:

The transaction involved a negotiated cash purchase price, subject to customary working capital adjustments, payoff amounts, and closing adjustments typical for automotive dealership asset transactions. The transactions contemplated by the APA generated total gross proceeds of approximately $36,854,180.39. Specifically, EAGAL3 LLC wired $13,516,671.76 to FA CHEV, and EAGAL4 LLC wired a total of $12,438,508.63 to FA SUB (consisting of $11,638,508.63 at closing and $800,000.00 held in escrow). The consideration included amounts attributable to vehicle inventory, accounts receivable, equipment, goodwill, intellectual property, and other dealership assets. Please see documents previously produced at FAC000001-211, FAC000390-407, FAC001876-921, FAC001929-52, FAC002079-85.

3. Terms Referencing the Lawsuit or Judgment:

No terms or conditions of the APA specifically referenced this lawsuit or conditioned the closing on resolution of BAPTKO's claims. Exhibit 4 of the APA, however, disclosed the existence of the consolidated federal action (FAC000026). The sale was conducted pursuant to lender-directed requirements under a forbearance framework with BMO Harris Bank, N.A. and HPS Investment Partners, LLC that predated the entry of the North Dakota judgment and was undertaken as part of a lender-approved deleveraging plan. The marketing of the Mandan dealerships through Haig Partners, LLC commenced in April 2024, and the APA was executed on October 15, 2024, prior to entry of the federal judgment on November 7, 2024.

4. Deposit of Proceeds:

The purchase price was wired by the Buyers directly to dealership operating accounts maintained by FA CHEV and FA SUB. Those accounts functioned as zero-balance accounts within Foundation Automotive US Corp.'s ("FAUS") centralized treasury system. Consistent with

19

that system, the funds were swept on December 11, 2024 into a centralized treasury account. At end of day on December 11, 2024, pursuant to routine sweep operations within the centralized treasury system, the balance in FA CHEV's account ($13,416,829.49) and the balance in FA SUB's account ($11,539,727.59) were swept to FAUS centralized treasury account. Additionally, Foundation Auto Holdings, LLC ("FA Holdings") transferred $1,250,000 to FA CHEV on December 11, 2024 in connection with a CARS lease termination obligation required to complete the transaction, and that amount was included in the funds processed through FA CHEV's account. Please see documents previously produced at FAC000390-407, FAC001769-815, FAC001876-921, FAC001929-52, FAC001977-2029, FAC002030, FAC002079-85, FAC002470-530.

5. Subsequent Transfers and Current Location of Proceeds:

Following receipt of the proceeds within the centralized treasury system, the funds were applied in accordance with mandatory obligations under existing secured credit agreements and related transaction requirements. At the time of the transaction, the proceeds of the dealership sale were subject to preexisting, first-priority security interests held by HPS Investment Partners and BMO Harris Bank pursuant to the governing Credit Agreement, Intercreditor Agreement, and Guarantee and Collateral Agreement. Those agreements granted the lenders a continuing security interest in substantially all assets and proceeds, including proceeds from asset sales. The only entities with secured interests in the assets of FA CHEV and FA SUB were HPS and BMO.

Consistent with those obligations, the proceeds were applied primarily to secured indebtedness, including:

- $18,000,000 in term loan repayments to HPS;

- $2,384,222 in secured real estate obligations to BMO; and

- satisfaction of floorplan indebtedness (approximately $11.4 million) through the Buyers' floorplan lender at closing.

20

In addition to secured debt payments, certain transaction-required payments were made as a condition to closing:

- $600,000 to Haig Partners pursuant to the brokerage agreement (*see* FAC001948, FAC001977-2029);

- $1,593,918 to Global Dealer Resources, LLC pursuant to contract between Foundation, Global Dealer Solutions, LLC, and Amynta triggered by the sale (*see* FAC000710-12, FAC001697-702, FAC001794, FAC001928, FAC002423-69); and

- payments to First American Title Insurance Company totaling $1,200,000.00 in connection with dealership transfer and lease-related obligations (FAC000396, FAC001339-42, FAC001292-95, FAC001779, FAC001929, FAC001949-50, FAC002470-530).

Haig Partners, Global Dealer Solutions, LLC, Amynta, and First American Title Insurance Company did not hold secured interests in the sale proceeds. Those payments were required to consummate the transaction and were made in the ordinary course of closing.

