IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| FA ND CHEV, LLC and FA ND SUB, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>Robert Kupper; Bismarck Motor Company; and BMC Marine LLC d/b/a Moritz Sport & Marine,<br><br>Defendants.<br>_____<br><br>BAPTKO, Inc.,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>Foundation Automotive Corp., an Alberta Corporation; FA ND CHEV, LLC; and FA ND SUB, LLC,<br><br>Defendants and Counterclaimants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:20-CV-00138-DMT-CRH |

**SECOND SUPPLEMENT TO FOUNDATION AUTOMOTIVE CORP.'S RESPONSES AND OBJECTIONS TO BAPTKO, INC.'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS IN AID OF EXECUTION**

Pursuant to Fed. R. Civ. P. 26, 33, and 34, Foundation Automotive Corp. ("Foundation"), through counsel, hereby submits this Second Supplement to Responses and Objections to BAPTKO, Inc.'s ("BAPTKO") Interrogatories and Requests for Production of Documents in Aid of Execution.

# Exhibit 9

**GENERAL OBJECTIONS**

1.     Foundation objects to each and every Interrogatory and Request for Production (each a "Request," and collectively, the "Requests") to the extent it seeks information and/or documents subject to the attorney-client privilege and/or work product doctrine. Foundation will not produce information or documents protected by the attorney-client and/or work product doctrine privileges or any other privilege that would make the information immune from discovery in whole or in part. Foundation does not intend by these responses or objections to waive any applicable privilege.

2.     Foundation objects to the "General Definitions" and "Instructions" to the Requests to the extent that they are vague, ambiguous, overbroad, unduly burdensome, and neither relevant to the enforcement of the judgment nor proportional to the needs of the case, and to the extent they impose or attempt to impose greater duties on Foundation than those provided under the Federal Rules of Civil Procedure. Subject to and without waiving these objections, Foundation will respond to the Requests without regard to the definitions, based on the reasonable and ordinary meanings of the words used, and in accordance with the applicable rules and authority.

3.     Foundation's responses are limited to the period July 31, 2020 to present, consistent with the Court's directive.

4.     These General Objections are incorporated into each one of Foundation's objections and responses below.

**INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify all banks, brokerages, or other financial or lending institutions (collectively "financial institution") in which Foundation has maintained any checking

accounts, savings accounts, investment accounts, certificates of deposits, safety deposit boxes, or other accounts from June 21, 2019 to present. For each account, identify:

a.  The name, address and telephone number of the financial institution and the branch where the account is located;

b.  The type of account and type of asset in the account;

c.  The account number and routing number, if applicable;

d.  The full name(s) under which the account is held;

e.  The current balance of the account;

f.  The identity of each authorized signer for the account at any time from June 21, 2019 to present and the dates between which the signer was authorized; and

g.  The contents of Foundation's resolution establishing the account, copying the resolution verbatim or attaching a copy of it to your answers.

**SECOND SUPPLEMENTAL RESPONSE:** This Interrogatory is overly broad in time and scope, unduly burdensome, and seeks information that is irrelevant to BAPTKO's collection or enforcement of the judgment and disproportionate to the needs of this case. Post-judgment discovery is subject to the normal discovery limits, as well as being calculated to assist in collecting on a judgment. *See* FED. R. CIV. P. 69(a)(1) ("The procedure on execution-and in proceedings supplementary to and in aid of judgment or execution-must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."); *Credit Lyonnais, S.A., v. SGC Int'l, Inc.*, 160 F.3d 428, 430 (8th Cir. 1998) ("The right to conduct discovery applies both before and after judgment.").

Foundation's accounts with financial institutions over the past five years and six months have no relation to the execution of the judgment in this case nor is the information calculated to aid BAPTKO in collecting on the judgment. The Interrogatory seeks information dating back to June 21, 2019, which was revised to July 31, 2020 per the Court's recent order. The judgment,

however, was entered on November 7, 2024. The expansive timeframe does not assist BAPTKO in identifying assets or financial information relevant to the satisfaction of the judgment. Post-judgment discovery must be limited to information relevant to the judgment debtor's present ability to satisfy the judgment, rather than serving as an impermissible fishing expedition into historical financial matters. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (Rule 26(b) does not "fallow fishing expeditions in discovery," and "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear on the issues in the case.").

Foundation further objects to the extent the Interrogatory seeks information equally reflected in bank statements produced or to be produced, or seeks information not within Foundation's possession, custody, or control.

Subject to and without waiving these objections and limited to July 31, 2020 to present, Foundation responds as follows:

Foundation has maintained the following deposit accounts during the relevant period:

1. BMO BANK OF MONTREAL
   Address: 2424 4TH STREET SW, UNIT 520, CALGARY, AB, T2S 2T4
   Account Name: Foundation Automotive Corp.
   Account Type: Checking Account
   Account Number: 05114791412
   Routing Number: BANK 001 TRANSIT 05119
   Current Balance: $403.74 (USD)

2. BMO BANK OF MONTREAL
   Address: 2424 4TH STREET SW, UNIT 520, CALGARY, AB, T2S 2T4
   Account Name: Foundation Automotive Corp.
   Account Type: Checking Account
   Account Number: 05114794020
   Routing Number: BANK 001 TRANSIT 05119
   Current Balance: $64,877.84 (CAD)

Authorized signers during the relevant period include designated corporate officers and treasury personnel, including:

| INDIVIDUAL AUTHORIZATION | DATE ADDED | DATE REMOVED |
|---|---|---|
| Kevin Kutschinksi | 08/02/2018 | |
| Derek Slemko | 08/02/2018 | |
| Chris Beaton | 08/02/2018 | |
| Patrick Allan | 08/02/2018 | |

Current balance as of the date of these responses are reflected in the most recent account statement, which will be produced on a rolling basis. Balances fluctuate daily. Responsive non-privileged banking resolutions establishing account authority will also be produced on a rolling basis. Foundation does not maintain brokerage accounts, certificates of deposit, or safety deposit boxes in its own name during the relevant period.