With respect to the payments to First American Title Insurance Company, the funds used for those payments did not originate from unrestricted proceeds held by FA CHEV or FA SUB. On the date of closing, FA Holdings, a non-debtor entity, transferred approximately $1,250,000.00 to FA CHEV to fund obligations associated with a CARS lease termination required for the transaction. Those funds were then used to satisfy the corresponding payments through First American Title Insurance Company.

Following all required disbursements, no sale proceeds remained with FA CHEV or FA SUB. To the extent any residual liquidity remained within the centralized treasury system, such amounts remained subject to lender control and restrictions and were not available for discretionary use or distribution.

FA SUB is not aware of any additional transfers of sale proceeds beyond those reflected in the produced records.

21

6. Use of Proceeds:

As set forth in Sub-part (5) above, the proceeds from the Mandan Dealership Sale were applied entirely to: **(i)** satisfaction of ***secured term loan obligations*** from FAUS to HPS Investment Partners—$18,000,000 (*see* FAC001951-52, FAC001790-91); **(ii)** satisfaction of ***secured real estate mortgage obligations*** from FAUS to BMO Harris Bank—$2,384,222 (*see* FAC001791); **(iii)** extinguishment of existing BMO Harris Bank floor plan indebtedness—$11,404,365, as satisfied by the Buyers' floor plan lender at closing (*see* FAC000390-91); **(iv)** required closing disbursements from FA CHEV to First American Title Insurance Company (no security interest) for lease termination and transfer obligations—$1,200,000.00, which was indirectly paid by Foundation Auto Holdings, LLC (*see* FAC001929, FAC000396, FAC001779, FAC002470-530); **(v)** payment of the brokerage commission from FA Holdings to Haig Partners, LLC (no security interest)—$600,000.00 (*see* FAC001948, FAC001779); and **(vi)** a payment from FAUS to Global Dealer Resources, LLC pursuant to contract between Foundation, Global Dealer Solutions, LLC, and Amynta (no security interest) triggered by the sale—$1,593,918.00 (*see* FAC000710-12, FAC001697-702, FAC001794, FAC001928, FAC002423-69). The gross proceeds from the Dealership Sale were insufficient to satisfy all outstanding secured obligations of the borrower group, and secured indebtedness remained outstanding under the Credit Agreement following application of the proceeds.

The following table contains information relating to the receipt and transfer of all proceeds of the Mandan Dealership Sale, pursuant to the Court's Order (Doc. 648):

| PAYOR | PAYEE | AMOUNT | DATE | TYPE | RECORD |
|---|---|---|---|---|---|
| FA Holdings | FA CHEV (CARS lease amendment agreement) | $1,250,000.00 | 12/11/24 | PC Credit – Cars Deposit | FAC001929 FAC000396 FAC001779 |
| EAGAL3 | FA CHEV | $13,516,671.76 | 12/11/24 | WIRE | FAC000396 |

22

| EAGAL4 | FA SUB | $11,638.508.63 | 12/11/24 | WIRE | FAC000404 |
|---|---|---|---|---|---|
| EAGAL4 (escrow) | FA SUB | $800,000.00 | 12/11/24 | WIRE | FAC000404 |
| FA SUB | FAUS | $11,539,727.59 | 12/11/24 | PC Balance Transf. Debit | FAC001790 |
| FA CHEV | FAUS | $13,416,829.49 | 12/11/24 | PC Balance Transf. Debit | FAC000396 FAC001790 |
| FA CHEV | First American Title Insurance (dealership payables) | $207,231.90 | 12/11/24 | WIRE | FAC001949 |
| FA CHEV | First American Title Insurance (dealership payables) | $1,224,067.41 | 12/11/24 | WIRE | FAC001950 |
| FAUS | HPS Investment Partners | $12,500,000 | 12/11/24 | WIRE | FAC001951 FAC001790 |
| FAUS | HPS Investment Partners | $5,500,000 | 12/12/24 | WIRE | FAC001952 FAC001791 |
| FAUS | BMO Harris Bank – Real Estate Mortgages | $2,384,222 | 12/12/24 | PC Bank Transfer – Debit | FAC001791 |
| FAUS | Global Dealer Solutions, LLC (per contract) | $1,563,918 | 12/18/24 | PC Bank Transfer - Debit | FAC001794 |
| FA Holdings | HAIG Partners | $600,000 | 12/11/24 | WIRE | FAC001948 FAC001779 |

FA SUB has produced the transaction documents, bank records, wire confirmations, and closing materials reflecting the receipt and application of all sale proceeds within its possession, custody, or control. The narrative above summarizes that information. FA SUB has not prepared and is not required to prepare additional tracing analyses beyond the information reflected in those documents.