Foundation will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**INTERROGATORY NO. 2:** Identify all personal property Foundation owned, claimed any interest in, or had title to, including but not limited to inventory, motor vehicles, equipment, machinery, tools, collections, etc. regardless of locations, from June 21, 2019 to present. As to each item of personal property, identify:

    a. A complete description of the item, including as applicable the year, make, model, serial number, and other permanent identification numbers;

    b. The item's estimated current fair market value;

    c. The complete address or legal description of the location of each item;

    d. A description of Foundation's interest in the property; and

    e. The identity of each person or business, other than Foundation, with an ownership interest, lien, or other interest in the property, and identify and describe their interest.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Interrogatory on the grounds that it is overly broad, unduly burdensome, and disproportionate to the needs of post-judgment discovery to the extent it seeks a line-item inventory of every item of dealership property over a multi-year period, including serial numbers and permanent identification numbers for inventory that was routinely acquired and sold in the ordinary course of business. Foundation further objects to the extent the Interrogatory calls for legal conclusions regarding ownership, valuation opinions not maintained in the ordinary course of business, or information equally reflected in documents already produced. Foundation also objects to the extent it seeks identification of de minimis office property or assets no longer owned. This Interrogatory essentially asks Foundation to identify any property—irrespective of the size or value—it has owned or had an interest in over the course several years. This Interrogatory is, therefore, overly broad and unduly burdensome. The phrases "inventory," "equipment," "machinery," "tools," and "collections" are undefined, and therefore, make the Interrogatory vague and ambiguous.

Subject to these objections and limited to July 31, 2020 to present, Foundation states as follows:

Foundation is the ultimate parent company of the Foundation dealership group and does not directly own dealership vehicle inventory. Vehicle inventory and operational dealership assets are owned by subsidiary dealership entities. Foundation does not directly own tangible personal property, including ordinary office furniture, computer equipment, and administrative assets. Foundation's primary assets consist of equity interests in subsidiary entities. Those interests are reflected in corporate records and financial statements that have been previously produced.

To the extent any asset is subject to a lien or security interest, such interests are governed by secured credit agreements previously disclosed and produced.

**INTERROGATORY NO. 3:** Identify whether Foundation has an ownership interest in, option to purchase, contract to sell, leasehold in, or other interest in any real property from June 21, 2019 to present; for each parcel of real property, state:

a. The address and legal description of the property;

b. The approximate size of the property in acreage;

c. A description of each structure and other improvement on the property;

d. A description of Foundation's interest in the property;

e. The identity of each person or business, other than Foundation, with an ownership interest, mortgage, or other interest in the property, and identify and describe their interest.

f. The owner of the property as stated in the documents of title, and the location of each such document;

g. The current fair market value of the property; and

h. The present value of Foundation's equity interest in the property.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Interrogatory to the extent it seeks information regarding real property owned by affiliated or third-party entities rather than Foundation itself, calls for legal conclusions regarding title interests, or seeks documents equally available from public land records. This Interrogatory is overly broad and unduly burdensome, as it demands disclosure of real property interests from a period irrelevant to Foundation's current financial ability to satisfy the judgment. Post-judgment discovery is intended to identify present assets that may be used for judgment enforcement, not to conduct an extensive historical inquiry into real estate transactions and holdings that may no longer exist or be relevant. Foundation further objects to the extent the Interrogatory seeks information beyond property in which Foundation held a direct legal interest.

Subject to these objections and limited to July 31, 2020 to present, Foundation states as follows:

During the relevant Foundation did not own real property and did not hold title to any real property. Real property interests associated with dealership operations were held by subsidiary entities or third-party real estate entities. To the extent Foundation has had leasehold or indirect interests, such interests are reflected in corporate financial statements and related documents to be produced.

**INTERROGATORY NO. 4:** Does Foundation claim that any of its personal property, real property, or any other asset owned by it is exempt from the claims of its creditors?  If so, for each, identify:

    a.   A description of the property/asset and its estimated value; and

    b.   The reason for claiming the property/asset to be exempt.

**FIRST SUPPLEMENTAL RESPONSE:** This Interrogatory is vague, ambiguous, and confusing, particularly in its reference to exemptions. Exemptions from creditor claims typically apply to individual judgment debtors, not entities such as Foundation. As drafted, the Interrogatory is unclear as to its legal or factual basis and does not specify any applicable exemption laws relevant to Foundation.

Subject to and without waiving these objections, Foundation responds as follows based on its understanding of what is currently being asked:

Foundation does not claim statutory exemption status under individual debtor exemption laws. Foundation reserves all rights arising under applicable secured credit agreements and lien priority structures.

**INTERROGATORY NO. 5:** At any time from June 21, 2019 to present, has Foundation transferred, conveyed, or assigned (or contracted to transfer, convey, or assign) any business, real or personal property, or any rights in any business or real or personal property?  If so, for each transaction identify:

   a.  A complete description of the transaction;

   b.  The date of the transaction

   c.  The full name and complete address of each person involved in the transaction; and

   d.  The payment or other consideration received or paid, or expected to be received or paid, by Foundation in exchange.

**FIRST SUPPLEMENTAL RESPONSE:**  This Interrogatory is overly broad, unduly burdensome, and seeks information that is irrelevant and not proportional to the needs of post-judgment discovery. The Interrogatory improperly demands information dating back to June 21, 2019, despite the fact that judgment was not entered in this case until November 7, 2024. Any transfers, conveyances, or assignments that occurred prior to the entry of judgment are not relevant to determining Foundation's current ability to satisfy the judgment.

Additionally, the Interrogatory is not limited to transactions involving assets currently owned by Foundation or assets that BAPTKO could use to satisfy the judgment. Instead, the request broadly seeks information about any and all past transfers—regardless of whether those transactions were legitimate business dealings conducted well before any judgment existed, or even before Foundation and BAPTKO were parties to this consolidated case. This temporal overreach renders the Interrogatory unduly burdensome and improper, as it seeks irrelevant information, particularly given the lack of any reasonable connection between pre-judgment transactions and post-judgment enforcement.