FA SUB further states that it does not have possession, custody, or control of additional records maintained by third parties, including lenders, financial institutions, or title companies involved in the transaction.

**<u>REQUESTS FOR PRODUCTION</u>**

**REQUEST NO. 1:** Copies of all documents identified, referred to, or reviewed in responding to the above interrogatories.

23

**FIRST SUPPLEMENTAL RESPONSE:** This Request is overly broad, unduly burdensome, vague, ambiguous, and not reasonably specific insofar as it requests documents "identified, referred to, or reviewed" in responding to the Interrogatories. The Request seeks "all documents identified, referred to, or reviewed," which is vague, expansive, and could encompass an overwhelming amount of documents, including those not pertinent to the judgment collection or enforcement process. The Request's pairing of the omnibus phrase "all documents" with a general category of information (identified, referred to, or reviewed in responding to the Interrogatories) makes this request overly broad and unduly burdensome on its face. *See, e.g., Dobish v. Rain & Hail, LLC*, No. 8:11CV41, 2011 WL 3300073, at *3 (D. Neb. Aug. 2, 2011). A request, such as this, "seeking documents 'pertaining to' or 'concerning a broad range of items 'requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.'" *Id*. (*citing Cardenas v. Dorel Juvenile Grp., Inc*., 230 F.R.D. 611, 625 (D. Kan. 2005)). Furthermore, FA SUB objects to the Request to the extent that it seeks the production of documents that are protected by attorney-client privilege, work product doctrine, or any other applicable privilege or protection. The Request lacks specificity in that it fails to identify the specific documents or information sought. While it is unclear what information this Request seeks, it is drafted so broadly as to include all written communications between FA SUB and its attorneys, which are protected by the attorney-client privilege and work product doctrine and is not subject to discovery. FA SUB incorporates hereto its objections and responses to Interrogatory Nos. 1-7.

FA SUB further objects to the Request to the extent it seeks documents not within its possession, custody, or control. FA SUB also objects to the extent the Request could be construed to require production of every document reviewed in preparation of these responses, including

24

internal analyses, communications with counsel, draft materials, or documents not otherwise responsive to the interrogatories themselves. Such a reading would exceed the scope of permissible discovery and intrude upon protected materials.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order, FA SUB states as follows:

FA SUB will produce non-privileged documents that are responsive to and form the substantive basis of its answers to the Interrogatories, including bank account statements and corporate records and financial statements. To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 2:** Copies of FA ND SUB's annual financial statements, balance sheets, income statements, and cash flow statements from June 21, 2019 to present.  Also provide copies of FA SUB's year-to-date annual financial statements, balance sheets, income statement and cash flow statements for 2025.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to the Request as overly broad and not narrowly tailored to the scope of post-judgment discovery. Seeking all financial statements, balance sheets, income statements, and cash flow statements for multiple years is unduly expansive and disproportionate to the needs of the case. Further, the demand for year-to-date financial statements for 2025 is speculative and premature, as such records may not yet be finalized or reflective of any relevant financial position concerning the judgment. Finally, the terms "annual financial statements," "balance sheets," "income statements," and "cash flow statements" are undefined, making the Request vague and ambiguous.

25

FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. FA SUB further objects to the Request to the extent it seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order directing substantive responses from July 31, 2020 to present, FA SUB states as follows:

The December 2024 consolidated financial statement is being produced as FAC002037–FAC002078. To the extent "year-to-date" 2025 financial statements are not yet finalized, FA SUB will produce the most current internally maintained financial statements reflecting 2025 performance as of the date of production. FA SUB will not reproduce documents previously produced in this litigation but has identified such documents by the following Bates numbers: FOUNDATION000001-95; FOUNDATION000204-45; FAC000378-89.

FA SUB will supplement this production in accordance with Rule 26(e) should additional finalized financial statements become available and on a rolling basis with a target production completion of March 23, 2026.