Subject to these objections and limited to July 31, 2020 to present, Foundation states as follows:

Foundation has engaged in ordinary-course intercompany transfers and lender-directed payments pursuant to secured credit facilities. Foundation is not aware of any material asset transfers during the relevant period. Foundation reserves its right to supplement this response.

**INTERROGATORY NO. 6:** Has Foundation taken any steps to ensure it will have sufficient assets available to pay the judgment in this legal action?  If so, please identify and describe the steps you have taken in detail.

**<u>FIRST SUPPLEMENTAL RESPONSE</u>:**    This Interrogatory improperly seeks information regarding post-judgment asset management and decision-making, which is not within the permissible scope of post-judgment discovery. Additionally, to the extent that the Interrogatory seeks information related to financial planning, reserves, or internal decision-making, it is unduly burdensome and requests proprietary and confidential business strategy information. Foundation objects to this Interrogatory on the grounds that it calls for legal conclusions regarding its obligations and priority of creditors, improperly assumes that Foundation possesses unencumbered assets available for discretionary allocation, and seeks information beyond the scope of permissible post-judgment discovery under Rule 69. Foundation further objects to the extent the Interrogatory seeks privileged communications concerning litigation strategy, appellate rights, bond discussions, lender negotiations, or legal advice.

Subject to and without waiving the forgoing objections, Foundation states as follows:

Foundation has conducted its operations in accordance with its contractual obligations to its secured lenders and in compliance with governing credit agreements. Foundation has exercised and continues to exercise its lawful appellate rights with respect to the judgment. Foundation has

10

evaluated liquidity, engaged in discussions with secured lenders, and assessed options relating to appellate security. To the extent this Interrogatory seeks disclosure of privileged communications with counsel or lenders concerning litigation strategy or appellate planning, such information is withheld on privilege grounds.

**INTERROGATORY NO. 7:** Please identify and describe in detail the sale of the subject Mandan Dealerships, which was completed after judgment was entered in this case, including the following:

1.  Identify the parties to the sale;

2.  Identify the sale price and/or other consideration for the sale;

3.  Identify any terms or conditions of the sale that referenced or related to the above-captioned lawsuit or the judgment entered in this lawsuit;

4.  Identify and describe where the proceeds of the sale were deposited or kept after the sale.

5.  Identify and describe any subsequent transfers of proceeds, and the current location of the proceeds.

6.  Identify and describe how the proceeds were used/spent since the sale.

**FIRST SUPPLEMENTAL RESPONSE:**  This Interrogatory is overly broad, unduly burdensome, and seeks information that is irrelevant to the post-judgment collection process. Foundation also objects to this request on the basis that the phrase "other consideration for the sale" is undefined, and, therefore, makes the request vague and ambiguous. Foundation objects to this Interrogatory on the grounds that it calls for legal conclusions regarding characterization of the transaction, seeks information equally available in produced transaction documents, and seeks information beyond the scope of permissible post-judgment discovery under Rule 69.

Subject to these objections and limited to non-privileged information within Foundation's possession, custody, or control, Foundation responds as follows:

11

1.  Parties to the Sale:

On October 15, 2024, FA ND CHEV, LLC ("FA CHEV") and FA ND SUB, LLC ("FA SUB"), as sellers, entered into an Asset Purchase Agreement (the "APA") with EAGAL3 LLC and EAGAL4 LLC (collectively, the "Buyers") as purchasers. EAGAL3 LLC and EAGAL4 LLC are entities affiliated with the Eide Automotive Group, a Bismarck, North Dakota-based dealership group. Neither EAGAL3 LLC nor EAGAL4 LLC was affiliated in any way with FA CHEV, FA SUB, or any other Foundation entity. The transaction closed on December 11, 2024. The APA has been produced to BAPTKO's counsel—FAC000001-211.

2.  Sale Price and Consideration:

The transaction involved a negotiated cash purchase price, subject to customary working capital adjustments, payoff amounts, and closing adjustments typical for automotive dealership asset transactions. The transactions contemplated by the APA generated total gross proceeds of approximately $36,854,180.39. Specifically, EAGAL3 LLC wired $13,516,671.76 to FA CHEV, and EAGAL4 LLC wired a total of $12,438,508.63 to FA SUB (consisting of $11,638,508.63 at closing and $800,000.00 held in escrow). The consideration included amounts attributable to vehicle inventory, accounts receivable, equipment, goodwill, intellectual property, and other dealership assets. The APA, which contains the complete terms of the transaction, has been produced to counsel—FAC000001-211.

3.  Terms Referencing the Lawsuit or Judgment:

No terms or conditions of the APA specifically referenced this lawsuit or conditioned the closing on resolution of BAPTKO's claims. Exhibit 4 of the APA, however, disclosed the existence of the consolidated federal action (FAC000026). The sale was conducted pursuant to lender-directed requirements under a forbearance framework with BMO Harris Bank, N.A. and

12

HPS Investment Partners, LLC that predated the entry of the North Dakota judgment and was undertaken as part of a lender-approved deleveraging plan. The marketing of the Mandan dealerships through Haig Partners, LLC commenced in April 2024, and the APA was executed on October 15, 2024, prior to entry of the federal judgment on November 7, 2024.

4. <u>Deposit of Proceeds</u>:

The purchase price was wired by the Buyers directly to dealership operating accounts maintained by FA CHEV and FA SUB as part of Foundation Automotive US Corp.'s ("<u>FAUS</u>") centralized treasury and cash-management system. Those dealership operating accounts functioned as zero-balance or sweep accounts under the treasury system in place at that time. At end of day on December 11, 2024, pursuant to routine sweep operations within the centralized treasury system, the balance in FA CHEV's account ($13,416,829.49) and the balance in FA SUB's account ($11,539,727.59) were swept to FAUS centralized treasury account. Additionally, Foundation Auto Holdings, LLC ("<u>FAH</u>") transferred $1,250,000 to FA CHEV on December 11, 2024 in connection with a CARS lease termination obligation required to complete the transaction, and that amount was included in the funds processed through FA CHEV's account. Please see documents previously produced at FAC000390-407, FAC001769-815, FAC001929-52, FAC001977-2029, FAC002030.