**REQUEST NO. 3:** Copies of FA ND SUB's tax returns filed from 2019 to present, with all schedules and attachments, including depreciation schedules.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including communications with tax advisors reflecting legal advice. FA SUB further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's directive requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

FA SUB will produce complete federal income tax returns, including schedules and attachments, for tax years 2020, 2021, 2022, 2023, and 2024, to the extent such returns have been finalized and filed. If any return for 2024 or later tax years has not yet been finalized or filed as of the date of production, FA SUB will produce the most recent finalized return available and will supplement this response upon filing of any subsequently completed return, consistent with Rule 26(e).

To the extent responsive tax returns have previously been produced in this action, FA SUB will not reproduce them but has identified those documents by Bates number: FAC000212-377; FOUNDATION000095-203. FA SUB will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 4:** Copies of all documents evidencing asset transfers of personal property, real property, and/or business interests, and compensation received by FA ND SUB from June 21, 2019 to present.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it is overly broad, unduly burdensome, and disproportionate to the needs of post-judgment discovery insofar as it seeks "all documents" concerning every transfer of personal property over a multi-year period, including routine ordinary-course inventory sales conducted in the operation of an automotive dealership. FA SUB further objects to the extent the Request seeks documents unrelated to enforcement of the judgment, seeks documents equally available from produced financial records, or seeks documents protected by the attorney-client privilege, work-product

27

doctrine, or other applicable privilege. FA SUB also objects to the extent the Request calls for documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

During the period from June 21, 2019 through December 11, 2024, FA SUB operated the Mandan Subaru dealership in the ordinary course of business. Routine retail sales of vehicle inventory and parts inventory occurred in the ordinary course and were conducted pursuant to floorplan financing arrangements with BMO Harris Bank. Vehicle inventory was financed under BMO's floorplan facility and was subject at all relevant times to BMO's perfected security interest. All other operating assets, including parts inventory, equipment, furniture, fixtures, accounts, deposit accounts, and proceeds, were pledged as collateral and were subject to valid and perfected security interests held by BMO Harris Bank and/or HPS Investment Partners pursuant to governing credit agreements and related security documents.

The principal material asset transfer during the relevant period was the December 11, 2024 transaction involving the sale of the operating assets associated with the Mandan Subaru dealership. The transferred assets were encumbered collateral at the time of transfer. Sale proceeds were applied in accordance with secured creditor rights and governing credit agreements. FA SUB did not receive or retain unencumbered proceeds from the transaction, and no compensation was distributed to insiders or equity holders in connection with the sale.

FA SUB has produced all non-privileged documents in its possession sufficient to evidence material asset transfers and the application of proceeds, including the executed Asset Purchase Agreement, statements, closing binders, payoff letters, funds flow documentation, and wire confirmations reflecting payment to secured creditors. These documents are produced at Bates

28

numbers FAC000001-211, FAC000390-407, FAC000878-79, FAC001161, FAC001769-815, FAC001929-52, FAC001977-2030, FAC002079-88.

FA SUB interprets this Request to seek documents evidencing material asset transfers affecting FA SUB's asset position. To the extent the Request could be construed to encompass routine operational disbursements, ordinary-course treasury transfers, or internal accounting entries not constituting conveyances of property or business interests, FA SUB objects that such a construction would be unduly burdensome and disproportionate.

To the extent this Request seeks documentation of ordinary-course retail vehicle sales occurring over a multi-year period, such transactions are reflected in the dealership's ordinary-course financial statements and banking records already produced. FA SUB does not maintain a separate compilation of documents outside of its standard accounting and inventory systems for each retail sale conducted in the ordinary course.

To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB will produce responsive, non-privileged documents, sufficient to reflect material transfers during the relevant period, on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 5:** Copies of account statements from June 21, 2019 to present for all accounts identified in your answer to Interrogatory No. 1, above.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. FA SUB further objects to the extent it seeks documents not within its possession, custody, or control.

29

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

FA SUB will produce account statements for each account identified in response to Interrogatory No. 1 for the period of July 31, 2020 through the present, to the extent the statements are in its possession, custody, or control. To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 6:** Copies of all mortgages, promissory notes, liens, and any other instruments securing debt owed <u>by</u> FA ND SUB or relating to any property owned <u>by</u> FA ND SUB from June 21, 2019 to present.