5. <u>Subsequent Transfers and Current Location of Proceeds</u>:

Immediately following receipt of the proceeds into the centralized treasury system, and consistent with mandatory lender payoff requirements under the Credit Agreement, Intercreditor Agreement, Guarantee and Collateral Agreement, and forbearance agreements, the proceeds were disbursed as follows:

On December 11, 2024, FA CHEV wired $207,231.90 and $1,224,067.41 to First American Title Insurance Company in connection with lease termination and dealership transfer obligations required to close the transaction. On December 11, 2024, FAUS wired $12,500,000 to HPS Investment Partners as a term loan principal repayment. On December 12, 2024, FAUS wired $5,500,000 to HPS Investment Partners as an additional term loan principal payment. On December 12, 2024, FAUS paid $2,384,222 to BMO Harris Bank in connection with secured real estate mortgage obligations. On December 11, 2024, FA Holdings wired $600,000 to Haig Partners, LLC pursuant to the brokerage agreement governing the sale. In connection with the closing process, the Buyers' floor plan lender separately satisfied the existing BMO Harris Bank floor plan balance in the amount of $11,404,365, extinguishing the existing floor plan indebtedness as a condition to transfer of vehicle inventory. On December 18, 2024, FAUS paid $1,563,918 to Global Dealer Resources, LLC pursuant to a contractual payment obligation triggered by the Dealership Sale.

Following the application of all secured debt payments and required closing disbursements, approximately $826,412 remained as liquidity within the centralized treasury system. That amount was maintained pursuant to lender-imposed liquidity requirements under the forbearance framework and remained subject to ongoing lender oversight and contractual restrictions. The retained liquidity was not distributed to equity holders and was not available for discretionary transfer outside the secured credit structure.

FA CHEV and FA SUB did not retain any unrestricted proceeds following the closing. At no time did FA CHEV or FA SUB possess sale proceeds free and clear of the secured lenders' perfected security interests. The underlying bank records, wire confirmations, payoff letters, and closing documents reflecting the foregoing disbursements have been produced.

14

6.  How proceeds were used/spent:

As set forth in Sub-part (5) above, the proceeds from the Mandan Dealership Sale were applied entirely to: (i) satisfaction of secured term loan obligations to HPS Investment Partners ($18,000,000 total); (ii) satisfaction of secured real estate mortgage obligations to BMO Harris Bank ($2,384,222); (iii) extinguishment of existing BMO Harris Bank floor plan indebtedness ($11,404,365, satisfied by the Buyers' floor plan lender at closing); (iv) required closing disbursements to First American Title Insurance Company for lease termination and transfer obligations ($1,431,299.31); (v) payment of the brokerage commission to Haig Partners, LLC ($600,000); and (vi) a contractual payment to Global Dealer Resources, LLC triggered by the sale ($1,563,918). The gross proceeds from the Dealership Sale were insufficient to satisfy all outstanding secured obligations of the borrower group, and secured indebtedness remained outstanding under the Credit Agreement following application of the proceeds.

Foundation reserves all objections based on privilege to the extent this Interrogatory seeks disclosure of communications with counsel or internal litigation strategy analyses.

**SECOND SUPPLEMENTAL RESPONSE:** Foundation supplements its prior response to Interrogatory No. 7 to provide a complete, narrative description of the Mandan Dealership sale and the disposition of all proceeds. Foundation has conducted a reasonable investigation and has identified all non-privileged information within its possession, custody, or control responsive to this Interrogatory. The information set forth below reflects Foundation's full and complete response based on that investigation. Foundation is not withholding any responsive information within its possession, custody, or control.

Foundation preserves its objections to the extent this Interrogatory seeks information beyond the scope of permissible post-judgment discovery under Rule 69, calls for legal

15

conclusions, or seeks information not within its possession, custody, or control. These objections do not limit the substantive response provided below.

1. Parties to the Sale:

On October 15, 2024, FA ND CHEV, LLC ("FA CHEV") and FA ND SUB, LLC ("FA SUB"), as sellers, entered into an Asset Purchase Agreement (the "APA") with EAGAL3 LLC and EAGAL4 LLC (collectively, the "Buyers") as purchasers. EAGAL3 LLC and EAGAL4 LLC are entities affiliated with the Eide Automotive Group, a Bismarck, North Dakota-based dealership group. Neither EAGAL3 LLC nor EAGAL4 LLC was affiliated in any way with FA CHEV, FA SUB, or any other Foundation entity. The transaction closed on December 11, 2024. The APA has been produced at FAC000001-211.

2. Sale Price and Consideration:

The transaction involved a negotiated cash purchase price, subject to customary working capital adjustments, payoff amounts, and closing adjustments typical for automotive dealership asset transactions. The transactions contemplated by the APA generated total gross proceeds of approximately $36,854,180.39. Specifically, EAGAL3 LLC wired $13,516,671.76 to FA CHEV, and EAGAL4 LLC wired a total of $12,438,508.63 to FA SUB (consisting of $11,638,508.63 at closing and $800,000.00 held in escrow). The consideration included amounts attributable to vehicle inventory, accounts receivable, equipment, goodwill, intellectual property, and other dealership assets. Please see documents previously produced at FAC000001-211, FAC000390-407, FAC001876-921, FAC001929-52, FAC002079-85.

3. Terms Referencing the Lawsuit or Judgment:

No terms or conditions of the APA specifically referenced this lawsuit or conditioned the closing on resolution of BAPTKO's claims. Exhibit 4 of the APA, however, disclosed the

existence of the consolidated federal action (FAC000026). The sale was conducted pursuant to lender-directed requirements under a forbearance framework with BMO Harris Bank, N.A. and HPS Investment Partners, LLC that predated the entry of the North Dakota judgment and was undertaken as part of a lender-approved deleveraging plan. The marketing of the Mandan dealerships through Haig Partners, LLC commenced in April 2024, and the APA was executed on October 15, 2024, prior to entry of the federal judgment on November 7, 2024.