**FIRST SUPPLEMENTAL RESPONSE:** This Request is overly broad, unduly burdensome, vague, ambiguous, and not reasonably specific insofar as it requests all documents "securing debt owed by FA ND SUB or relating to any property owned by FA ND SUB," which is vague, expansive, and could encompass an overwhelming number of documents, including those not pertinent to the judgment collection or enforcement process. A request, such as this, requesting documents "relating to" a broad range of items "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *See Dobish,* No. 8:11CV41, 2011 WL 3300073, at *3. The Request is overly broad, seeking "all mortgages, promissory notes, liens, and any other instruments securing debt" without limitation to the assets or financial matters relevant to the judgment. As drafted, it encompasses an unnecessary and expansive range of documents that are not proportional to the needs of the case. Further, the

Request imposes an undue burden, requiring the production of potentially voluminous and irrelevant documents spanning several years, which is disproportionate to the issues at hand.

FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. FA SUB further objects to the extent it seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

During the relevant period, FA SUB's dealership operations were financed pursuant to secured credit facilities, including floorplan financing with BMO Harris Bank and senior secured credit arrangements involving HPS Investment Partners. Vehicle inventory was financed under BMO's floorplan facility and was subject at all relevant times to BMO's perfected security interest. All other operating assets associated with the dealership, including parts inventory, equipment, furniture, fixtures, accounts, deposit accounts, and proceeds, were subject to valid and perfected security interests held by BMO Harris Bank and HPS Investment Partners pursuant to governing credit agreements, guarantees, security agreements, and related Uniform Commercial Code filings.

FA SUB did not own real property during the relevant period and therefore did not execute or hold mortgages securing real estate owned by FA SUB. To the extent the dealership real estate was encumbered, such mortgages were held against property owned by affiliated real estate entities and are reflected in public land records.

FA SUB has produced non-privileged documents sufficient to evidence the existence, scope, and priority of secured indebtedness during the relevant period, including operative credit agreements, promissory notes, guarantees, security agreements, collateral grant provisions, and

31

related UCC filings reflecting perfected security interests. These documents are produced at Bates numbers FAC000408-1188, FAC001953-76, FAC002030-36, FAC002086-88, FAC002093-194.

FA SUB will produce any outstanding, responsive, and non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 7:** Copies of all mortgages, promissory notes, liens, and any other instruments securing debt owed <u>to</u> FA ND SUB or relating to any property owned anyone else from June 21, 2019 to present.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. FA SUB further objects to the extent the Request seeks documents not within its possession, custody, or control. FA SUB also objects to the extent the phrase "relating to any property owned by anyone else" is vague and overbroad insofar as it could be construed to require production of instruments to which FA SUB is not a party and over which it has no possession, custody, or control.

Subject to and without waiving the foregoing objections, and limited to the period July 31, 2020 to present, FA SUB states as follows:

FA SUB does not hold any secured interests or debt. There are no responsive documents in its possession, custody, or control. FA SUB does not interpret this Request to require production of instruments securing debt owed by FA SUB to third parties; those instruments are addressed in prior Requests and have been produced separately. FA SUB will supplement this production in accordance with Rule 26(e).

32

**REQUEST NO. 8:** Copies of all documents evidencing FA ND SUB's ownership of property/assets (including all property identified in response to Interrogatory Nos. 2 and 3, above), from June 21, 2019 to present, including but not limited to title documents, deeds, contracts, receipts, statements from brokerages or financial institutions, and similar documents.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. FA SUB further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving these objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

FA SUB has produced all non-privileged documents within its possession sufficient to evidence its ownership of property and assets during the relevant period. FA SUB interprets this Request to seek documents evidencing ownership interests directly held by FA SUB. To the extent the Request could be construed to require production of duplicative internal records, routine accounting entries, or immaterial administrative documents, FA SUB objects that such a construction would be unduly burdensome and disproportionate.

To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB will produce responsive, non-privileged documents, sufficient to reflect its ownership of assets during the relevant period, on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 9:** Copies of all documents evidencing the value of FA ND SUB's property/assets (including all property identified in response to Interrogatory Nos. 2 and 3, above),

33

from June 21, 2019 to present, including but not limited to appraisals, valuations, offers to purchase, and similar documents.