4. Deposit of Proceeds:

The purchase price was wired by the Buyers directly to dealership operating accounts maintained by FA CHEV and FA SUB. Those accounts functioned as zero-balance accounts within Foundation Automotive US Corp.'s ("FAUS") centralized treasury system. Consistent with that system, the funds were swept on December 11, 2024 into a centralized treasury account. At end of day on December 11, 2024, pursuant to routine sweep operations within the centralized treasury system, the balance in FA CHEV's account ($13,416,829.49) and the balance in FA SUB's account ($11,539,727.59) were swept to FAUS centralized treasury account. Additionally, Foundation Auto Holdings, LLC ("FA Holdings") transferred $1,250,000 to FA CHEV on December 11, 2024 in connection with a CARS lease termination obligation required to complete the transaction, and that amount was included in the funds processed through FA CHEV's account. Please see documents previously produced at FAC000390-407, FAC001769-815, FAC001876-921, FAC001929-52, FAC001977-2029, FAC002030, FAC002079-85, FAC002470-530.

5. Subsequent Transfers and Current Location of Proceeds:

Following receipt of the proceeds within the centralized treasury system, the funds were applied in accordance with mandatory obligations under existing secured credit agreements and related transaction requirements. At the time of the transaction, the proceeds of the dealership sale

17

were subject to preexisting, first-priority security interests held by HPS Investment Partners and BMO Harris Bank pursuant to the governing Credit Agreement, Intercreditor Agreement, and Guarantee and Collateral Agreement. Those agreements granted the lenders a continuing security interest in substantially all assets and proceeds, including proceeds from asset sales. The only entities with secured interests in the assets of FA CHEV and FA SUB were HPS and BMO.

Consistent with those obligations, the proceeds were applied primarily to secured indebtedness, including:

- $18,000,000 in term loan repayments to HPS;

- $2,384,222 in secured real estate obligations to BMO; and

- satisfaction of floorplan indebtedness (approximately $11.4 million) through the Buyers' floorplan lender at closing.

In addition to secured debt payments, certain transaction-required payments were made as a condition to closing:

- $600,000 to Haig Partners pursuant to the brokerage agreement (*see* FAC001948, FAC001977-2029);

- $1,593,918 to Global Dealer Resources, LLC pursuant to contract between Foundation, Global Dealer Resources, LLC, and Amynta triggered by the sale (*see* FAC000710-12, FAC001697-702, FAC001794, FAC001928, FAC002423-69); and

- payments to First American Title Insurance Company totaling $1,200,000.00 in connection with dealership transfer and lease-related obligations (FAC000396, FAC001339-42, FAC001292-95, FAC001779, FAC001929, FAC001949-50, FAC002470-530).

Haig Partners, Global Dealer Resources, LLC, Amynta, and First American Title Insurance Company did not hold secured interests in the sale proceeds. Those payments were required to consummate the transaction and were made in the ordinary course of closing.

With respect to the payments to First American Title Insurance Company, the funds used for those payments did not originate from unrestricted proceeds held by FA CHEV or FA SUB.

On the date of closing, FA Holdings, a non-debtor entity, transferred approximately $1,250,000.00 to FA CHEV to fund obligations associated with a CARS lease termination required for the transaction. Those funds were then used to satisfy the corresponding payments through First American Title Insurance Company.

Following all required disbursements, no sale proceeds remained with FA CHEV or FA SUB. To the extent any residual liquidity remained within the centralized treasury system, such amounts remained subject to lender control and restrictions and were not available for discretionary use or distribution.

Foundation is not aware of any additional transfers of sale proceeds beyond those reflected in the produced records.

6. <u>Use of Proceeds</u>:

As set forth in Sub-part (5) above, the proceeds from the Mandan Dealership Sale were applied entirely to: **(i)** satisfaction of ***secured term loan obligations*** from FAUS to HPS Investment Partners—$18,000,000 (*see* FAC001951-52, FAC001790-91); **(ii)** satisfaction of ***secured real estate mortgage obligations*** from FAUS to BMO Harris Bank—$2,384,222 (*see* FAC001791); **(iii)** extinguishment of existing BMO Harris Bank floor plan indebtedness—$11,404,365, as satisfied by the Buyers' floor plan lender at closing (*see* FAC000390-91); **(iv)** required closing disbursements from FA CHEV to First American Title Insurance Company (no security interest) for lease termination and transfer obligations—$1,200,000.00, which was indirectly paid by Foundation Auto Holdings, LLC (*see* FAC001929, FAC000396, FAC001779, FAC002470-530); **(v)** payment of the brokerage commission from FA Holdings to Haig Partners, LLC (no security interest)—$600,000.00 (*see* FAC001948, FAC001779); and **(vi)** a payment from FAUS to Global Dealer Resources, LLC pursuant to contract between Foundation, Global Dealer

19

Resources, LLC, and Amynta (no security interest) triggered by the sale—$1,593,918.00 (*see* FAC000710-12, FAC001697-702, FAC001794, FAC001928, FAC002423-69). The gross proceeds from the Dealership Sale were insufficient to satisfy all outstanding secured obligations of the borrower group, and secured indebtedness remained outstanding under the Credit Agreement following application of the proceeds.