**FIRST SUPPLEMENTAL RESPONSE:** The Request is not narrowly tailored, as it seeks "all documents evidencing the value" of FA SUB's "property/assets," including appraisals, valuations, offers to purchase, and similar records, without limiting the scope to the information relevant to satisfying the judgment. This Request is disproportionate to the needs of the case and improperly seeks historical valuations that have no bearing on the present financial condition of FA SUB. FA SUB incorporates hereto its objections and responses to Interrogatory Nos. 2 and 3.

FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including documents prepared in anticipation of litigation or at the direction of counsel. FA SUB further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

FA SUB will produce non-privileged documents within its possession sufficient to evidence formal valuations, third-party appraisals, or written offers to purchase assets directly owned by FA SUB during the relevant period, if any. To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 10:** Copies of all documents relating to the conveyance by FA ND SUB of any business interest, and/or real or personal property from June 21, 2019 to present, including but not limited to contracts, closing documents, and checks or wire transfer documents.

34

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including communications with counsel concerning insurance coverage. FA SUB further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

FA SUB has produced all non-privileged documents within its possession sufficient to evidence material conveyances by FA SUB of interests and assets during the relevant period. FA SUB interprets this Request to seek documents evidencing material conveyances affecting FA SUB's asset position. To the extent the Request could be construed to encompass routine operational disbursements, ordinary-course treasury transfers, or internal accounting entries not constituting conveyances of business interests or property, FA SUB objects that such a construction would be unduly burdensome and disproportionate.

To the extent any responsive documents have previously been produced in this action, FA SUB will not reproduce them. FA SUB will produce responsive, non-privileged documents, sufficient to reflect material conveyances, on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 11:** With respect to the sale by FA ND SUB, LLC of its Mandan Dealership, which was completed after judgment was entered in this case, please provide copies of the following:

a.      All contracts and related contract documents;

b.      All closing documents;

35

c.      All documents relating to the payment of the funds from the purchaser to FA ND SUB, LLC, and any deposit or transfer of those funds since the sale;

d.      All documents relating FA ND SUB, LLC's use, spending, investing or otherwise accounting for the proceeds since the sale.

**FIRST SUPPLEMENTAL RESPONSE:** FA SUB objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including communications with counsel regarding litigation strategy or legal advice in connection with the transaction. FA SUB further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, FA SUB states as follows:

FA SUB has produced all non-privileged documents within its possession sufficient to reflect the terms of the Mandan dealership asset sale and the receipt and application of the sale proceeds, including: FAC000001-211, FAC000390-407, FAC000878-79, FAC001161, FAC001769-815, FAC001929-52, FAC001977-2030, FAC002079-88.

FA SUB interprets this Request to seek transaction documents maintained in the ordinary course of business. To the extent the Request could be construed to require production of internal legal analyses, draft agreements reflecting attorney revisions, privileged communications, or litigation-related strategy documents, FA SUB objects to searching for and producing such materials on privilege grounds.

Dated this 31st day of March, 2026.

Respectfully submitted,

*/s/ Kensye N. Wood*

Maxwell N. Shaffer
Kensye N. Wood
LELAND SHAFFER LLP
8694 E. 28th Avenue
Denver, Colorado 80238

(720) 556-1872
Maxwell.Shaffer@lelandshaffer.com
Kensye.Wood@lelandshaffer.com

*Counsel for Foundation Automotive Corp.,*
*FA ND CHEV, LLC, and FA ND SUB, LLC*

## VERIFICATION

I declare under penalty of perjury under the laws of the United States as follows:

I have read the foregoing Answers to Interrogatories, and I am familiar with the contents thereof, I further state that the facts stated in the answers to these Interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated this 30th day of March, 2026.

_____
Derek Slemko

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 31st day of March, 2026, a true and correct copy of the foregoing **SECOND SUPPLEMENT TO FA ND SUB, LLC'S RESPONSES AND OBJECTIONS TO BAPTKO, INC.'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS IN AID OF EXECUTION** was served via regular electronic mail on the following:

Randall J. Bakke
Shawn A. Grinolds
David R. Phillips
BAKKE GRINOLDS WIEDERHOLT
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
rbakke@bgwattorneys.com
sgrinolds@bgwattorneys.com
dphillips@bgwattorneys.com

*Attorneys for BAPTKO, Inc.*


*/s/ Kensye N. Wood*
Kensye N. Wood

39