The following table contains information relating to the receipt and transfer of all proceeds of the Mandan Dealership Sale, pursuant to the Court's Order (Doc. 648):

| PAYOR | PAYEE | AMOUNT | DATE | TYPE | RECORD |
|---|---|---|---|---|---|
| FA Holdings | FA CHEV (CARS lease amendment agreement) | $1,250,000.00 | 12/11/24 | PC Credit – Cars Deposit | FAC001929 FAC000396 FAC001779 |
| EAGAL3 | FA CHEV | $13,516,671.76 | 12/11/24 | WIRE | FAC000396 |
| EAGAL4 | FA SUB | $11,638.508.63 | 12/11/24 | WIRE | FAC000404 |
| EAGAL4 (escrow) | FA SUB | $800,000.00 | 12/11/24 | WIRE | FAC000404 |
| FA SUB | FAUS | $11,539,727.59 | 12/11/24 | PC Balance Transf. Debit | FAC001790 |
| FA CHEV | FAUS | $13,416,829.49 | 12/11/24 | PC Balance Transf. Debit | FAC000396 FAC001790 |
| FA CHEV | First American Title Insurance (dealership payables) | $207,231.90 | 12/11/24 | WIRE | FAC001949 |
| FA CHEV | First American Title Insurance (dealership payables) | $1,224,067.41 | 12/11/24 | WIRE | FAC001950 |
| FAUS | HPS Investment Partners | $12,500,000 | 12/11/24 | WIRE | FAC001951 FAC001790 |
| FAUS | HPS Investment Partners | $5,500,000 | 12/12/24 | WIRE | FAC001952 FAC001791 |
| FAUS | BMO Harris Bank – Real Estate Mortgages | $2,384,222 | 12/12/24 | PC Bank Transfer – Debit | FAC001791 |
| FAUS | Global Dealer Solutions, LLC (per contract) | $1,563,918 | 12/18/24 | PC Bank Transfer – Debit | FAC001794 |
| FA Holdings | HAIG Partners | $600,000 | 12/11/24 | WIRE | FAC001948 FAC001779 |

Foundation has produced the transaction documents, bank records, wire confirmations, and closing materials reflecting the receipt and application of all sale proceeds within its possession, custody, or control. The narrative above summarizes that information. Foundation has not prepared and is not required to prepare additional tracing analyses beyond the information reflected in those documents.

Foundation further states that it does not have possession, custody, or control of additional records maintained by third parties, including lenders, financial institutions, or title companies involved in the transaction.

## REQUESTS FOR PRODUCTION

**REQUEST NO. 1:** Copies of all documents identified, referred to, or reviewed in responding to the above interrogatories.

**FIRST SUPPLEMENTAL RESPONSE:** This Request is overly broad, unduly burdensome, vague, ambiguous, and not reasonably specific insofar as it requests documents "identified, referred to, or reviewed" in responding to the Interrogatories. The Request seeks "all documents identified, referred to, or reviewed," which is vague, expansive, and could encompass an overwhelming amount of documents, including those not pertinent to the judgment collection or enforcement process. The Request's pairing of the omnibus phrase "all documents" with a general category of information (identified, referred to, or reviewed in responding to the Interrogatories) makes this request overly broad and unduly burdensome on its face. *See, e.g., Dobish v. Rain & Hail*, LLC, No. 8:11CV41, 2011 WL 3300073, at *3 (D. Neb. Aug. 2, 2011). A request, such as this, "seeking documents 'pertaining to' or 'concerning a broad range of items 'requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the

21

scope of the request.'" *Id*. (*citing Cardenas v. Dorel Juvenile Grp., Inc*., 230 F.R.D. 611, 625 (D. Kan. 2005)). Furthermore, Foundation objects to the Request to the extent that it seeks the production of documents that are protected by attorney-client privilege, work product doctrine, or any other applicable privilege or protection. The Request lacks specificity in that it fails to identify the specific documents or information sought. While it is unclear what information this Request seeks, it is drafted so broadly as to include all written communications between Foundation and its attorneys, which are protected by the attorney-client privilege and work product doctrine and is not subject to discovery. Foundation incorporates hereto its objections and responses to Interrogatory Nos. 1-7.

Foundation further objects to the Request to the extent it seeks documents not within its possession, custody, or control. Foundation also objects to the extent the Request could be construed to require production of every document reviewed in preparation of these responses, including internal analyses, communications with counsel, draft materials, or documents not otherwise responsive to the interrogatories themselves. Such a reading would exceed the scope of permissible discovery and intrude upon protected materials.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order, Foundation states as follows:

Foundation will produce non-privileged documents that are responsive to and form the substantive basis of its answers to the Interrogatories, including bank account statements and corporate records and financial statements. To the extent any responsive documents have previously been produced in this action, Foundation will not reproduce them. Foundation will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

22

**REQUEST NO. 2:** Copies of Foundation's annual financial statements, balance sheets, income statements, and cash flow statements from June 21, 2019 to present. Also provide copies of Foundation's year-to-date annual financial statements, balance sheets, income statement and cash flow statements for 2025.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request as overly broad and not narrowly tailored to the scope of post-judgment discovery. Seeking all financial statements, balance sheets, income statements, and cash flow statements for multiple years is unduly expansive and disproportionate to the needs of the case. Further, the demand for year-to-date financial statements for 2025 is speculative and premature, as such records may not yet be finalized or reflective of any relevant financial position concerning the judgment. Finally, the terms "annual financial statements," "balance sheets," "income statements," and "cash flow statements" are undefined, making the Request vague and ambiguous.

Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Foundation further objects to the Request to the extent it seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order directing substantive responses from July 31, 2020 to present, Foundation states as follows:

The December 2024 consolidated financial statement is being produced as FAC002037-FAC002078. To the extent "year-to-date" 2025 financial statements are not yet finalized, Foundation will produce the most current internally maintained financial statements reflecting 2025 performance as of the date of production. Foundation will not reproduce documents

23

previously produced in this litigation but has identified such documents by the following Bates numbers: FOUNDATION000001-95; FOUNDATION000204-45; FAC000378-89.

Foundation will supplement this production in accordance with Rule 26(e) should additional finalized financial statements become available and on a rolling basis with a target production completion of March 23, 2026.

**REQUEST NO. 3:** Copies of Foundation's tax returns filed from 2019 to present, with all schedules and attachments, including depreciation schedules.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including communications with tax advisors reflecting legal advice. Foundation further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's directive requiring substantive production from July 31, 2020 to present, Foundation states as follows:

Foundation will produce complete federal income tax returns, including schedules and attachments, for tax years 2020, 2021, 2022, 2023, and 2024, to the extent such returns have been finalized and filed. If any return for 2024 or later tax years has not yet been finalized or filed as of the date of production, Foundation will produce the most recent finalized return available and will supplement this response upon filing of any subsequently completed return, consistent with Rule 26(e).

To the extent responsive tax returns have previously been produced in this action, Foundation will not reproduce them but has identified those documents by Bates number:

24

FAC000212-377; FOUNDATION000095-203. Foundation will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 4:** Copies of all documents evidencing asset transfers of personal property, real property, and/or business interests, and compensation received by Foundation from June 21, 2019 to present.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request to the extent it is overly broad, unduly burdensome, and disproportionate to the needs of post-judgment discovery insofar as it seeks "all documents" concerning every transfer of personal, property over a multi-year period, including routine ordinary-course inventory sales conducted in the operation of an automotive dealership. Foundation further objects to the extent the Request seeks documents unrelated to enforcement of the judgment, seeks documents equally available from produced financial records, or seeks documents protected by the attorney-client privilege, work-product doctrine, or other applicable privilege. Foundation also objects to the extent the Request calls for documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, FA SUB states as follows:

Foundation is the parent company of the dealership group and does not directly own dealership vehicle inventory. To the extent transfers occurred at the subsidiary level, responsive documents will be produced by those entities.

Foundation interprets this Request to seek documents evidencing material asset transfers affecting Foundation's asset position. To the extent the Request could be construed to encompass routine operational disbursements, ordinary-course treasury transfers, or internal accounting

25

entries not constituting conveyances of property or business interests, Foundation objects that such a construction would be unduly burdensome and disproportionate. Nevertheless, Foundation will produce documents sufficient to reflect material transfers during the relevant period.

To the extent any responsive documents have previously been produced in this action, Foundation will not reproduce them. Foundation will produce responsive, non-privileged documents, sufficient to reflect material transfers during the relevant period, on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 5:** Copies of account statements from June 21, 2019 to present for all accounts identified in your answer to Interrogatory No. 1, above.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Foundation further objects to the extent it seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, Foundation states as follows:

Foundation will produce complete account statements for the account identified in response to Interrogatory No. 1 for the period of July 31, 2020 through the present, in its  possession, custody, or control. To the extent any responsive documents have previously been produced in this action, Foundation will not reproduce them. Foundation will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 6:** Copies of all mortgages, promissory notes, liens, and any other instruments securing debt owed <u>by</u> Foundation or relating to any property owned <u>by</u> Foundation from June 21, 2019 to present.

**<u>FIRST SUPPLEMENTAL RESPONSE</u>:** This Request is overly broad, unduly burdensome, vague, ambiguous, and not reasonably specific insofar as it requests all documents "securing debt owed by Foundation or relating to any property owned by Foundation," which is vague, expansive, and could encompass an overwhelming number of documents, including those not pertinent to the judgment collection or enforcement process. A request, such as this, requesting documents "relating to" a broad range of items "requires the respondent either to guess or move through mental gymnastics . . . to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request." *See Dobish,* No. 8:11CV41, 2011 WL 3300073, at *3. The Request is overly broad, seeking "all mortgages, promissory notes, liens, and any other instruments securing debt" without limitation to the assets or financial matters relevant to the judgment. As drafted, it encompasses an unnecessary and expansive range of documents that are not proportional to the needs of the case. Further, the Request imposes an undue burden, requiring the production of potentially voluminous and irrelevant documents spanning several years, which is disproportionate to the issues at hand.

Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Foundation further objects to the extent it seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, Foundation states as follows:

27

Foundation has produced non-privileged documents sufficient to evidence the existence, scope, and priority of secured indebtedness during the relevant period, including operative credit agreements, promissory notes, guarantees, security agreements, collateral grant provisions, and related UCC filings reflecting perfected security interests. These documents are produced at Bates numbers FAC000408-1188, FAC001953-76, FAC002030-36, FAC002086-88, FAC002093-194.

Foundation interprets this Request to seek operative instruments evidencing secured indebtedness and liens affecting property directly owned by Foundation. To the extent the Request could be construed to require production of duplicative administrative notices, routine lender correspondence, or immaterial historical amendments not affecting lien scope or priority, Foundation objects that such a construction would be unduly burdensome and disproportionate.

Foundation will produce any outstanding, responsive, and non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 7:** Copies of all mortgages, promissory notes, liens, and any other instruments securing debt owed <u>to</u> Foundation or relating to any property owned anyone else from June 21, 2019 to present.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Foundation further objects to the extent the Request seeks documents not within its possession, custody, or control. Foundation also objects to the extent the phrase "relating to any property owned by anyone else" is vague and overbroad insofar as it could be construed to require production of instruments to which Foundation is not a party and over which it has no possession, custody, or control.

Subject to and without waiving the foregoing objections, and limited to the period July 31, 2020 to present, Foundation states as follows:

Foundation does not hold secured interests or debt. There are no responsive documents in its possession, custody, or control. Foundation does not interpret this Request to require production of instruments securing debt owed by Foundation to third parties; those instruments are addressed in prior Requests and have been produced separately. Foundation will supplement this production in accordance with Rule 26(e).

**REQUEST NO. 8:** Copies of all documents evidencing Foundation's ownership of property/assets (including all property identified in response to Interrogatory Nos. 2 and 3, above), from June 21, 2019 to present, including but not limited to title documents, deeds, contracts, receipts, statements from brokerages or financial institutions, and similar documents.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection. Foundation further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, Foundation states as follows:

Foundation has produced all non-privileged documents within its possession sufficient to evidence its ownership of property and assets during the relevant period. Foundation interprets this Request to seek documents evidencing ownership interests directly held by Foundation. To the extent the Request could be construed to require production of duplicative internal records, routine accounting entries, or immaterial administrative documents, Foundation objects that such a construction would be unduly burdensome and disproportionate.

29

To the extent any responsive documents have previously been produced in this action, Foundation will not reproduce them. Foundation will produce responsive, non-privileged documents, sufficient to reflect its ownership of assets during the relevant period, on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 9:** Copies of all documents evidencing the value of Foundation's property/assets (including all property identified in response to Interrogatory Nos. 2 and 3, above), from June 21, 2019 to present, including but not limited to appraisals, valuations, offers to purchase, and similar documents.

**FIRST SUPPLEMENTAL RESPONSE:** The Request is not narrowly tailored, as it seeks "all documents evidencing the value" of Foundation's "property/assets," including appraisals, valuations, offers to purchase, and similar records, without limiting the scope to the information relevant to satisfying the judgment. This Request is disproportionate to the needs of the case and improperly seeks historical valuations that have no bearing on the present financial condition of Foundation. Foundation incorporates hereto its objections and responses to Interrogatory Nos. 2 and 3.

Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including documents prepared in anticipation of litigation or at the direction of counsel. Foundation further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, Foundation states as follows:

30

Foundation will produce non-privileged documents within its possession sufficient to evidence formal valuations, third-party appraisals, or written offers to purchase assets directly owned by Foundation during the relevant period, if any.

Foundation is the ultimate parent company of the dealership group and does not directly own dealership vehicle inventory. Its primary assets consist of equity interests in subsidiary entities, like Foundation Automotive US Corp., and limited administrative assets. To the extent the value of Foundation's assets is reflected in annual or interim financial statements maintained in the ordinary course of business, those financial statements are being produced. To the extent any formal third-party appraisals, written offers to purchase business interests directly owned by Foundation, or similar valuation documents exist within Foundation's possession for the relevant period, such non-privileged documents will be produced on a rolling basis. Foundation does not maintain routine appraisals of ordinary office equipment or administrative assets in the ordinary course of business.

To the extent any responsive documents have previously been produced in this action, Foundation will not reproduce them. Foundation will produce responsive, non-privileged documents on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 10:** Copies of all documents relating to the conveyance by Foundation of any business interest, and/or real or personal property from June 21, 2019 to present, including but not limited to contracts, closing documents, and checks or wire transfer documents.

**FIRST SUPPLEMENTAL RESPONSE:** Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including communications with counsel concerning

31

insurance coverage. Foundation further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, and consistent with the Court's Order requiring substantive production from July 31, 2020 to present, Foundation states as follows:

Foundation is the ultimate parent company of the Foundation dealership group and does not directly own dealership vehicle inventory. Vehicle inventory and operational dealership assets are owned by subsidiary dealership entities. Foundation does not directly own tangible personal property, including ordinary office furniture, computer equipment, and administrative assets. Foundation's primary assets consist of equity interests in subsidiary entities. Those interests have not been sold during the relevant period and are reflected in corporate records and financial statements that have been previously produced.

Foundation interprets this Request to seek documents evidencing material conveyances affecting Foundation's asset position. To the extent the Request could be construed to encompass routine operational disbursements, ordinary-course treasury transfers, or internal accounting entries not constituting conveyances of business interests or property, Foundation objects that such a construction would be unduly burdensome and disproportionate.

To the extent any responsive documents have previously been produced in this action, Foundation will not reproduce them. Fondation will produce any outstanding, responsive, non-privileged documents, sufficient to reflect material conveyances, on a rolling basis with a target production completion of March 23, 2026 and will supplement as required by Rule 26(e).

**REQUEST NO. 11:** With respect to the sale of the subject Mandan Dealerships, which was completed after judgment was entered in this case, please provide copies of the following:

a.      All contracts and related contract documents;

b.	All closing documents;

c.	All documents relating to the payment of the funds from the purchaser, and any deposit or transfer of those funds since the sale;

d.	All documents relating to the use, spending, investing, or otherwise accounting for the proceeds since the sale.

**FIRST SUPPLEMENTAL RESPONSE:**   Foundation objects to this Request to the extent it seeks documents protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or protection, including communications with counsel regarding litigation strategy or legal advice in connection with the transaction. Foundation further objects to the extent the Request seeks documents not within its possession, custody, or control.

Subject to and without waiving the foregoing objections, Foundation states as follows:

Foundation has produced all non-privileged documents within its possession sufficient to reflect the terms of the Mandan dealership asset sale and the receipt and application of the sale proceeds, including: FAC000001-211, FAC000390-407, FAC000878-79, FAC001161, FAC001769-815, FAC001929-52, FAC001977-2030, FAC002079-88, FAC002470-2530.

Foundation interprets this Request to seek transaction documents maintained in the ordinary course of business. To the extent the Request could be construed to require production of internal legal analyses, draft agreements reflecting attorney revisions, privileged communications, or litigation-related strategy documents, such materials are withheld on privilege grounds.

Dated this 31st day of March, 2026.

Respectfully submitted,

/s/ Kensye N. Wood
Maxwell N. Shaffer
Kensye N. Wood
LELAND SHAFFER LLP
8694 E. 28th Avenue
Denver, Colorado 80238
(720) 556-1872

33

Maxwell.Shaffer@lelandshaffer.com
Kensye.Wood@lelandshaffer.com

*Counsel for Foundation Automotive Corp.,*
*FA ND CHEV, LLC, and FA ND SUB, LLC*

34

## VERIFICATION

I declare under penalty of perjury under the laws of the United States as follows:

I have read the foregoing Answers to Interrogatories, and I am familiar with the contents thereof, I further state that the facts stated in the answers to these Interrogatories are true and correct to the best of my knowledge, information, and belief.

Dated this 30th day of March, 2026.

_____
Derek Slemko

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 31st day of March, 2026, a true and correct copy of the foregoing **SECOND SUPPLEMENT TO FOUNDATION AUTOMOTIVE CORP.'S RESPONSES AND OBJECTIONS TO BAPTKO, INC.'S INTERROGATORIES AND REQUESTS FOR PRODUCTION OF DOCUMENTS IN AID OF EXECUTION** was served via regular electronic mail on the following:

Randall J. Bakke
Shawn A. Grinolds
David R. Phillips
BAKKE GRINOLDS WIEDERHOLT
300 West Century Avenue
P.O. Box 4247
Bismarck, ND 58502-4247
rbakke@bgwattorneys.com
sgrinolds@bgwattorneys.com
dphillips@bgwattorneys.com

*Attorneys for BAPTKO, Inc.*

*/s/ Kensye N. Wood*
Kensye N. Wood

36